**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELIZABETH CANDELARIA, on behalf of herself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>CONOPCO, INC. d/b/a UNILEVER HOME & PERSONAL CARE USA,<br><br>　　　　　Defendant. | Case No.:<br><br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Elizabeth Candelaria ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her undersigned counsel, brings this proposed class action against Conopco, Inc. d/b/a Unilever Home & Personal Care USA. ("Conopco" or "Defendant"). Plaintiff alleges as follows based on personal knowledge concerning all facts related to her and based on the investigation of her counsel and on information and belief concerning all other matters.

**INTRODUCTION**

1.　　Plaintiff and hundreds or thousands of other consumers suffered hair loss and other injuries after using TRESemmé shampoos and conditioners designed, manufactured, distributed, or sold by Conopco that contained a dangerous ingredient called DMDM hydantoin ("DMDM").

2.　　DMDM has long been associated with causing hair loss, thinning hair, dermatitis, and other adverse scalp reactions and has been the subject of numerous complaints and various lawsuits long before Plaintiff and the other Class members were injured.

3.　　Plaintiff and the Class (defined below) suffered damages due to Conopco's wrongful conduct when Conopco designed, manufactured, tested, packaged, marketed, distributed, labeled, and sold TRESemmé shampoos and conditioners containing DMDM (the

"TRESemmé Products").

4.      The TRESemmé Products are marketed to customers—through labeling and other marketing—as containing a formula that will smooth hair, add softness and shine, and prevent frizzing and tangling. According to Conopco, the TRESemmé Products "deeply nourish," "gently cleanse," and "repair hair."

5.      Contrary to Conopco's representations, the TRESemmé Products' formula contains DMDM, a chemical that causes a substantial proportion of users to experience hair loss, hair thinning, and scalp irritation even when applied properly. DMDM is a formaldehyde donor known to slowly leach formaldehyde when combined with water. Formaldehyde is a well-known human carcinogen and allergen shown to cause cancer and other harmful reactions when applied to the skin. DMDM has been used as a preservative in Conopco products for more than a decade; however, the use of DMDM as a preservative is an entirely unnecessary risk because various safer and affordable alternatives exist.

6.      Conopco has long known that DMDM can cause hair loss and scalp irritation. In 2012 and 2013, for example, users of Suave Professionals Keratin Infusion 30 Day Smoothing Kit ("Suave Keratin Kit") brought lawsuits against Conopco and certain of its affiliates, including in the Northern District of Illinois, alleging that the Suave Keratin Kit contained DMDM and other ingredients that could cause hair loss and scalp irritation. *See Reid, et al. v. Unilever United States, Inc., et al*., No. 1:12-cv-06058 (N.D. Ill.) ("*Reid*"). The Suave Keratin Kit was recalled in 2012 following customer complaints that the product caused hair loss and scalp irritation and was wrongly advertised as formaldehyde-free. Conopco ultimately settled *Reid* and other class actions for $10.2 million.[1]

7.      In addition to the *Reid* case, TRESemmé Products users have complained about

---

[1]      On September 23, 2013, Conopco was added as a defendant to the lawsuit in the *Reid* plaintiffs' amended complaint. *Reid*, No. 1:12-cv-06058 (Dkt. 60).

the products online, including on online retailer sites such as Amazon and on product review websites. Conopco knew or should have known about these consumer complaints because, upon information and belief, Conopco either received complaints directly or regularly monitored online retailers and other online and social media sources where consumers were complaining of the TRESemmé Products' harmful effects to their hair and scalp.

8.      Despite knowing the substantial risks associated with the TRESemmé Products and DMDM, including hair loss and scalp irritation, Conopco designed, manufactured, marketed, and sold TRESemmé Products containing DMDM even though the risks of using those TRESemmé Products outweighed any potential benefits due to the presence of DMDM.

9.      Conopco delayed reformulating or manufacturing the TRESemmé Products with safer preservatives or a combination of preservatives even though those alternatives were readily available and doing so was affordable and sensible considering the substantial risks associated with DMDM as demonstrated by more recent DMDM-free formulations manufactured and sold by Conopco.

10.     Conopco also falsely advertised the TRESemmé Products to improve the health and appearance of hair, including directly on the TRESemmé Products' labeling and through other advertising channels such as the TRESemmé Products' website. Conopco advertised the purported benefits of TRESemmé Products without disclosing known risks to consumers, including the potential for hair loss and scalp irritation. Consumers, like Plaintiff and the Class, depended on Conopco to disclose those risks but were instead presented with false, misleading, or incomplete representations regarding the safety and benefits of the TRESemmé Products and suffered injuries as a result.

11.     Until 2019 or 2020, Plaintiff used TRESemmé Products containing DMDM to improve the health and appearance of her hair after reviewing the product labeling and other advertising touting its benefits. Instead of receiving those benefits, Plaintiff suffered injuries

caused by TRESemmé Products containing DMDM, including hair loss, hair thinning, and scalp irritation.

12.     Plaintiff brings claims for herself and the Class (as defined below) against Conopco for the injuries caused by the TRESemmé Products' defective design, defective manufacturing, and/or Conopco's failure to warn consumers of the potential harms of the TRESemmé Products.

## PARTIES

13.     Plaintiff Elizabeth Candelaria is and was during the time relevant to these allegations a resident of New York, residing at 143 Starr Street, Brooklyn, New York.

14.     Conopco is a New York corporation with its principal place of business located at 700 Sylvan Avenue, Englewood Cliffs, New Jersey 07632. Conopco is an affiliate of the Unilever Group and, upon information and belief, Conopco manufactures, markets, designs, promotes, and/or distributes the TRESemmé Products in New York and throughout the United States.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(a)(1). Diversity of citizenship exists between Plaintiff and Defendant: Plaintiff is a citizen of New York and Conopco is a citizen of New Jersey. In addition, the matter in controversy in this action exceeds $75,000 exclusive of interest and costs.

