UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ELIZABETH CANDELARIA, on behalf of
herself and all others similarly situated,

                  Plaintiff,

   -against-

CONOPCO, INC. d/b/a UNILEVER HOME
& PERSONAL CARE USA,

                Defendant.

**MEMORANDUM AND ORDER**

Case No. 21-CV-6760 (FB) (TAM)

*Appearances:*
*For the Plaintiff*:
STEPHEN J. FEARON, JR.
PAUL SWEENY
Squitieri & Fearon, LLP
305 Broadway, 7th Floor
New York, New York 10007

*For Defendants*:
REYNOLD LAMBERT
GAVIN J. ROONEY
Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, NY 10020

**BLOCK, Senior District Judge:**

Plaintiff Elizabeth Candelaria ("Candelaria") brought this action on behalf of

herself and a putative class against Conopco, Inc., d/b/a Unilever Home & Personal

Care USA ("Unilever") alleging that its TRESemmé shampoo caused her to lose

her hair. She alleges defective design, failure to warn, and negligence. Unilever

moves to dismiss Candelaria's claims under Federal Rule of Civil Procedure

12(b)(6) and in the alternative to strike her class allegations under Rules 12(f) and

23(d)(1)(D). For the reasons explained below, Unilever's motion to dismiss is

1

denied, and its motion to strike the Complaint's class allegations is granted in part and denied in part.

## I. FACTUAL BACKGROUND

The following facts are taken from the Complaint and are presumed to be true at the motion to dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conopco, Inc., is a New Jersey corporation and subsidiary of Unilever that designs, manufactures, and markets a line of shampoos under the brand name TRESemmé. Candelaria, a domiciliary of New York, used TRESemmé products including TRESemmé Color Revitalize shampoo over an extended period, "[u]ntil 2019 or 2020." Compl. ¶ 11. She suffered "an increasingly severe reaction" to the products, experiencing "significant hair loss, hair thinning, and severe scalp irritation, including hair falling out in clumps" after washing. Compl. ¶ 55. These reactions ceased once Candelaria stopped using TRESemmé products.

The TRESemmé products that Candelaria used contained DMDM, a hydantoin compound used in cosmetics as a preservative. DMDM acts as a "formaldehyde donor" that slowly releases formaldehyde in order to prevent microbial growth and extend the shelf life of cosmetics. Compl. ¶ 40. The Complaint alleges that DMDM has been shown by scientific and medical studies to "cause dermatitis" and "increase the risk of cosmetic dermatitis in patients allergic to formaldehyde." Compl. ¶ 37. DMDM is considered by the Food and Drug

2

Administration to be a common allergen, causing "itchiness, red rashes on the skin, or more extreme reactions." *Id.* Exposure to the compound over extended periods increases the risk of negative effects as well as their severity, a phenomenon known as "irritant contact dermatitis" which occurs when DMDM exposure is "sufficient to cause direct epidermal keratinocyte damage." Compl. ¶ 38.

Unilever has been the subject of customer complaints and at least three other lawsuits since 2012 concerning consumers' adverse reactions to DMDM. Candelaria's Complaint alleges that Unilever did not provide warnings about the potential effects of DMDM exposure on TRESemmé product labels or through other means. Several of Unilever's competitors have removed DMDM from their cosmetic products between 2012 and 2019, including one major manufacturer that included DMDM in a list of "potentially harmful chemicals" being removed from its products. Compl. ¶ 40. Candelaria maintains that there are several "comparable and affordable" alternative preservatives that Unilever could use instead of DMDM. Compl. ¶ 43. She also claims that Unilever could reduce the amount of DMDM present in TRESemmé products.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). "[A] court may consider the complaint as well as any written instrument attached to [the complaint] as an exhibit" in making this determination. *Kalyanaram v. Am. Ass'n of Univ. Professors at New York Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (internal quotation omitted). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 550 U.S. at 555. "[T]he proper question is whether there is a permissible relevant inference from all of the facts alleged, taken collectively, not whether an inference is permissible based on any individual allegation, scrutinized in isolation." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (internal quotation omitted).

A district court sitting in diversity applies the choice of law rules of the state in which it sits. *Doe v. New York Univ.*, 537 F. Supp. 3d 483, 493 (S.D.N.Y. 2021). New York courts apply "the law of the jurisdiction having the greatest interest in the litigation." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013). Here, the parties agree that New York substantive law applies.