16.     The Court also has subject matter jurisdiction over this case under the Class Action Fairness Act, 23 U.S.C. 1332(d)(2). Minimal diversity exists between members of the Class and Defendant: Plaintiff is a citizen of New York and Conopco is a citizen of New Jersey. Moreover, the amount in controversy in this action exceeds $5,000,000, exclusive of interests and costs, and there are more than 100 members in the Class. Many of the members of the proposed Class are citizens of different states than Defendant.

17.     This Court has personal jurisdiction over this case because Conopco is engaged in systematic and continuous business activity in New York, has sufficient minimum contacts in New York, or otherwise intentionally avails itself of the New York consumer market, including through designing, testing, manufacturing, marketing, and distributing the TRESemmé Products throughout New York, including in this District. Those actions render the Court's exercise of jurisdiction over Conopco appropriate under traditional notions of fair play and substantial justice.

18.     Plaintiff's claims arise from conduct Conopco purposefully directed to New York. Conopco's TRESemmé Products are sold at hundreds of local and national retailers, including Wal-Mart, Target, Walgreens, CVS, and Duane Reades throughout New York. Conopco also avails itself of numerous advertising and promotional materials regarding the defective TRESemmé Products specifically intended to reach consumers in New York.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391. A substantial portion of the events or omissions giving rise to the claims by Plaintiff and the Class occurred in this District, and Conopco regularly conducts business and is subject to personal jurisdiction in this District.

## FACTUAL ALLEGATIONS

**A.     The Unilever Group and Conopco, the TRESemmé Products, and TRESemmé Product Representations**

20.     The Unilever Group is one of the world's largest suppliers of fast-moving consumer products. It manufactures, markets, and sells products in the food, personal care, and household product industries throughout the world.  Upon information and belief, the Unilever Group conducts its business in the United States primarily through Conopco.

21.     In September 2010, Unilever United States, Inc. (another Unilever Group affiliate) acquired US-based Alberto Culver Company for US $3.7 billion in cash. The Alberto Culver acquisition included many large beauty brands, including TRESemmé.

22.     At the time of the acquisition, Unilever issued a press release stating that the "acquisition makes Unilever the world's leading company in hair conditioning, the second largest in shampoo and the third largest in styling, and significantly enhances its hair care presence in the US, Canada, the UK, Mexico and Australasia, all of which will be significant hair care markets for years to come."

23.     The TRESemmé Products — including TRESemmé Color Revitalize shampoo, TRESemmé Color Revitalize conditioner, TRESemmé Anti-Breakage shampoo and conditioner, TRESemmé Deep Cleansing shampoo, TRESemmé Moisture Rich shampoo and conditioner, TRESemmé Natural Conditioner, TRESemmé Natural Shampoo, TRESemmé Remoisturize Pro-Vitamin B5 & Aloe Conditioner, TRESemmé Smooth & Silky Shampoo, TRESemmé Smooth & Silky Conditioner, TRESemmé Keratin Smooth Color shampoo, and TRESemmé Botanique Nourish and Replenish shampoo—are sold under the TRESemmé brand name directly from Conopco and through retailers.

24.     Conopco promoted the TRESemmé Products as beneficial for hair due to the presence of keratin (a key structural protein found in hair) and other distinctive product attributes. For example, TRESemmé Keratin Smooth shampoo's front labeling includes the statements: "USED BY PROFESSIONALS;" "**NEW** LOOK;" "KERATIN SMOOTH with **MARULA OIL**"**;** "**5 BENEFITS. 1 SYSTEM** Anti-frizz detangles shine softness tames fly-aways"; "PRO COLLECTION **SHAMPOO**[.]"[2]

25.     TRESemmé Keratin Smooth shampoo's back labeling includes the statements: "Smooth doesn't have to be straight. You want hair that is shiny, silky AND smooth. You want hair that moves;" **"5 BENEFITS. 1 SYSTEM.** ANTI-FRIZZ · DETANGLES SHINE SOFTNESS TAMES FLY-AWAYS"; "Our Keratin Smooth system, with **MARULA OIL**, gently cleanses and nourishes hair;" "WHY PRO COLLECTION? Get great hair foundation,

---

[2]     All emphasis is Conopco's unless otherwise noted.

whatever your style, with our Pro Technology system[.]"

26.      TRESemmé Keratin Smooth Color shampoo's front labeling includes the statements: "USED BY PROFESSIONALS;" "**NEW** LOOK;" "KERATIN -SMOOTH-COLOR- with **MOROCCAN OIL**"; System for smooth, shiny color-treated hair"; "PRO COLLECTION **SHAMPOO**[.]"

27.      TRESemmé Keratin Color Smooth shampoo's back labeling includes the statements: "Vibrant color or smooth hair? Have both;" "WITH MOROCCAN OIL;" "Our double duty Kertain Smooth Color system lock in smoothness AND keeps your color-treated hair shiny and vibrant. Formulated with **MOROCCAN OIL**, the system helps to nourish detangling and frizz control;" "WHY PRO COLLECTION? Get great hair foundation, whatever your style, with our Pro Technology system[.]"

28.      TRESemmé Botanique Nourish and Replenish shampoo's front labeling includes the statements: "WITH **COCONUT MILK & ALOE VERA;" 0% PARABENS** DYES SILICONES;" "System for soft, smooth hair;" PRO COLLETION SHAMPOO."