## III. DISCUSSION

### A. Causation

Unilever argues that Candelaria fails to plead that her hair loss was caused by her use of TRESemmé. Because causation is a requirement of each of Candelaria's claims, the Court will address their compliance with this requirement simultaneously. *See Wood v. Perdue Pharm. Co.*, No. 21-CV-6447 (LTS), 2021 WL 3887948, at *2 (S.D.N.Y. Aug. 27, 2021) (citing *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 107-09 (1983)) (product liability claims in New York require plaintiffs to "show that the product at issue was defective and that the defective product was the actual and proximate cause of his injury"); *Koublani v. Cochlear Ltd.*, No. 220CV1741DRHAYS, 2021 WL 2577068, at *14 (E.D.N.Y. June 23, 2021) ("Under New York law, a Plaintiff's claim based upon an alleged design defect or manufacturing defect sounding in either negligence or strict liability are functionally equivalent and will be analyzed concurrently"). Likewise, "failure to warn claims are identical under strict liability and negligence theories of recovery," and also require allegations that the failure "was the proximate cause of harm." *Savage v. Beiersdorf Inc.*, No. 13-CV-0696 DLI LB, 2013 WL 5532756, at *5 (E.D.N.Y. Sept. 30, 2013) (cleaned up).

Defect, negligence, and failure to warn claims are subject to New York's "substantial factor causation test," under which "an act or omission is regarded as a

legal cause of an injury if it was a substantial factor in bringing about the injury." *Locust Valley Water Dist. v. Dow Chem. Co.*, 465 F. Supp. 3d 235, 240 (E.D.N.Y. 2020) (quoting *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 725 F.3d 65, 116 (2d Cir. 2013)) (cleaned up). Importantly, a defendant's conduct need not be the *only* factor in causing the injury, just a "substantial" one. *Id.* For a cause to be "substantial," it must have "had such an effect in producing the injury that reasonable people would regard it as a cause." *MTBE*, 725 F.3d at 116 (quoting *Rojas v. City of New York*, 208 A.D.2d 416, 420 (1st Dep't 1994) (Dissent)). Courts are loath to dismiss claims for lack of proximate cause at the pleading stage. "The issue of proximate cause may be determined as a matter of law only where no reasonable person could find causation based on the facts alleged in the complaint," such as when one could not "find probable cause based on the facts in the Complaint without resorting to 'wild speculation.'" *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406 (S.D.N.Y. 2011) (quoting *Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 538 (S.D.N.Y. 2005)).

Unilever argues that the Complaint fails to plead causation for two reasons: (1) because Candelaria fails to rule out potential alternative causes of her hair loss, and (2) because Candelaria does not plead that she is allergic or hypersensitive to DMDM, despite highlighting the risks DMDM poses as an allergen.

Unilever builds these arguments on an incorrect pleading standard. Unilever invokes *Fleming v. Endo Int'l PLC*, No. 18 CIV. 4866 (GBD), 2019 WL 4378964 (S.D.N.Y. Aug. 27, 2019), to suggest that a plaintiff must plead both temporal proximity and the absence of alternative causes to adequately allege causation. This is unavailing. *See id.* at *3 ("In order to 'raise a reasonable inference that [a pharmaceutical] is the cause of [Fleming's] injuries,' Plaintiff must allege '[t]emporal proximity, combined with the absence of an alternative explanation.'" (quoting *Benefield v. Pfizer Inc.*, 103 F. Supp. 3d 449, 460 (S.D.N.Y. 2015)) (alterations in original). *Fleming* reconstrues allegations deemed to be sufficient in *Benefield* as a minimum pleading standard. *Benefield* held that temporal proximity and the absence of alternate causes for an injury were sufficient to plead medical causation in the context of the plaintiff's claims; it does not state that they were *necessary* to do so. 103 F. Supp. 3d at 460-61. It also reached this conclusion using Georgia law. *Id.* at 460. In any event, *Fleming* only purports to state this rule for claims involving pharmaceutical products. *See Fleming*, 2019 WL 4378964, at *3.