29.      TRESemmé Botanique Nourish and Replenish shampoo's back labeling includes the statements: "You are inspired by nature's beauty. You care for your hair. You 26 Belle want hair that is nourished, beautiful and healthy-looking. Be inspired, be beautiful;" "**0% PARABENS** DYES SILICONES;" "Botanique Nourish and Replenish shampoo, without our botanical blend of **COCONUT MILK AND ALOE VERA** gently cleanses hair;" "WHY PRO COLLECTION? Get great hair foundation, whatever your style, with our Pro Technology system[.]"

30.      In addition to labeling, Conopco promotes the TRESemmé Products through other advertising channels, including representations written or approved by Conopco on retail websites like Walmart and on Conopco's own websites. For instance, the rear labels of the TRESemmé Products also direct consumers to tresemme.com "For more salon secrets from our

stylists."

31.     The portion of the TRESemmé website addressing the TRESemmé Products

states:

### KERATIN HAIR PRODUCTS – KERATIN COLLECTION FOR SILKY SMOOTH HAIR

Our revamped TRESemmé Keratin Collection, now with a color-treated system and enhanced hair smoothing products, is specially designed to fight frizz, detangle knots, boost shine, add silky softness, protect against breakage, and tame those pesky flyaways.

When it comes to smooth hair, keratin products are a must. That's why we recommend to cleanse and condition with TRESemmé Keratin Smooth Shampoo & Conditioner to transform dry tresses into enviably smooth, sleek locks. Treat dry hair to a TRESemmé Keratin Smooth Mask for a head-turning shine. Tackle frizz and control flyaways with TRESemmé Keratin Smooth Anti-Frizz Serum. To protect your color with keratin for hair, use our revamped Keratin Color shampoo and conditioner for color-treated hair that provides radiant shine and vibrant color.

32.     The portion of the TRESemmé website addressing the TRESemmé Products

also explains "HOW IT WORKS":

Our TRESemmé Keratin Collection unique ranges of keratin hair products, deeply nourishes and protects frizz-prone locks from root to tip. For color-treated hair, TRESemmé Keratin Color shampoo and conditioner, with anti-fade technology™, helps prolong color and extend time between coloring. Our Keratin Repair shampoo and conditioner system delivers 20X stronger hair using Bond Plex™ technology to repair hair from damage while our Keratin Smooth collection uses advanced Lamellar-Discipline™ to gently cleanse and repair hair while giving it a vibrant finish and frizz-control

33.     The TRESemmé Products labeling and the TRESemmé Products website do

not provide warnings regarding the TRESemmé Products, including any warnings disclosing

to consumers the risk of DMDM (alone or in combination with other ingredients) or that the

TRESemmé Products may cause hair loss and scalp irritation when used properly. Upon

information and belief, Conopco does not warn consumers about those risks through

consumer-facing means.

**B.      The TRESemmé Products Contain or Contained DMDM, a Chemical That Can Cause Hair Loss, Dermatitis, and Scalp Irritation**

34.     Keratin is a protein and the key structural material making up hair and nails. Keratin is often added to shampoos and conditioners to purportedly benefit hair and make it more healthy and visually appealing. As protein is food for microbes, keratin hair products would spoil or have an abbreviated shelf life without added preservatives to extend the life of the product.

35.     There are various preservatives that are used in cosmetics and hair products, including formaldehyde donors such as DMDM. Formaldehyde donors (also called formaldehyde releasers or formaldehyde releasing agents) are chemical compounds that slowly release formaldehyde. Formaldehyde donors are added to beauty products to prevent microbial growth and extend shelf-life and the use of cosmetics containing formaldehyde donors is one of the leading ways human skin comes into contact with formaldehyde.

36.     DMDM is an organic compound belonging to a class of compounds known as hydantoins. It is used in the cosmetics industry and found in the TRESemmé Products. DMDM slowly releases formaldehyde and works as a preservative and increases shelf life by making the environment less favorable to microorganisms.

37.     Research has long demonstrated the harmful effects of formaldehyde, formaldehyde donors like DMDM, and DMDM in particular, including:

- A 1988 patch-test study[3] examining the link between the presence of DMDM in cosmetics and adverse patients pre-sensitized to formaldehyde determined that "aqueous solutions of DMDM hydantoin, in concentrations comparable to those used in cosmetic products, contain enough free formaldehyde to cause dermatitis…," and that despite earlier conclusions that DMDM hydantoin is a safe cosmetic ingredient, "data suggest that an increase in the use of this preservative may also increase the risk of cosmetic dermatitis in patients allergic to

_____

[3]     A patch test is a diagnostic method used to determine which specific substances cause allergic inflammation of a patient's skin.

formaldehyde." The authors further suggested that cosmetic products with formaldehyde releasing products should have warnings that the products "'contain formaldehyde'. . . whether present as free formaldehyde or bound by a donor."

- The 2005-2006 North American Contact Dermatitis Group concluded DMDM was the 21st most common allergen according to patch test data collected from its members during that time. According to the National Center for Biotechnology Information, DMDMH contains a significant amount of formaldehyde and thus should be avoided in all formaldehyde allergic patients.

- Formaldehyde is a known human carcinogen and is recognized as such by the United State National Toxicology Program and the International Agency for research on Cancer. In 2009, a review of the literature on occupational exposures and formaldehyde shows a link between formaldehyde and leukemia.

- A 2010 study concluded that although "[i]t has been long accepted that formaldehyde-releaser sensitization is attributable to released formaldehyde . . . . clinical studies show the existence of patients allergic to formaldehyde-releasers but not to formaldehyde itself." That same study found DMDM hydantoin to be "reactive per se."

- A 2015 study concluded "determined that longer storage time and higher temperature increase the amount of formaldehyde released from FRPs and could ultimately lead to more severe health concerns."