Nor do Unilever's arguments show a lack of causation under the correct pleading standard. First, it asserts that because Candelaria used TRESemmé products for an extended period, any number of factors could have caused her hair loss during that time. As discussed above, Candelaria need not eliminate every other potential cause of her injury in order to plead causation. She only must plead

facts that plausibly show DMDM in TRESemmé products to be a substantial factor—a low bar that the Complaint satisfies.

Specifically, the Complaint explains that medical and scientific research has shown the risks of DMDM and formaldehyde, which include hair loss, and that the risks of these injuries become greater after prolonged exposure to DMDM. *See* Compl. ¶ 37 (describing research showing DMDM causing "dermatitis" and other health concerns in patients, including in patients allergic to DMDM or formaldehyde); Compl. ¶ 38 (explaining that the severity of reactions increases along with the length of exposure); Compl. ¶ 39 (describing a study linking "premature hair loss" with "poor scalp health associated with either dandruff and seborrheic dermatitis, or psoriasis"). Candelaria also pleads that her hair loss and other symptoms matching those of dermatitis stopped once she ceased using TRESemmé products, further suggesting that they were a causal factor. This is more supportive factual matter than was present in cases that discarded similar claims because there were other plausible causes. *Cf. Dunham v. Covidien*, LP, 498 F. Supp. 3d 549, 558 (S.D.N.Y. 2020) ("That one study argued against using polyester mesh is not sufficient to meet the plaintiff's burden to plead a causal link between the use of polyester and [the] injuries.").

Unilever speculates that "alopecia . . . stress, diet, medications, or an adverse reaction to a different product" may have instead caused Candelaria's hair loss.

8

Dkt. No. 22, Def.'s Mot. Dismiss at 1. But it fails to explain how any of these potential alternatives make it implausible that DMDM in TRESemmé products was a substantial factor. Unilever declines to point to any facts in the Complaint suggesting that these alternatives affected Candeleria. Instead, it cites *Dunham,* which found a lack of causation in part because the plaintiff affirmatively pleaded facts suggesting an alternate cause which was more likely than the conduct for which she sought liability. *See Dunham*, 498 F. Supp. 3d at 558-59 ("the plaintiff alleges that injuries Ms. Dunham suffered were among the most common injuries caused by hernia surgeries using any type of mesh"). Here, a more likely alternative cause is not clear from the face of the Complaint.

Unilever next argues that its products could not have been a substantial factor in causing Candelaria's hair loss because Candelaria does not claim that she is allergic or hypersensitive to DMDM, and portions of the Complaint highlight DMDM as an allergen. Candelaria claims that Unilever should have warned consumers to take a patch test, which tests for allergies, before using TRESemmé because DMDM is an allergen. But the Complaint does not allege that Candelaria is allergic or hypersensitive to DMDM, or that she took a patch test to determine her tolerance of DMDM. This does not render causation implausible, as the Complaint does not allege that DMDM only causes dermatitis and hair loss in allergic individuals. *See* Compl. ¶ 37 (describing 1988 study finding that DMDM

9

"in concentrations comparable to those used in cosmetic products, contain enough free formaldehyde to cause dermatitis"); Compl. ¶ 38 ("as a person becomes more exposed to an irritant such as DMDM over time the likelihood and severity of the reaction increase. This is called irritant contact dermatitis and can occur in any person if the amount and duration of irritant exposure are sufficient to cause direct epidermal keratinocyte damage."). Nor is contact dermatitis a condition that strictly results from allergy.[1] Compl. ¶ 37-38.

The facts in the Complaint, taken as true, plausibly support Candeleria's allegation that exposure to DMDM in TRESemmé products was a substantial factor in causing her hair loss.

## B. Defective Design

"In a claim for defective design, plaintiff must make a showing that (1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury." *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F.

---

[1] Mayo Clinic, *Contact Dermatitis*, https://www.mayoclinic.org/diseases-conditions/contact-dermatitis/symptoms-causes/syc-20352742 (visited Feb. 22, 2023) ("Contact dermatitis is an itchy rash caused by direct contact with a substance *or* an allergic reaction to it.") (emphasis added). "When presented with a motion pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of and relied on when bringing the suit, or matters of which judicial notice may be taken." *Naughright v. Weiss*, 857 F. Supp. 2d 462, 468 (S.D.N.Y 2012).