- A 2017 statistical analysis of 32 years of data concerning allergic contact dermatitis observed a significant increase in positive reactions with formaldehyde and "that the rates of positive reactions to Dimethylol dimethyl (DMDM) hydantoin, remained unchanged."

- DMDM is considered by the U.S. Food & Drug Administration (FDA) as one of the top allergens "that cause the most allergic reactions from the use of cosmetic products." According to the FDA, DMDM can "trigger the immune system to release chemical substances such as antibodies," resulting in reactions such as itchiness, red rashes on the skin, or more extreme reactions.

38.     It is commonly understood that as a person becomes more exposed to an irritant such as DMDM over time the likelihood and severity of the reaction increase. This is called irritant contact dermatitis ("ICD") and can occur in any person if the amount and duration of irritant exposure are sufficient to cause direct epidermal keratinocyte damage.

39.     The irritation of the scalp, including dermatitis, has been linked to hair

brittleness and hair loss, with one 2018 study stating that "A number of observations have found that premature hair loss may be caused by the poor scalp health associated with either dandruff and seborrheic dermatitis, or psoriasis, indicating that the effect on the preemergent hair fiber may alter the anchoring force of the fiber with the follicle, as evidenced by an increased proportion both of catagen and telogen, and of dysplastic anagen hairs (anagen hairs devoid of hair root sheaths) in the trichogram (hair pluck)."

40.     Due to the foregoing risks, some companies have removed formaldehyde donors like DMDM from their cosmetics. For instance, in 2012, Johnson & Johnson announced that it would "remove a host of potentially harmful chemicals, like formaldehyde, from its line of consumer products by the end of 2015." Likewise, in 2017, CVS Health announced that it would be removing "parabens, phthalates and the most prevalent formaldehyde donors (preservative ingredients that can release formaldehyde over time) from . . . store brands CVS Health, Beauty 360, Essence of Beauty, and Blade product lines" and that it planned to stop "shipping products that don't meet these standards to our distribution centers by the end of 2019."

41.     Unlike those companies, Conopco continues to use formaldehyde donors as a preservative in certain of its products, stating on its website that "Regulators and scientists around the world agree that formaldehyde donors are safe at the levels used in home and beauty & personal care products."

42.     Upon information and belief, despite touting the safety of formaldehyde donors like DMDM on its website, Conopco does not use formaldehyde donors in baby care products and may have recently reformulated certain of its products to remove DMDM, including the TRESemmé Products at issue in this Complaint (although some online retailers still list DMDM as an ingredient in the TRESemmé Products).

43.     Conopco used and may still use DMDM in certain TRESemmé Products and

other Conopco products despite the existence of comparable and affordable alternatives, including glyoxylic acid (or derivatives thereof); potassium sorbate and sorbic acid; citric acid and its salts; rosemary oil extract; neem oil extract; lavender oil; grapefruit seed extract; vinegars; and reducing the amounts of DMDM.

44.     Conopco has never warned consumers about the dangers of and possible reactions to DMDM or the TRESemmé Products, including the risk of hair loss, dermatitis, and scalp irritation and has only ever informed consumers that products containing DMDM are safe for use.

45.     Conopco has also failed to recall the TRESemmé Products, include a patch test or some other means to determine whether a consumer may be allergic to the product prior to use, or include an appropriate warning about DMDM, even after Conopco received hundreds of complaints alleging that the TRESemmé Products and similar products containing DMDM caused hair loss and other injuries.

**C.     Conopco Has Known of the Harms of DMDM for Approximately a Decade Based on Prior Litigation and Ongoing Consumer Complaints**

46.     In 2012, consumers filed at least three putative class actions alleging that Conopco's Suave Keratin Kit, although advertised to smooth hair and coat it with keratin, in fact caused significant hair loss upon proper application. The cases were eventually settled in the Northern District of Illinois, where the first-filed case—*Reid*—was initiated. *See generally Reid*, Complaint (*Reid* Dkt. 1); *Reid* Settlement Agreement at ¶ 1 (*Reid* Dkt. 90-1).

47.     Among other things, the plaintiffs alleged that:

- "Unilever United States, Inc. ("Unilever") labeled, advertised, promoted and sold the Treatment targeting women who wanted smooth, shiny, manageable hair with no frizz. Through an extensive marketing campaign and via its website and packaging, Defendant made a number of express warranties: that the Treatment was a Keratin-based smoothing treatment and not a toxic chemical relaxer, that its effects would last no longer than 30 days, that it contained No Formaldehyde, and that it was safe." *Id.* at ¶ 2.

- "In addition, the Defendant falsely claimed that the Treatment contained 'No Formaldehyde,' in all capital letters on the box cover, although the Treatment contains a chemical ingredient that is known to release Formaldehyde upon its use or application." *Id.* at ¶ 4.

- "… despite the express representation that the Treatment contains no Formaldehyde, the Treatment does contain DMDM Hydantoin, a chemical that is known as a "Formaldehyde-releaser." *Id.* at ¶ 30.

- "Plaintiffs and the Class would also not expect that application the Treatment would cause hair loss upon proper application." *Id.* at ¶ 33.

- "Although it is not yet known what ingredient or combination of ingredients in the Treatment caused significant hair loss to Plaintiffs and members of the Class, what is clear is that nowhere on the package labeling or on Defendant's websites or other marketing materials did Defendant warn Plaintiffs and members of the Class that they were at risk of significant hair loss upon proper application of the Treatment" *Id.* at ¶ 6.

- "Defendant failed to do so even though Defendant knew, before or almost immediately upon introduction of the Product in late 2011, that consumers were complaining that the Treatment caused significant hair loss (among other adverse effects, such as chemical burns, hair breakage and hair discoloration)." ¶ 7.