10

Supp. 2d 53, 83 (S.D.N.Y. 2001) (citing *Voss v. Black & Decker Mfrg. Co.,* 59

N.Y.2d 102, 108 (1983)). The Court has already addressed the "substantial factor"

element above.

Unilever attacks Candelaria's design claims on the basis that they allege

injury based on an allergy, which is not a cognizable basis for finding a defect. *See*

*Kaempfe v. Lehn & Fink Prod. Corp.*, 21 A.D.2d 197, 199 (1964), *aff'd*, 20 N.Y.2d

818 (1967) ("If the injuries were suffered by reason of the patron's allergy to the

product or to its ingredients, no right of action exists in favor of the patron on any

theory of negligence in manufacture, distribution or use").

Candelaria's design defect claim does not solely rely on allegations that

DMDM is an allergen that caused Candelaria to have an allergic reaction, and is

therefore not foreclosed by the holding in *Kaempfe*. Candelaria alleges that

TRESemmé contained "the unreasonably dangerous ingredient DMDM," for

which "there are reasonably safer and effective alternatives," and that Unilever

failed to warn consumers of the potential for hair loss, thinning, and dermatitis

associated with exposure to DMDM. Compl. ¶ 80. As discussed above, Candelaria

does not describe her injury as an allergic reaction, nor are the Complaint's

allegations regarding the potential side effects of DMDM limited to allergic

reactions or DMDM's status as an allergen.

**C. Failure to Warn**

Unilever also argues that Candelaria's failure-to-warn claims must fail because she does not allege that Unilever concealed the presence of DMDM in TRESemmé, as it was listed as an ingredient. Under New York Law, failure-to-warn claims require pleading "(1) that a manufacturer has a duty to warn; (2) against dangers resulting from foreseeable uses about which it knew or should have known; and (3) that failure to do so was the proximate cause of harm." *Colon ex rel. Molina*, 199 F. Supp. 2d at 84. "The adequacy of the warning in a products liability case based on a failure to warn is, in all but the most unusual circumstances, a question of fact to be determined at trial." *Vicuna v. O.P. Schuman & Sons, Inc.*, 298 F. Supp. 3d 419, 439 (E.D.N.Y. 2017) (quoting *Cooley v. Carter–Wallace Inc.*, 102 A.D.2d 642, 642 (N.Y. App. Div. 4th Dep't)).

Candelaria acknowledges that Unilever listed DMDM as an ingredient on the label of TRESemmé products but alleges that it provided no further warning of its potential adverse effects. She claims Unilever failed to warn consumers about the risks of "severe reactions, including hair loss, thinning hair, dermatitis, and other adverse reactions." Compl. ¶ 88. She claims that Unilever downplayed these risks despite being aware of "numerous reports of people suffering" them, and that it should have warned customers to take a "patch test" to determine their sensitivity to DMDM. Compl. ¶ 90.

Unilever relies on *Kaempfe* to argue that listing an allergen as an ingredient is sufficient to warn those of the potential effects of an allergic reaction, but as explained above, this argument ignores that the Complaint is not solely couched in DMDM's danger as an allergen.

In the alternative, Unilever insists that Candelaria fails to plead that DMDM allergies are sufficiently common to create a burden for Unilever to warn consumers. *See Chwat v. Smithkline Beecham Corp.*, 818 F. Supp. 36, 38 (E.D.N.Y. 1993), *aff'd sub nom.* 19 F.3d 9 (2d Cir. 1994) (explaining that failure-to-warn plaintiffs must plead commonality of allergy to make a defendant aware that it needs to warn consumers of the presence of an allergen). However, to whatever extent Candelaria's claim does rely on DMDM's status as an allergen, the Complaint fulfilled this requirement by including the FDA's classification of DMDM "as one of the top allergens 'that cause the most allergic reactions from the use of cosmetic products.'" Compl. ¶ 37. Candelaria's claim that DMDM "causes a substantial proportion of users" to experience negative effects therefore cannot be said to be implausible as a matter of law. Compl. ¶ 5.