48.     On July 9, 2014, the United States District Court, Northern District of Illinois entered an Order approving the class-wide settlement of the *Reid* case for $10,250,000. *See* Settlement Agreement at ¶ 4 (Dkt. 90-1); Final Approval Order (Dkt. 143). On April 18, 2016, the United States Court of Appeals for the Seventh Circuit approved the settlement. *See* Mandate and Opinion (Dkts. 219, 220).

49.     Research has shown the dangers of DMDM since at least the 1970s. However, even if Conopco was not aware of the dangers of DMDM from its business operations and own research, at a minimum, Conopco has been on notice of the dangers of DMDM in hair care products since the Suave Keratin lawsuits were filed in 2012.

50.     Besides the Suave Keratin Treatment class actions filed beginning in 2012, consumers have been complaining about the harmful effects of the TRESemmé Products since at least 2012 on various online sources, including on retailer websites and blogs.

51.     A sample of complaints posted on Amazon.com details scalp reactivity and hair loss:

- Star rating unknown. **BEWARE**
- Reviewed in the United States on July 28, 2013
- "I tried this shampoo for two weeks. I wash my hair about three times a week. In that short amount of time, I lost ALOT of hair. I have thick, wavy and used to have TONS of hair. **After using this product, I noticed a huge difference in the amount of hair I was losing daily.** It is now very dry, brittle and my scalp started to itch. I was using Loreal sulfate free smoothing shampoo and conditioner before this. I wanted to try something different as I flat iron my hair quite frequently. Boy do I regret it! **All I can say is BEWARE. It does smoothe your hair by thinning it out! Pay close attention to the amount of hair you are losing in the shower and throughout the day! It DOES matter**!" (emphasis supplied)

- 1.0 out of 5 Stars. **Hair shedding**
- Reviewed in the United States on November 23, 2013
- "This product seemed find [sic] at first. I'm trying to grow my hair out and I thought that this would help keep it healthy and was doing everything I was told to do but still **my hair was coming out in chunks**. I changed shampoos and as soon as I did my hair wasn't Coming out in chunks. I ran out of shampoo so I was forced to go back to this one and **My hair began to shed horridly again**. I threw this over my balcony."

- 2.0 out of 5 stars. **Too many sensitives (sic)**
- Reviewed in the United States on August 6, 2014.

It occurred to me that the only thing else it could be would be an allergic reaction. Like several others on here I am not sensitive to things in general. Maybe 1 medication and that's it. I think it just took me longer to realize what was doing it because of my not being sensitive. I have washed my hair with another shampoo tonight and hope that it will gradually fade away. I was becoming concerned because the itching was focused in 3 spots on my head and with any great amount of itching I'm sure I will eventually scratch bald spots there.

The smoothing effect was minimal and I was just trying to use it up. My hair is between curly and wavy and was bra strap length. **I had begun to have lots of hair fall, to the point of it being all over the house and I assumed it was because my hair was so long**. I have since cut it because hair everywhere disgusts me and I am now wondering it this was caused by this shampoo as well (emphasis supplied).

- 1.0 out of 5 stars. **garbage!!!!**
- Reviewed in the United States on January 14, 2015
- "I have kinky coily hair and they were giving this shampoo and its conditioner out at my job. And I am appalled that they would even think this stuff was

good enough to give out. My hair was nice and soft before this went in. It completely stripped my hair of its natural oils . . . **My hair started falling out immediately**. I had to pile in the shampoo to undo the mess it did to my hair. WOW!!!" (emphasis supplied).

- 1.0 out of 5 stars. **Causes Significant Hair Loss - Do not buy!**
- Reviewed in the United States on July 10, 2015
- "Absolutely horrible shampoo! At first I got it because the name of it intrigued me. I have thin, dry, wavy hair and was looking for something that would help control my hair's extremely frizzy texture. At first I loved this shampoo and the scent is really nice too. **However, within a couple weeks of use, I noticed chunks of my hair falling out. I did some research on this shampoo and noticed others who said similar things after trying it. I'm so disappointed because this is thinning out my already thin hair. Seriously this causes a lot of hair loss, do not buy**!" (emphasis supplied)

- 1.0 out of 5 stars. **I dont recommend this to anyone**
- Reviewed in the United States on July 20, 2016
- "I dont recommend this to anyone. **My hair started falling down after using this shampoo**. waste of money. I am going to throw it to the dustbin. Please dont buy if you dont want your hair to be fallen." (emphasis supplied)

- 1.0 out of 5 stars. **thinning and missing hair.**
- Reviewed in the United States on September 1, 2016
- "used this product for about 1 month. I have fine hair that is long and I haven't dyed it in 1.5 years. I started noticing my hair wasn't styling quite the same as it always had and it was feeling greasy by the afternoon after just washing it in the morning. **Then I noticed my hair was thinning and sections of my hair lost so much that it barely covered the scalp underneath**. I switch shampoos frequently and even had success with tresemme moisture rich shampoo in the past. Nothing else about my hair or health routine changed in the month that I used this product. It was a disappointment." (emphasis supplied)

- 2.0 out of 5 stars **Causes problems**
- Reviewed in the United States on August 23, 2018
- "Horrible products. **The shampoo for color treated hair makes my hair pull out and my scalp itches**." (emphasis supplied)[4]

52.    Like Amazon, individuals began to issue similar complaints regarding

TRESemmé for at least four years on PRODUCTREVIEW.COM:

- **AWFUL!!!!**
- 1.0 out of 5 stars.
- Published 4 years ago by Lee

---

[4] Reviews sampled from https://www.amazon.com/TRESemm%C3%A9-Shampoo-Keratin-Smooth-22/dp/B00AO4E9E0 (last visited on March 29, 2021)

- "I used these products and **they made me lose more hair** and my scalp was so itchy ( wake me up in the middle of the night itchy) I thought I had head lice. So I figured I was allergic and stopped using it.... my daughter started to use it so we didn't waste it. She had the same reaction as well as her friends that use it. We are throwing it away right now." (emphasis supplied).