**D.     Motion to Strike Class Allegations**

Unilever also moves to strike the Complaint's class allegations. It supplies two arguments for doing so. First, Unilever argues that all of Candeleria's class allegations must be struck because she cannot satisfy Rule 23's numerosity

requirement. Second, it maintains that Candelaria's claim for injunctive class relief under Rule 23(b)(2) must be deleted from the Complaint because it is not cognizable. For the reasons discussed below, the Court grants Unilever's motion only with respect to Candeleria's Rule 23(b)(2) allegations.

Unilever moves to strike under the procedural outlets provided by Rules 12(f) and 23(d)(1)(D). Rule 12(f) "authorizes a court" to strike from a pleading "'any redundant, immaterial, impertinent, or scandalous matter'" *Ricketts v. City of Hartford,* 74 F.3d 1397, 1415 (2d Cir. 1996) (quoting Fed. R. Civ. P. 12(f)). Accordingly, the Second Circuit has allowed the use of Rule 12(f) to strike class allegations before a class certification motion is filed. *See Lipsett v. United States*, 359 F.2d 956, 958 (2d Cir. 1966). Rule 23(c)(1)(A) requires that courts "decide whether to certify a class action '[a]t an early practicable time' after a putative class action is brought." *Talarico v. Port Auth. of New York & New Jersey*, 367 F. Supp. 3d 161, 166 (S.D.N.Y. 2019) (quoting Fed. R. Civ. P. 23(c)(1)(A)). "Because a decision in the negative might be practicable even prior to discovery, Rule 23(d)(1)(D) allows" courts to strike aspects of class claims at early stages of litigation. *Id.* (quoting Fed. R. Civ. P. 23(d)(1)(D)).

These motions are "disfavored" because they seek to "preemptively terminate" class claims before discovery that plaintiffs "would otherwise be entitled [to] on questions relevant to class certification." *Calibuso v. Bank of Am.*

*Corp.*, 893 F. Supp. 2d 374, 383 (E.D.N.Y. 2012). To be successful, motions to strike must raise issues "separate and apart" from those to be "decided on a class certification motion," *id.*, (internal quotation omitted), or show, based on the face of the complaint, that certification will be impossible "regardless of the facts the plaintiffs may be able to obtain during discovery," *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 52 (E.D.N.Y. 2017) (internal quotation omitted). Neither of these conditions obtain here, and Unilever's motion to strike is accordingly denied.

First, Unilever argues that Candelaria cannot satisfy Rule 23(a)(1)'s numerosity requirement—specifically, that joinder is not impractical because the putative class consists of individuals already retained by her counsel. But numerosity is a fact-intensive inquiry better suited for the class certification stage. *See Robidoux v. Celani*, 987 F.2d 931, 935-36 (2d Cir. 1993) (explaining that while numerosity is presumed for classes of forty or more, other relevant factors include judicial economy, class members' geographic dispersion, financial resources, ability to institute individual suits, and "requests for prospective injunctive relief" involving future members). Unilever's motion to strike on the ground of numerosity is denied.

Unilever also seeks to strike Candelaria's claim for injunctive class relief under Rule 23(b)(2), which seeks to compel Unilever to stop selling TRESemmé products containing DMDM. Unilever asserts that this claim is foreclosed as a

15

matter of law by the Second Circuit. *See Berni v. Barilla S.p.A.*, 964 F.3d 141, 148-49 (2d Cir. 2020) (holding that "past purchasers of a product . . . are not eligible for class certification under Rule 23(b)(2)"). Candelaria concedes that she will not seek certification for her claim for injunctive relief because Unilever has already begun phasing out DMDM in its TRESemmé products. *See* Dkt. No. 16 at 2 n.3; Dkt. No. 22, Pl. Opp. Br. at 17 n.9 ("Plaintiff is not seeking Rule 23(b)(2) class certification because Defendant voluntarily began removing DMDM from TRESemmé products in November 2019"). The Court therefore grants Unilever's motion to strike the Rule 23(b)(2) allegations, which are contained in paragraph 63 of the Complaint.

## IV. CONCLUSION

Unilever's motion to dismiss Candeleria's claims is denied. Its motion to strike the Complaint's class allegations is granted with respect to claims for injunctive relief under Rule 23(b)(2) and denied with respect to all other allegations. Accordingly, the Court directs that paragraph 63 be stricken from the Complaint.

**SO ORDERED.**

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
February 28, 2023

16