- **Worst i've used so far**
- 1.0 out of 5 stars
- Published 3 years ago by Kell
- "I have to usually have to switch shampoos every three months or so i thought tresemme would be the exception but i was wrong not only did it make my scalp itchy as hell it also **has been making my hair fall out so now on the sides it looks like it's thining** never buying this product again!" (emphasis supplied)

- **My hair is falling out!**
- 1.0 out of 5 stars
- Published 4 years ago by Gina
- **"I've been using this product for roughly 3 months. I couldn't figure out why I started losing so much hair. Well I finally came to realize it's this.** Thanks TRESemmé!" (emphasis supplied).

- **"OMFG TEARS!"**
- 1.0 out of 5 stars
- Published 2 years ago from Shomari
- "**This product caused a lot of hair loss for me. I've never had anything like this happen to me, I literally have a big bald spot in the middle of my head!** And the shedding will not stop, I've only used this product once, about four days ago. This is the worst product I have ever used in my LIFE!!!" (emphasis supplied).

- **"Made my hair fall out within a week!!"**
- 1.0 out of stars
- Published 2 years ago by Kat
- Bought this because their classic TRESemmé (black bottle) has always been good. Well, after a week my hair was literally falling out...CLUMPS in my hand and clogged my shower 3 times in one shower. Also made my hair staticky and dry feeling. I'm not sure I'll ever use their product again!! [5]

53.     Thus, Conopco was on notice of the problems with the TRESemmé Products since at least 2012 as evidenced by various litigation and consumer complaints either made directly to Conopco or monitored by Conopco as part of its business operations.

**D.     Plaintiff Used the TRESemmé Products and Suffered Severe Hair Loss  and Hair**

---

[5] Reviews sampled from https://www.productreview.com.au/listings/tresemme-keratin-smooth-shampoo-and-conditioner?rating=1

**Loss**

54.     Until 2019 or 2020, Plaintiff purchased and used TRESemmé Products, including TRESemmé Color Revitalize containing DMDM.

55.     Plaintiff reviewed the labeling and applied the TRESemmé Products as directed on the instructions and suffered an increasingly severe reaction to the TRESemmé Products that culminated with significant hair loss, hair thinning, and severe scalp irritation, including hair falling out in clumps after Plaintiff washed her hair with TRESemmé Products as reflected in the following picture:



56.     Plaintiff realized that TRESemmé Products were having a severe adverse impact on her scalp and hair, and she stopped using the TRESemmé Products. Since then,

Plaintiff has no longer been experiencing new hair loss, hair thinning, or scalp irritation.

## CLASS ACTION ALLEGATIONS

57.     Plaintiff seeks certification of the following class:

> All residents of the United States who suffered hair loss, thinning hair, or other injuries after using TRESemmé Products containing DMDM, who have retained Squitieri & Fearon, LLP as their counsel, and who have not separately filed a lawsuit against Defendant by the date of the class certification order (the "Class").

> The Class excludes any judge or magistrate assigned to this case, Conopco and any entity in which Conopco has a controlling interest, and Conopco's officer, directors, legal representatives, successors, and assigns.

58.     There are more than three hundred members in the Class. Accordingly, the Class consists of hundreds of consumers and is thus so numerous that joinder of all members is impracticable. Although the exact number of members is unknown to Plaintiff at this time, the identities and addresses of the class members can be readily determined from business records maintained by Squitieri & Fearon, LLP, the Class members, and other sources.

59.     Plaintiff's claims are typical of those belonging to Class members. Plaintiff and each Class member used TRESemmé Products containing DMDM and suffered injuries, including hair loss, hair thinning, and scalp irritation.

60.     Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in complex class action litigation. Plaintiff and her counsel have no adverse interests to the Class.

**A.     Rule 23(b)(1)**

61.     Class action status is warranted under Rule 23(b)(1)(A). Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual members of the classes, which would establish incompatible standards of conduct for Conopco.

62.    Class action status is also warranted under Rule 23(b)(1)(B). Prosecuting separate actions by or against individual Class members would create a risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

**B.    Rule 23(b)(2)**

63.    This action is appropriate as a class action pursuant to Rule 23(b)(2) as Plaintiff seeks injunctive relief for the class. Conopco has acted in a manner generally applicable to the Class by designing, manufacturing, distributing, and selling unreasonably dangerous TRESemmé Products containing DMDM and by failing to provide any warnings that TRESemmé Products containing DMDM can cause injuries, including hair loss, hair thinning, and scalp irritation. Conopco's unlawful practices, if not enjoined, will cause Plaintiff and the Class substantial continuing future harm and serious injury.

**C.    Rule 23(b)(3)**

64.    This action is also appropriate as a class action pursuant to Rule 23(b)(3). Common questions of law and fact predominate over any individualized questions.

65.    Common legal and factual questions shared by Plaintiff and the Class include the following:

   i.      Whether Conopco owed a duty of care to Plaintiff and the Class;

   ii.     Whether Conopco acted negligently when designing, labeling, manufacturing, marketing, distributing, and selling TRESemmé Products containing DMDM;

   iii.    Whether TRESemmé Products containing DMDM manufactured, distributed, and sold by Conopco conformed to Defendant's express representations;

   iv.     Whether the TRESemmé Products containing DMDM that Conopco designed, manufactured, and labeled were of merchantable quality and safe for their intended use;

v.      Whether the foreseeable risks of the TRESemmé Products containing DMDM exceeded the benefits associated with TRESemmé Products containing DMDM; and

vi.     Whether there was a reasonable alternative design of the TRESemmé Products that did not contain DMDM.

66.     The Class is defined by objective criteria so that it is administratively feasible for the Court to determine whether a particular individual is a member.

67.     A class action is superior to other available means for the fair and efficient adjudication of this controversy for other reasons as well. The injuries suffered by individual Class members are, though important to them, relatively modest compared to the burden and expense of individual prosecution needed to address Conopco's misconduct. Individualized litigation presents a potential for inconsistent or contradictory judgments. In contrast, a class action presents far fewer management difficulties; allows the hearing of claims that might otherwise go unaddressed; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

68.     Plaintiff cannot be certain of the form and manner of proposed notice to Class members until the class is finally defined and discovery is completed regarding the identity of class members. Plaintiff anticipates, however, that notice by mail will be given to Class members who can be identified specifically. In addition, notice may be published in appropriate publications, on the internet, in press releases and in similar communications in a way that is targeted to reach Class members.

69.     Plaintiff reserves the right to modify or amend the definition of the proposed class at any time before the class is certified by the Court.

70.     Plaintiff alleges on her own behalf and on behalf of the Class of similarly situated consumers that the following issues of fact or law are common to all members of the Class and can be resolved on behalf of the Class through Rule 23(c)(4):

(a)     Did the TRESemmé Products contain chemicals known to be dangerous and to

cause hair loss, including DMDM?

(b)     Can the TRESemmé Products containing DMDM cause serious adverse reactions and injury, including hair loss?

(c)     Are Defendant's instructions for use inadequate to prevent harm from use of the TRESemmé Products containing DMDM because the product causes serious injury, including hair loss, even if the products' instructions are followed?

(d)     Did Defendant fail to adequately warn consumers of the risks associated with the use of the TRESemmé Products containing DMDM, including the incidence and nature of the risk of adverse reactions, such as hair loss?

(e)     Do the risks posed by the TRESemmé Products containing DMDM manufactured, designed, sold, supplied, and/or distributed by Defendant outweigh the utility of the products?

(f)     Are the TRESemmé Products containing DMDM manufactured, designed, sold, supplied, and/or distributed by Defendant more dangerous than an ordinary consumer would expect?

(g)     Do safer alternative preservatives exist, including those that do not include DMDM?

(h)     Do the TRESemmé Products manufactured, designed, sold, supplied, and/or distributed by Defendant conform to Defendant's express representations?

(i)     Are the TRESemmé Products hair products manufactured, designed, sold, supplied, and/or distributed by Defendant of merchantable quality and safe for their expected use/purpose?

71.     A finding on the above issues by the trier of fact will materially advance the action on behalf of all members of the class.

**TOLLING OF THE STATUTE OF LIMITATIONS**

72.     The filing of this class action Complaint serves to toll and preserve the claims of the Class members who were injured by Defendant's wrongful and unlawful acts, and the commencement of this action suspends the applicable statutes of limitations as to all  members of the Class and to those persons that, if a District Judge declines to certify a class or certifies a class that excludes particular persons, would have been members or parties to the action as pled.

73.     Defendant at all relevant times knew of should have known of the problems and defects with TRESemmé Products containing DMDM, and the falsity and/or misleading nature of Defendant's statements, representations, and warranties with respect to TRESemmé Products containing DMDM.

74.     Defendant concealed and failed to notify Plaintiff, the Class members, and the public of such defects.

75.     Any applicable statute of limitations has therefore been tolled by the filing of this Class Action Complaint as well as by Defendant's knowledge, active concealment, and/or denial of the facts alleged herein, which behavior is ongoing.

**COUNT I**
**STRICT PRODUCTS LIABILITY: DESIGN DEFECT**

76.      Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows.

77.     Defendant is the manufacturer, designer, distributor, seller, and/or supplier of hair care products and hair dyes, including TRESemmé containing DMDM.

78.     The TRESemmé manufactured and supplied by Defendant was defective in design or formulation in that, when it left the hands of the Defendant, the foreseeable risks of the product exceeded the benefits associated with its design or formulation, and it was more dangerous than an ordinary consumer would expect.

79. The TRESemmé that Plaintiff and the Class members used had not been materially altered or modified prior to its use.

80. TRESemmé is also defectively designed because it contains the unreasonably dangerous ingredient DMDM, though there are reasonably safer and effective alternatives that do not include DMDM.

81. TRESemmé is also defectively designed because its cautions and/or warnings are inadequate, as set forth in the Complaint, for the following reasons, among others:

> (a) The TRESemmé Products fail to warn of the rates of adverse reaction among the general population, including hair loss;
>
> (b) The TRESemmé Products fail to warn that it can cause hair loss, thinning, and dermatitis;
>
> (c) Defendant minimized and downplayed the risks associated with TRESemmé hair products containing DMDM, including the risk of hair loss and thinning hair;
>
> (d) The TRESemmé Products fail to advise their users of the benefits of undergoing a patch test conducted by a medical professional; and
>
> (e) TRESemmé Products fail to display and advise of the product's risks, proper use, or the need to conduct a patch test in an effective and reasonable manner.

82. By marketing a product designed such that it was not reasonably safe, despite the availability of safer alternatives, and failing to sufficiently warn users of the dangers, Defendant was a substantial factor in causing injuries to Plaintiff and the Class.

83. As a direct and proximate result of Plaintiff and the Class using TRESemmé containing DMDM that was manufactured, designed, sold, supplied, marketed and introduced into the stream of commerce by Defendant, Plaintiff and the Class suffered harm, damages and

economic loss and will continue to suffer such harm, damages and economic loss in the future.

84.     As a direct and proximate result of the foregoing, Plaintiff and the Class are entitled to damages. Further, Defendant's actions and omissions as identified in this Complaint constitute a flagrant disregard for human life.

## COUNT II
## STRICT PRODUCTS LIABILITY: FAILURE TO PROVIDE ADEQUATE WARNING

85.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows.

86.     The TRESemmé manufactured and supplied by Defendant was defective due to inadequate warnings or instructions because Defendant knew or should have known that the product created significant risks of serious bodily harm to consumers but Defendant failed to adequately warn consumers of such risks.

87.     Defendant knew or, in the exercise of reasonable care, should have known that hair care products such as TRESemmé containing DMDM that are marketed to be used repeatedly as a cosmetic hair product present a risk of severe reactions, including hair loss, thinning hair, dermatitis, and other adverse reactions.

88.     Defendant failed to provide the warnings or instructions that a manufacturer exercising reasonable care would have provided concerning the risk of injuries from use and repeated use of TRESemmé containing DMDM in light of the likelihood that the product would cause the harm claimed by Plaintiff and the Class and in light of the likely seriousness of that harm.

89.     Defendant, as the manufacturer of TRESemmé, is held to the level of knowledge of an expert in the field of that type of hair care product, and had a duty to warn consumers of the dangers associated with TRESemmé but failed to do so.

90.     Defendant failed to reasonably or adequately warn users of the risks of TRESemmé containing DMDM for the following reasons, among others:

    a.   Defendant minimized and downplayed those risks associated with TRESemmé containing DMDM that it chose to disclose;

    b.   Defendant received numerous reports of people suffering hair loss, thinning hair, and dermatitis, after using TRESemmé but Defendant failed to warn Plaintiff and the Class about the reports and about the possibility of being injured by using TRESemmé; and

    c.   The TRESemmé Products failed to display and advise of the product's risks, proper use, or need to conduct a patch test in an effective and reasonable manner.

91.     The TRESemmé manufactured and supplied by Defendant was defective due to inadequate post-marketing warning or instruction because, after Defendant knew or should have known of the risk of serious bodily harm, as set forth herein, from the use of the TRESemmé Product Defendant failed to provide an adequate warning to consumers of the product, knowing the product could cause serious injury as set forth herein, including hair loss.

92.     Plaintiff read and followed the deficient directions that were provided with Defendant's TRESemmé Products. Defendant's inadequate directions and packaging were a substantial factor in causing injuries to Plaintiff and the Class. As a direct and proximate result of Plaintiff and the Class using TRESemmé as designed, sold, supplied, marketed, and introduced into the stream of commerce by Defendant, Plaintiff and the Class suffered harm and damages and will continue to suffer such harm and damages in the future.

93.     As a result of Defendant's failure to adequately warn Plaintiff and the Class, Plaintiff and the Class are entitled to damages from Defendant. Further, Defendant's actions and omissions as identified in this Complaint constitute a flagrant disregard for human life.

## COUNT III
## NEGLIGENCE

94.     Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows.

95.     Defendant had a duty to exercise reasonable case in designing, manufacturing, testing, marketing, and distributing into the stream of commerce the TRESemmé Products containing DMDM, including a duty to insure that TRESemmé did not pose a significantly increased risk of injury to Plaintiff, the Class,and other consumers.

96.     Defendant failed to exercise reasonable care in designing, manufacturing, testing, marketing and distributing into the stream of commerce the TRESemmé Products containing DMDM. Defendant knew or should have known that TRESemmé is marketed to be used on a regular basis to improve cosmetic appearance and presents a risk of severe injuries, including hair loss, thinning hair, dermatitis, and other injuries, therefore giving rise to pain and suffering, debilitation, and the need for medical treatment and therefore was not safe for use by Plaintiff, the Class,  or other consumers.

97.     Defendant failed to exercise reasonable care by failing to sufficiently warn consumers of the risks associated with the product.

98.     Although Defendant knew or should have known that TRESemmé containing DMDM could cause severe reactions in consumers, such as hair loss, and therefore give rise to pain and suffering, debilitation, and the need for medical treatment, Defendant continued to market TRESemmé containing DMDM as safe and effective.

99.     Although Defendant knew or should have known that TRESemmé containing DMDM could cause hair loss and severe reactions in consumers and therefore give rise to pain and suffering, debilitation, and the need for medical treatment, Defendant failed to use ordinary care in warning Plaintiff, the Class, and other consumers about these risks.

100.    As a direct and proximate result of Defendant's negligence, Plaintiff and the

Class have suffered significant damages, including physical injury, pain and suffering and will continue to suffer such damages in the future.

101.   Defendant's actions and omissions were malicious, wanton, oppressive, and/or reckless.

## JURY DEMAND

In accordance with Fed. R. Civ. P. 38, Plaintiff demands a trial by jury.

## <u>DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF</u>

Plaintiff respectfully requests that the Court enter judgment in her favor and in favor of the Class and against Defendant and issue an Order:

a. Certifying the Class and appointing Plaintiff as representative plaintiff and appointing Squitieri & Fearon, LLP as counsel for the Class;

b. Actual and compensatory damages to Plaintiff and the Class;

c. Punitive, statutory, and treble damages, as allowable by law, to Plaintiff and the Class;

d. Pre- and post-judgment costs, interest, and attorneys' fees;

e. Such other and further relief as this Court may deem appropriate and equitable.

DATED:   New York, New York
December 6, 2021

Respectfully submitted,

SQUITIERI & FEARON, LLP

By: _____
    Stephen J. Fearon, Jr.
424 Madison Avenue
3rd Floor
New York, New York 10017
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
Email: stephen@sfclasslaw.com

**ATTORNEYS FOR PLAINTIFF**

27