**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ELIZABETH CANDELARIA, on behalf of herself and all others similarly situated,<br><br>       Plaintiffs,<br><br>    -against-<br><br>CONOPCO, INC. d/b/a UNILEVER HOME & PERSONAL CARE USA,<br><br>       Defendant. | Case No. 1:21-cv-06760-KAM-PK |

---

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

---

Gavin J. Rooney, Esq.
Reynold Lambert, Esq.
**LOWENSTEIN SANDLER LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (973) 597-2472
Facsimile: (973) 597-2473
grooney@lowenstein.com
rlambert@lowenstein.com

*Attorneys for Defendant*

# TABLE OF CONTENTS

**PAGES**

TABLE OF AUTHORITIES .................................................................................................. iii

INTRODUCTION .................................................................................................................1

PLAINTIFF'S COMPLAINT AND RELATED ACTIONS ................................................2

FACTUAL BACKGROUND ...............................................................................................4

      A.     Hair Loss Has Many Different Causes, And Diagnosing Its Proper Cause Requires A Highly Individualized Medical Assessment. .............................4

      B.     DMDM Hydantoin Is A Safe And Common Preservative. ......................................5

      C.     Plaintiff's Litigation Theory Is That She Experienced An Allergic Reaction To DMDM Hydantoin. ..........................................................................5

      D.     Discovery Confirmed That Plaintiff's Claims Are Highly Individualized, Meritless, And Untimely..........................................................6

      E.     Discovery In The Related Cases Confirms That Those Plaintiffs' Claims Are Also Highly Individualized And Meritless.......................................8

            1.     Zebin Hossain ..............................................................................................8

            2.     Holly Schafer ...............................................................................................9

            3.     Heather Detmar ..........................................................................................10

      F.     TRESemmé Product Formulations Were Not Uniform.........................................10

STANDARD GOVERNING CLASS CERTIFICATION ...................................................11

LEGAL ARGUMENT.........................................................................................................12

I.      ISSUE CERTIFICATION WOULD NOT MATERIALLY ADVANCE THE LITIGATION AND WOULD VIOLATE THE SEVENTH AMENDMENT.............................................................................................................12

      A.     Issue Certification Would Not Materially Advance The Litigation. .....................12

      B.     Issue Certification Would Run Afoul Of The Seventh Amendment. ....................16

II.     ALTERNATIVELY, THE COURT SHOULD REJECT CERTIFICATION BECAUSE PLAINTIFF CANNOT SATISFY RULES 23(a) OR 23(b). .........................18

A.     Plaintiff cannot satisfy Rule 23(b). ...........................................................................18

B.     Plaintiff Cannot Satisfy Rule 23(a). .......................................................................24

III.     THE COURT SHOULD STRIKE OR DISREGARD INADMISSIBLE OR IMPROPER EVIDENCE AND CLAIMS. ...........................................................................30

CONCLUSION ..................................................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbananto v. Cnty. of Nassau*,
No. 19CV01102GRBJMW, 2022 WL 326982 (E.D.N.Y. Feb. 3, 2022) ................................26

*In re Acclaim Ent., Inc. Sec. Litig.*,
No. CV031270JSETB, 2006 WL 8441287 (E.D.N.Y. Aug. 7, 2006), *report
and recommendation adopted*, No. 03CV1270JSETB, 2006 WL 8441288
(E.D.N.Y. Sept. 25, 2006)....................................................................................................27

*Adams Pointe I, L.P. v. Tru-Flex Metal Hose Corp.*,
No. 2:16-CV-00750-CB, 2020 WL 4199557 (W.D. Pa. July 17, 2020), *report
and recommendation adopted*, 2020 WL 4937455 (W.D. Pa. Aug. 24, 2020),
*aff'd,* No. 20-3528, 2021 WL 3612155 (3d Cir. Aug. 16, 2021) .............................................21

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997).............................................................................................................23

*Arch v. American Tobacco Co., Inc.*,
175 F.R.D. 469 (E.D. Pa. 1997)..........................................................................................17

*In re Avon Anti-Aging Skincare Creams & Prod. Mktg. & Sales Pracs. Litig.*,
No. 13-CV-150 JPO, 2015 WL 5730022 (S.D.N.Y. Sept. 30, 2015)...................................18

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000)..................................................................................................26

*Baker v. 40 Wall St. Holdings Corp.*,
161 N.Y.S.3d 723 (N.Y. Sup. Ct. 2022) .............................................................................30

*Baker v. Stryker Corp.*,
770 F. App'x 12 (2d Cir. 2019) ......................................................................................28, 30

*Bano v. Union Carbide Corp.*,
361 F.3d 696 (2d Cir. 2004).............................................................................................27, 29

*Barry v. Royal Air Maroc*,
No. 21CV8481GHWBCM, 2022 WL 3215050 (S.D.N.Y. July 8, 2022),
*report and recommendation adopted*, 2022 WL 3214928 (S.D.N.Y. Aug. 9,
2022) ................................................................................................................................29, 30

*In re Beacon Assocs. Litig.*,
No. 09 CIV. 777 LBS AJP, 2012 WL 1372145 (S.D.N.Y. Mar. 19, 2012) ..........................29

*Benner v. Becton Dickinson & Co.*,
214 F.R.D. 157 (S.D.N.Y. 2003) ................................................................................ passim

*Blyden v. Mancusi*,
186 F.3d 252 (2d Cir. 1999) ............................................................................................17

*Brennan v. City of New York*,
No. 19CV02054NGGCLP, 2023 WL 5672590 (E.D.N.Y. Sept. 1, 2023) ...........................16

*Castano v. American Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) .............................................................................................21

*Chandler v. Zinus, Inc.*,
No. 3:20-CV-265-DWD, 2022 WL 2104516 (S.D. Ill. June 10, 2022) ................................21

*Chin v. Chrysler Corp.*,
182 F.R.D. 448 (D.N.J. 1998) ..........................................................................................21

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .........................................................................................................11

*Cruz v. Guaba*,
159 N.Y.S.3d 828 (N.Y. Sup. Ct. 2022) ...........................................................................30

*Davis v. Lenox Hill Hosp.*,
No. 03 CIV.3746 DLC, 2004 WL 1926086 (S.D.N.Y. Aug. 31, 2004) .................................19

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
No. 98CIV.4318(HB), 2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000) .................................29

*Drooger v. Carlisle Tire & Wheel Co.*,
No. 1:05-CV-73, 2006 WL 1008719 (W.D. Mich. Apr. 18, 2006) ......................................21

*Emig v. Am. Tobacco Co.*,
184 F.R.D. 379 (D. Kan. 1998) ........................................................................................14

*Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.*,
254 F.R.D. 68 (E.D.N.C. 2008) .......................................................................................14

*Fisher v. Bristol-Myers Squibb Co.*,
181 F.R.D. 365 (N.D. Ill. 1998) .......................................................................................21

*Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*,
301 F.R.D. 116 (S.D.N.Y. 2014) ......................................................................................29

*In re Frontier Ins. Grp., Inc. Sec. Litig.*,
172 F.R.D. 31 (E.D.N.Y. 1997) ........................................................................................29

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
903 F.2d 176 (2d Cir. 1990)...........................................................................27

*Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*,
54 F.4th 115 (2d Cir. 2022) ..........................................................................19

*Harding v. Tambrands Inc.*,
165 F.R.D. 623 (D. Kan. 1996)......................................................................14

*Hossain v. Unilever United States, Inc.*,
No. 21CV2833FBTAM, 2023 WL 4405654 (E.D.N.Y. July 7, 2023)........................27, 28, 29

*Integrated Waste Servs., Inc. v. Akzo Nobel Salt, Inc.*,
113 F.3d 296 (2d Cir. 1997)...........................................................................17

*Jacob v. Duane Reade, Inc.*,
293 F.R.D. 578 (S.D.N.Y. 2013), *aff'd*, 602 F. App'x 3 (2d Cir. 2015) .....................13, 15, 16

*Johnson v. Nextel Commc'ns Inc.*,
780 F.3d 128 (2d Cir. 2015)........................................................................ passim

*Jones v. Allercare, Inc.*,
203 F.R.D. 290 (N.D. Ohio 2001) ............................................................14, 21, 22

*Lanqing Lin v. Everyday Beauty Amore Inc.*,
No. 18-CV-729 (BMC), 2019 WL 3037072 (E.D.N.Y. July 11, 2019) ...........................12

*Leroy v. Paytel III Mgmt. Assocs., Inc.*,
No. 91 Civ. 1933 (JFK), 1992 WL 367090 (S.D.N.Y. Nov. 24, 1992)..................................27

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
299 F. Supp. 3d 430 (S.D.N.Y. 2018)...........................................................12, 13

*Loeb v. Cnty. of Suffolk*,
No. 22-CV-6410 (HG), 2023 WL 4163117 (E.D.N.Y. June 23, 2023)..................................30

*Luo v. Panarium Kissena Inc.*,
No. 15-CV-03642-WFK-ST, 2020 WL 9456895 (E.D.N.Y. Sept. 16, 2020),
*report and recommendation adopted sub nom.* 2021 WL 1259621 (E.D.N.Y.
Apr. 6, 2021) ..............................................................................................12

*Mack v. United States*,
814 F.2d 120 (2d Cir. 1987).........................................................................30

*Margolies v. Rudolph*,
No. 21-CV-2447-SJB, 2022 WL 2062460 (E.D.N.Y. June 6, 2022) ......................................19

*In re Masonite Corp. Hardboard Siding Prod. Liab. Litig.*,
170 F.R.D. 417 (E.D. La. 1997)..................................................................................14, 17, 21

*McDermott v. Fed. Sav. Bank*,
No. 14-CV-6657-WFK-SJB, 2020 WL 6295058 (E.D.N.Y. Aug. 12, 2020).........................25

*McKoy v. Trump Corp.*,
No. 18 CIV. 9936 (LGS), 2023 WL 6842310 (S.D.N.Y. Oct. 17, 2023) .........................13, 20

*McLaughlin v. Am. Tobacco Co.*,
522 F.3d 215 (2d Cir. 2008)...................................................................................13, 19, 20

*In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*,
209 F.R.D. 323 (S.D.N.Y. 2002) .......................................................................14, 16, 17, 18

*In re Nassau County Strip Search Cases*,
461 F.3d 219 (2d Cir. 2006)..........................................................................................16, 18

*Matter of New York Cnty. DES Litig.*,
89 N.Y.2d 506 (1997) ...........................................................................................................27

*Newman v. RCN Telecom Servs., Inc.*,
238 F.R.D. 57 (S.D.N.Y. 2006) .............................................................................................27

*Newton v. City of New York*,
640 F. Supp. 2d 426 (S.D.N.Y. 2009).....................................................................................8

*Nnebe v. Daus*,
No. 06-CV-4991 (RJS), 2022 WL 615039 (S.D.N.Y. Mar. 1, 2022).....................................16

*In re Pac. Fertility Ctr. Litig.*,
No. 18-CV-01586-JSC, 2020 WL 3432689 (N.D. Cal. June 23, 2020) ..................................16

*Patton v. Topps Meat Co., LLC*,
No. 07-CV-00654 S M, 2010 WL 9432381 (W.D.N.Y. May 27, 2010) ..................................26

*In re Paxil Litig.*,
212 F.R.D. 539 (C.D. Cal. 2003) ..........................................................................................16

*Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*,
772 F.3d 111 (2d Cir. 2014)...................................................................................................25

*Perechu v. Flaum Appetizing Corp.*,
No. 18-CV-1085-SJB, 2021 WL 1725629 (E.D.N.Y. Apr. 6, 2021) ......................................25

*In re Prempro*,
230 F.R.D. 555 (E.D. Ark. 2005)...........................................................................................14

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
    226 F.R.D. 456 (S.D.N.Y. 2005) ........................................................................1

*In re Rezulin Prod. Liab. Litig.*,
    210 F.R.D. 61 (S.D.N.Y. 2002) .................................................................1, 20, 21

*Matter of Rhone–Poulenc Rorer, Inc.*,
    51 F.3d 1293 (7th Cir. 1995) .......................................................................17, 21

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993).............................................................................25

*Rouviere v. Howmedica Osteonics Corp.*,
    No. 18-CV-04814 (LJL), 2022 WL 17417036 (S.D.N.Y. Dec. 5, 2022) ...............28

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
    No. 14-CV-4394 (AJN), 2018 WL 1750595 (S.D.N.Y. Apr. 11, 2018) .........13, 15, 18

*Royal Park Invs. SA/NV v. U.S. Nat'l Ass'n*,
    324 F. Supp. 3d 387 (S.D.N.Y. 2018)..................................................................20

*Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.*,
    No. 14CIV9764KPFSN, 2018 WL 1831850 (S.D.N.Y. Apr. 17, 2018) .........15, 19, 22

*Schwartz v. Osteonics Corp.*,
    182 F.3d 901 (2d Cir. 1999)..............................................................................28

*Spagnola v. Chubb Corp.*,
    264 F.R.D. 76 (S.D.N.Y. 2010) .........................................................................23

*Stewart v. Hudson Hall LLC*,
    No. 20CIV885PGGSLC, 2021 WL 6285227 (S.D.N.Y. Nov. 29, 2021)..................12

*Sykes v. Mel S. Harris & Assocs., LLC*,
    780 F.3d 70 (2d Cir. 2015)................................................................................24

*In re Term Commodities Cotton Futures Litig.*,
    No. 12-CV-5126, 2022 WL 485005 (S.D.N.Y. Feb. 17, 2022)...............................30

*In re Terrorist Attacks on Sept. 11, 2001*,
    No. 03MDL1570GBDSN, 2023 WL 4864375 (S.D.N.Y. July 31, 2023).............15, 25

*Uzoigwe v. Charter Commc'ns, LLC*,
    No. 23 CV 7383 (HG)(LB), 2024 WL 1311525 (E.D.N.Y. Mar. 18, 2024),
    *report and recommendation adopted*, No. 23CV07383HGLB, 2024 WL
    1756503 (E.D.N.Y. Apr. 24, 2024)................................................................29, 30

*Vincent v. Money Store*, 304 F.R.D. 438 (S.D.N.Y. 2015),
  *aff'd,* 649 F. App'x 103 (2d Cir. 2016) ...................................................................22

*Weingot v. Unison Agreement Corp.*,
  No. CV 21-4542 (JS)(AYS), 2023 WL 5152478 (E.D.N.Y. July 20, 2023) ...........................30

*Wentworth v. Metrodata Servs., Inc.*,
  No. 1:17-CV-594, 2020 WL 13527954 (W.D.N.Y. Nov. 9, 2020) ........................................13

*Whitney v. Quaker Chem. Corp.*,
  90 N.Y.2d 845 (1997) ...................................................................27, 28, 29

*Woodhams v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
  No. 18-CV-3990 (JPO), 2024 WL 1216595 (S.D.N.Y. Mar. 21, 2024)...........................26, 30

*In re Yasmin & Yaz (Drospirenone) Mktg.*,
  275 F.R.D. 270 (S.D. Ill. 2011) ...................................................................17, 21

*Zinser v. Accufix Rsch. Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ...................................................................24

**RULES**

Fed. R. Civ. P. 23 ...................................................................... passim

N.Y.C.P.L.R. 214...................................................................27, 28

N.Y.C.P.L.R. 1411...................................................................17

**OTHER AUTHORITIES**

Section 402A of the *Restatement (Second) of Torts* ...................................................................23

7A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE
  § 1762 (3d ed. 2020) ...................................................................25

## INTRODUCTION

Plaintiff's highly individualized product-liability claims—seeking damages for hair loss allegedly caused by an allergic reaction to a preservative in TRESemmé hair care products—are impossible to certify, whether under Federal Rule of Civil Procedure 23(b)(3) or 23(c)(4). In her pre-motion letter, Plaintiff sought permission to file a motion to certify solely a damages class under Rule 23(b)(3). (ECF No. 36.) Plaintiff, however, has evidently abandoned any damages class and now seeks to certify only an issues class, without asking permission. The reason Plaintiff changed course is obvious: as Unilever established in response to Plaintiff's pre-motion letter, it would be impossible to certify her highly individuated, personal-injury claims under Rule 23(b)(3). (ECF No. 37-1); *see In re Rezulin Prod. Liab. Litig.*, 210 F.R.D. 61, 65–66 (S.D.N.Y. 2002) ("all relevant Court of Appeals and the bulk of relevant district court decisions have rejected class certification in products liability cases"); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456, 476 (S.D.N.Y. 2005). Her issues-only class is equally uncertifiable.

Plaintiff does not cite a single case where a court granted issue certification in a product-liability action, and Unilever was not able to find one either. To the contrary, courts consistently reject issue certification in product-liability cases because even if issues of defect, breach, and/or general causation were common (and here, they are not), a classwide trial would leave unresolved the larger issues of specific causation, injury, damages, and defenses. Thus, issue certification in product-liability actions would subvert the very purpose of that device—that is, to make the case more manageable, not less. Courts also reject issue certification in product-liability actions because doing so would require successive juries to decide the same issues, in violation of the Seventh Amendment. Plaintiff is seeking to upend settled law requiring individualized product-liability actions to be adjudicated by individual trials, not unmanageable class actions. The Court should reject that invitation. Because issue certification here does not comport with the standard

applicable under Rule 23(c)(4), the Court can and should reject Plaintiff's motion without having to consider whether she satisfies the factors under Rule 23(a) and 23(b).

Even so, those factors fail here. Plaintiff's purported common issues are not common at all; they raise highly individualized questions of fact and law. For instance, Plaintiff concedes her claims would be governed by the product-liability laws of 49 states yet fails to articulate how the court could possibly manage the material variations among state laws in one trial. It cannot. Courts routinely reject nationwide product-liability classes for this reason. Nor is the class-action device intended to apply to personal-injury claims alleging large damages like those alleged here. As such, Plaintiff cannot establish that a class action is superior to individual actions.

As for the factors under Rule 23(a), Plaintiff cannot satisfy them either. She seeks to certify an unprecedented class comprised exclusively of individuals who already retained her lawyer to sue Unilever. That is the quintessential scenario where joinder is practical. She therefore cannot establish numerosity. Next, Plaintiff is atypical because she is subject to unique defenses (*e.g.*, her claims are clearly time barred). Finally, Plaintiff is an inadequate representative. During her deposition, she confirmed she had no idea about her claims or this litigation; indeed, she did not even know she is prosecuting a class action or is a class representative.

## **PLAINTIFF'S COMPLAINT AND RELATED ACTIONS**

On December 6, 2021, Plaintiff filed her Complaint alleging Unilever manufactured TRESemmé hair-care products that contained DMDM hydantoin, a common preservative. (Compl. ¶¶ 20-23.) Her claims focus ***exclusively*** on DMDM hydantoin; the Complaint mentions no other ingredient, whether MCI or MI (collectively, the "Unpleaded Preservatives").[1] She

---

[1] Discovery also focused exclusively on DMDM hydantoin (including formaldehyde or formaldehyde releasors). (*See* Declaration of Reynold Lambert ("Lambert Decl."), Exs. A–B (requests for production in this action and *Hossain*).)

allegedly used TRESemmé "containing DMDM" until 2019 or 2020 and suffered hair loss.  (*Id.* ¶¶ 54-56.)  The Complaint pleads two product-liability claims alleging that: (i) TRESemmé was defectively designed because it contained DMDM hydantoin (*id.* ¶ 80), and (ii) Unilever failed to warn about the alleged risks associated with DMDM hydantoin (*id.* ¶¶ 87-90).

The Complaint seeks to certify an unprecedented, nationwide class that is invalid on its face,[2] comprised of "more than" 300 individuals who are already clients of Plaintiff's counsel Squitieri & Fearon, LLP ("S&F"), and purportedly suffered personal injuries after using TRESemmé "containing DMDM"—making no mention of the Unpleaded Preservatives.  (*Id.* ¶¶ 57-58.)  The putative class excludes all of S&F's clients who have "separately filed a lawsuit against Defendant[.]"  (*Id.* ¶ 57.)  There is only one named Plaintiff in the Complaint: Ms. Candelaria.  Ms. Hossain is not a named plaintiff.  To the contrary, for the past 3 years (since May 2021), Ms. Hossain has been prosecuting her own Complaint in this Court (as discussed further below).  Thus, Ms. Hossain is expressly ***excluded*** from the class pleaded in the Complaint.

Aside from this action, S&F is prosecuting four actions filed on behalf of individual plaintiffs advancing substantially the same allegations.  They are: (i) *Hossain*, filed in this Court on May 19, 2021 (Lambert Decl., Ex. C); (ii) *Detmar*, filed in the Superior Court of New Jersey on April 8, 2021 (*id.*, Ex. D); (iii) *Maddox*, filed in the District of New Jersey on January 19, 2023 (*id.*, Ex. E); and (iv) *Schafer*, filed in the District of New Jersey on January 23, 2023 (*id.*, Ex. F). Every federal action alleges that damages exceed $75,000.  (Compl. ¶ 15; Lambert Decl., Ex. C, *Hossain* Compl. ¶ 12; *id.*, Ex. E, *Maddox* Compl. ¶ 12; *id.*, Ex. F, *Schafer* Compl. ¶ 12.)

---

[2] This proposed putative class is nothing more than a transparent tactic to: (i) avoid paying the $405 filing fee for each of S&F's 717 purported clients (Pl. Br. at 2), which would total more than $290,000; (ii) toll the statute of limitation for S&F's clients; and (iii) insulate them from having to produce damaging discovery, including medical records.

## FACTUAL BACKGROUND

Plaintiff's motion is replete with false and/or misleading factual assertions, many of which are irrelevant to this motion.[3] Unilever addresses only those assertions that pertain to class certification, and reserves all rights, claims, and defenses.

### A. Hair Loss Has Many Different Causes, And Diagnosing Its Proper Cause Requires A Highly Individualized Medical Assessment.

As Plaintiff's dermatology expert, Dr. Serota,[4] confirmed, people lose hair for "many" reasons (Lambert Decl., Ex. I (Dr. Serota's deposition transcript in *Detmar* ("Serota *Detmar* Dep. Tr.") at 36:11-18; *id.,* Ex. H (Serota *Hossain* Dep. Tr.) at 32:11-12), including genetics, depression, anxiety, reactions to hair dyes, medications, infections, surgeries, and pregnancies (*id.,* Ex. I (Serota *Detmar* Dep. Tr.) at 36:15-37:9, 84:20-86:11, 150:1-151:7; *id.,* Ex. H (Serota *Hossain* Dep. Tr.) at 32:22-34:4; *see* Declaration of Dr. Joel G. DeKoven ("DeKoven Decl.") ¶ 4).

Since hair loss is a medical condition, properly diagnosing its cause takes "specialized skill" possessed by dermatologists based on extensive education (including medical school), training, and experience. (Lambert Decl., Ex. I (Serota *Detmar* Dep. Tr.) at 45:5-21.) This is a highly individualized undertaking. To diagnose cause, dermatologists consider a number of factors unique to each patient, including medical history, allergies, and prior diagnoses. (*Id.* at 46:1-48:3.) Every patient has a different medical history. (*Id.* at 46:20-22.) In addition,

---

[3] For instance, Plaintiff asserts Unilever's dermatology expert, Dr. DeKoven, "admits" TRESemmé "can cause hair loss[.]" (Pl. Br. at 2, 4.) She cites nothing to support those assertions, which are false. Likewise, contrary to Plaintiff's assertion (*see, e.g.*, *id.* at 11), Unilever did not reformulate TRESemmé out of concerns that it could cause hair loss, and Plaintiff cites not a shred of evidence to support that assertion. (*See, e.g.*, Fearon Decl., Ex. 33 (noting that Unilever "still conclude[s]" that formaldehyde donors are "very safe in our formulations").) Plaintiff also mischaracterizes the testimony of Ms. Geiss (Pl. Br. at 6), who provided her personal views about the way a consumer described her hair and not about any complaints about hair loss.

[4] Dr. Serota has been deposed twice, first in *Hossain* and then in *Detmar*. Plaintiff's communications person and toxicologist are new and have never been deposed.

dermatologists conduct an individualized physical examination of the patient, and employ various diagnostic tests where appropriate.  (*Id.* at 48:4-51:5; *see* DeKoven Decl. ¶¶ 5-8.)

**B.      DMDM Hydantoin Is A Safe And Common Preservative.**

DMDM hydantoin and the Unpleaded Preservatives are preservatives.  (Lambert Decl., Ex. I (Serota *Detmar* Dep. Tr.) at 8:1-7; DeKoven Decl. ¶¶ 9-11.)  Preservatives are important to the safety of products, as they prevent the growth of bacteria and other harmful organisms that could injure consumers.  (Lambert Decl., Ex. H (Serota *Hossain* Dep. Tr.) at 88:17-21; DeKoven Decl. ¶¶ 9-11.)  All known preservatives have the potential to elicit an allergic reaction in some portion of the population.  (Lambert Decl., Ex. I (Serota *Detmar* Dep. Tr.) at 112:4-10.)  Stated more bluntly, there is no such thing as an allergy-free preservative.

DMDM hydantoin has been used as a preservative for many years (Lambert Decl., Ex. H (Serota *Hossain* Dep. Tr.) at 91:5-20), and its safety has been studied since at least the 1970s (*id.,* Ex. I (Serota *Detmar* Dep. Tr.) at 112:19-113:10; Declaration of Ernest Fung ("Fung Decl."), Ex. A at 4-11).  Scientific studies have repeatedly concluded that, at approved levels, DMDM hydantoin is a safe ingredient.  (*Id.,* Ex. H (Serota *Hossain* Dep. Tr.) at 112:9-23; DeKoven Decl. ¶¶ 9-11; Fung Decl., Ex. A at 3-1.)  The same is true for the Unpleaded Preservatives, although they are irrelevant to this case.  (DeKoven Decl. ¶¶ 9-11; Fung Decl., Ex. A at 3-1.)  There is no scientific proof that DMDM hydantoin or the Unpleaded Preservatives could cause hair loss in consumers.  (DeKoven Decl. ¶¶ 9-11; Fung Decl., Ex. A at 3-1; Lambert Decl., Ex. H (Serota *Hossain* Dep. Tr.) at 109:5-18, 112:9-23; *id.,* Ex. I (Serota *Detmar* Dep. Tr.) at 116:23-117:4.)

**C.      Plaintiff's Litigation Theory Is That She Experienced An Allergic Reaction To DMDM Hydantoin.**

Although Plaintiff's ***brief*** attempts to mischaracterize DMDM hydantoin and the Unpleaded Preservatives as "dangerous" and "toxic chemicals" (Pl. Br. at 1, 4), Plaintiff's own

experts confirm that, even under Plaintiff's theory, those preservatives are perfectly safe for tens of millions of ordinary consumers who use TRESemmé without incident. Instead, this case concerns alleged allergic reactions to common ingredients that were disclosed on labels.

Plaintiff's toxicologist characterizes the preservatives as allergens, not dangerous or toxic chemicals.[5] (Fearon Decl., Ex. 4, §§ V, VI.) To that end, Dr. Serota—who is the only expert offering any opinion on specific causation—has confirmed twice that his opinion is plaintiffs "most likely" experienced an allergic reaction to DMDM hydantoin. (Lambert Decl., Ex. I (Serota *Detmar* Dep. Tr.) at 53:21-54:14; *id.,* Ex. H (Serota *Hossain* Dep. Tr.) at 20:12-21:13, 87:14-88:11.) His theory consists of two steps: first, once an individual allergic to an ingredient comes into contact with it, he/she develops dermatitis[6]; and then the dermatitis causes hair loss. (*Id.,* Ex. I (Serota *Detmar* Dep. Tr.) at 71:8-72:9.) His opinions are pure guesswork. He failed to conduct any testing applied by dermatologists outside of litigation to determine allergies (*e.g.*, a patch test). (*Id.,* Ex. H (Serota *Hossain* Dep. Tr.) at 68:21-69:15, 125:15-126:14, 145:19-146:7; *id.,* Ex. I (Serota *Detmar* Dep. Tr.) at 131:23-132:5.) Even so, he conceded that allergic reactions to DMDM hydantoin are "rare." *Id.*, Ex. H (Serota *Hossain* Dep. Tr.) at 173:20-174:9, 120:23-121:2.)

**D.     Discovery Confirmed That Plaintiff's Claims Are Highly Individualized, Meritless, And Untimely.**

Plaintiff testified she was already losing hair ***before*** she began using TRESemmé in 2016 (Lambert Decl., Ex. G (Plaintiff's deposition transcript ("Pl. Dep. Tr.") at 128:8-129:12), thus ruling out any possibility that her hair loss could have been caused by TRESemmé. In fact, she

---

[5] An "allergic contact dermatitis" is the same thing as an allergy. (Lambert Decl., Ex. H (Serota *Hossain* Dep. Tr.") at 88:8-11.)

[6] Dermatitis is inflammation of the skin in the form of itching, flaking, redness, and dryness. (Fearon Decl., Ex. 3 (Serota Expert Report) ¶ 39; Lambert Decl., Ex. I (Serota *Detmar* Dep. Tr.) at 54:24-55:14; *id.,* Ex. H (Serota *Hossain* Dep. Tr.) at 19:5-24.)

purchased TRESemmé to treat her already thinning hair.  (*Id.* at 129:12-15.) ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████  (*Id.*, Ex. G (Pl. Dep. Tr.) at 66:9-68:10, 29:16-21, 57:16-60:3, 74:6-75:21; *id.*, Ex. I (Serota *Detmar* Dep. Tr.) at 36:24-37:18.)

While using TRESemmé, Plaintiff never experienced **any** reactions on her scalp, ██████ ████████████████████████████████  (*Id.*, Ex. G (Pl. Dep. Tr.) at 100:10-102:4, 166:10-14, 168:10-22.)  As Dr. Serota confirmed, since Plaintiff had no signs of dermatitis while using TRESemmé, she could not have suffered a reaction to TRESemmé.    (*Id.*, Ex. I (Serota *Detmar* Dep. Tr.) at 72:17-25; *id.*, Ex. H (Serota *Hossain* Dep. Tr.) at 72:17-25, 77:14-19; DeKoven Decl. ¶¶ 16-17.)

While meritless, Plaintiff's claims are also time barred.  She allegedly began experiencing hair loss well before December 6, 2018, or three years before she filed her Complaint.  (ECF No. 1.)  In fact, between October 2015 and January 2017, she consulted with a medical professional about her alleged hair loss.  (Lambert Decl., Ex. G (Pl. Dep. Tr.) at 177:2-22; *id.*, Ex. O (medical records).)  And these consultations occurred while she was allegedly using TRESemmé.  (*Id.*, Ex. G (Pl. Dep. Tr.) at 177:23-178:4.)  Plaintiff testified that she told the medical professional she was using TRESemmé, and that the professional advised her hair loss could have been caused by TRESemmé (that discussion occurred prior to January 2017, the last date Plaintiff consulted with the medical professional).  (*Id.* at 188:23-189:14.)  Yet, Plaintiff did nothing. (*Id.* at 189:15-190:3.)

As for her duties and responsibilities as a class representative, Plaintiff was clueless.  Shockingly, she did not know that she is prosecuting a class action (*id.* at 212:5-15), or that she is a class representative (*id.* at 213:18-23, 221:6-13, 227:2-9.)  She did not know where her case was

venued, the name of the Judge, or whether the Court has held any hearings. (*Id.* at 212:16-23, 213:12-17, 221:14-19.) Besides talking to her lawyer, she has done nothing in connection with her case. (*Id.* at 212:24-213:4.). She has never reviewed any documents or spoken to any expert. (*Id.* at 213:5-11.) She did not know who manufactured TRESemmé and had never even heard of Conopco or Unilever. (*Id.* at 146:2-16.) Nor has she ever heard of DMDM hydantoin, the only ingredient at issue in her Complaint.[7] (*Id.* at 202:25-203:7.)

### E. Discovery In The Related Cases Confirms That Those Plaintiffs' Claims Are Also Highly Individualized And Meritless.

#### 1. Zebin Hossain

Discovery confirmed that Ms. Hossain's treating dermatologist *outside of litigation*, Dr. DiCicco, diagnosed her with ***genetic (or hereditary)*** hair loss, which has nothing to do with any supposed reaction to a shampoo. (Lambert Decl., Ex. R (medical records) at "2/22" and "3/22"; *id.*, Ex. Q (Dr. DiCicco's deposition transcript ("DiCicco Dep. Tr.")) at 9:12-10:9, 10:15-17; 17:3-16, 28:18-24).) In fact, she allegedly used TRESemmé for more than one year without any reaction (*id.*, Ex. J (Ms. Hossain's deposition transcript ("Hossain Dep. Tr.")) at 27:16-19) and continued experiencing hair loss more than 1.5 years after she stopped using TRESemmé (*id.* at 101:13-16, 102:8-18). Her alleged hair loss began to improve when she began taking medication used to treat genetic hair loss (*id.* at 109:1-11)—a fact that Dr. Serota admitted supported a diagnosis of genetic hair loss (*id.*, Ex. H (Serota *Hossain* Dep. Tr.) at 183:21-24; *see* DeKoven Decl. ¶ 18).

---

[7] After confirming her lack of knowledge and disinterest, Plaintiff's counsel requested a break and then spoon-fed her contradictory answers through improper leading questions. (Lambert Decl., Ex. G (Pl. Dep. Tr.) at 215:2-220:4.) Unilever objected and those objections should be sustained. Counsel cannot use leading questions to fabricate contradictory testimony by his own client. *See, e.g., Newton v. City of New York*, 640 F. Supp. 2d 426, 444 (S.D.N.Y. 2009) (sustaining objections to "impermissible leading" questions during depositions). Regardless, on re-cross, Plaintiff reaffirmed she did not know whether she was a class representative or owed any duties to putative class members. (Lambert Decl., Ex. G (Pl. Dep. Tr.) at 221:6-13, 227:2-9.)

Like Plaintiff, Ms. Hossain's claims are also time barred because she began experiencing hair loss more than three years before she filed her complaint on May 19, 2021. She began experiencing hair loss ***months before*** May 19, 2018. (Lambert Decl., Ex. J (Hossain Dep. Tr.) at 21:19-20; 22:1-12; 23:3-5.) These facts are unassailable. She produced a receipt from a purchase of ***hair loss vitamins*** on May 19, 2018, ***the very date her claim accrued***. (*Id.*, Ex. S at HOSSAIN00006; *id.*, Ex. J (Hossain Dep. Tr.) at 55:5-56:2.) And she conceded that, by the time she purchased vitamins, she had already been experiencing hair loss for months. (*Id.*, Ex. J (Hossain Dep. Tr.) at 35:1-10; 56:16-57:2; *see id.* at 57:4-10.) She confirmed that her hair loss before May 19, 2018, was significant (*i.e.*, allegedly falling out in clumps). (*Id.* at 143:12-145:1.)

### 2. Holly Schafer

Like other plaintiffs, Ms. Schafer confirmed she never experienced any dermatitis. (Lambert Decl., Ex. M (Ms. Schafer's deposition transcript ("Schafer Dep. Tr.")) at 102:3-7.) Again, even under Dr. Serota's theory, without dermatitis, TRESemmé could not have caused hair loss. In fact, she rejected the notion that she was allergic to TRESemmé precisely because she never experienced any irritation or redness. (*Id.* at 146:23-147:1.) ██████████████

███████████████████████████████ (*Id.* at 30:3-23, 134:6-12.)

Like other plaintiffs, Ms. Schafer's own doctor, Dr. Donna Gavarone, refuted her claims. Ms. Schafer consulted with Dr. Gavarone while she was allegedly using TRESemmé and experiencing hair loss. (*Id.* at 128:12-129:5.) Dr. Gavarone, however, testified that she never observed any noticeable signs of hair loss or dermatitis. (*Id.*, Ex. N (Dr. Gavarone's deposition transcript ("Gavarone Dep. Tr.") at 38:7-39:5, 41:24-42:6, 45:25-46:19, 47:7-49:8, 50:10-51:6, 52:12-53:3.) ██████████████████████████████

██████████████████████████████. (*Id.* at 66:19-22, 68:1-12; *see* DeKoven Decl. ¶¶ 19-20.)

### 3. Heather Detmar

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████ (Lambert Decl.,

Ex. K (Ms. Detmar's deposition transcript ("Detmar Dep. Tr.")) at 17:17-18:9.) ████████████

███████████████████████████████████████████ (*Id.*,

Ex. T (Dr. Simonson's deposition transcript ("Simonson Dep. Tr.")) at 35:13-37:3.)

Once again, Ms. Detmar's own doctor refuted her claims. Ms. Detmar consulted with Dr. Simonson while she was still allegedly using TRESemmé. (*Id.,* Ex. K (Detmar Dep. Tr.) at 31:13-22, 61:24-62:2; *id.*, Ex. U (medical record).) Dr. Simonson testified, however, that he never saw signs of dermatitis or rashes on Ms. Detmar. (*Id.,* Ex. T (Simonson Dep. Tr.) at 31:24-33:6.) Dr. Simonson further testified that he did not see any "substantial" or "obvious" hair loss on Ms. Detmar. (*Id.* at 28:19-29:3, 31:8-9.) ████████████████████████████████████

██████████████████████████ (*Id.* at 34:22-35:5; *see* DeKoven Decl. ¶¶ 21-22.)

### F. TRESemmé Product Formulations Were Not Uniform.

Plaintiff seeks to certify a nationwide class comprised entirely of 717 individuals living in 49 states that have already retained her counsel to sue Unilever. (Pl. Br. at 2, 12.) Counsel submitted an excel spreadsheet prepared for purposes of this litigation, which contains unsworn and self-serving descriptions concerning each member's purported uses of and experiences with TRESemmé. That spreadsheet is hearsay and cannot be considered. That said, the spreadsheet shows that putative class members purportedly used TRESemmé between 2016 and 2021.

During this period, Unilever sold approximately ████████████ units of TRESemmé shampoos and conditioners in the United States that contained DMDM hydantoin as an ingredient. (Declaration of Jason Gibbs ("Gibbs Decl."), ¶ 2.) TRESemmé product formulations during this

time period were not uniform. Not every TRESemmé shampoo and conditioner contained DMDM hydantoin; nor did they all contain the Unpleaded Preservatives. (Declaration of Alfonso Valecillos ("Valecillos Decl.") ¶¶ 2-3.) Plaintiff's own discovery confirms this reality. She produced pictures of TRESemmé bottles she allegedly used that did not contain DMDM hydantoin or any of the Unpleaded Preservatives.[8] (*See* Lambert Decl., Ex. P (CANDELARIA00012).)

## STANDARD GOVERNING CLASS CERTIFICATION

"The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015). Rule 23 "does not set forth a mere pleading standard." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (cleaned up). "Rather, a party must not only be prepared to prove that there are ***in fact*** sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a). The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.* (cleaned up, emphasis in original). "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. . . . The same analytical principles govern Rule 23(b)." *Id.* (cleaned up).

To be considered, "evidence proffered in support of a motion for class certification must be admissible"; that is especially true where, as here, certification is sought after the completion

---

[8] Plaintiff claims that "[i]t was only in 2022 . . . that Unilever reformulated TRESemmé in the United States to remove DMDM, MCI, and MI" (Pl. Br. at 11), but that assertion is unsupported and wrong, as the evidence she cites shows. Unilever's response to Interrogatory No. 8 in Exhibit 17 makes clear that, for TRESemmé shampoos that included DMDM hydantoin as an ingredient, Unilever began transitioning to a new preservative in November 2019. Moreover, Exhibit 34 are unidentified drawings of bottles that say nothing about timing. Elsewhere, Plaintiff cites a printout from Unilever's website (Pl. Br. at 3 (citing Ex. 18)), but that identifies the date by which DMDM hydantoin was removed from all TRESemmé products that had the ingredient, not when the transition began.

of fact discovery. *Lanqing Lin v. Everyday Beauty Amore Inc.*, No. 18-CV-729 (BMC), 2019 WL 3037072, at *3 (E.D.N.Y. July 11, 2019); *Luo v. Panarium Kissena Inc.*, No. 15-CV-03642-WFK-ST, 2020 WL 9456895, at *7-9 (E.D.N.Y. Sept. 16, 2020), *report and recommendation adopted sub nom.* 2021 WL 1259621 (E.D.N.Y. Apr. 6, 2021); *Stewart v. Hudson Hall LLC*, No. 20CIV885PGGSLC, 2021 WL 6285227, at *9–10 (S.D.N.Y. Nov. 29, 2021).

## LEGAL ARGUMENT

**I.**     **ISSUE CERTIFICATION WOULD NOT MATERIALLY ADVANCE THE LITIGATION AND WOULD VIOLATE THE SEVENTH AMENDMENT.**

As established below in Section II, Plaintiff cannot establish compliance with the factors under Rules 23(a) and 23(b). The Court, however, need not decide those issues because Plaintiff's proposed issues-class flunks the standard applicable under Rule 23(c)(4), even assuming her proposed issues were common to the class (and they are not).

**A.**     **Issue Certification Would Not Materially Advance The Litigation.**

The purpose of issue certification under Rule 23(c)(4) is to make the case "more manageable." *Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 169 (S.D.N.Y. 2003) (cleaned up). Given this purpose, the Second Circuit has recognized that issue certification is inappropriate where a "'number of questions . . . would remain for individual adjudication' or if issue certification 'would not materially advance the litigation because it would not dispose of larger issues' relevant to the case." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 464 (S.D.N.Y. 2018) (alterations in original) (quoting *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 234 (2d Cir. 2008)). As the cases Plaintiff cites make clear: "where so-called noncommon issues are inextricably entangled with common issues or . . . the noncommon issues are too unwieldy or predominant to be handled adequately on a class action basis, bifurcation or limited certification under Rule 23(c)(4) is inappropriate." *Jacob v. Duane Reade, Inc.*, 293 F.R.D.

578, 589 (S.D.N.Y. 2013), *aff'd*, 602 F. App'x 3 (2d Cir. 2015) (cleaned up).  Uncommon issues must be "discrete . . . such as damages" in order to warrant issue certification.  *Id.*

Applying this standard, courts decline to invoke Rule 23(c)(4) where liability elements (like causation) would remain unresolved or individualized issues (such as specific causation) are entangled with common issues.  *See LIBOR-Based Fin. Instruments*, 299 F. Supp. 3d at 464 (issue certification not appropriate "when more substantial individual issues remain") (cleaned up).  In *McLaughlin*, the Second Circuit declined to certify an issues-only class for this reason, noting: "Certifying, for example, the issue of defendants' scheme to defraud, would not materially advance the litigation because it ***would not dispose of larger issues*** such as reliance, injury, and damages." 522 F.3d at 234 (emphasis added); *see Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-4394 (AJN), 2018 WL 1750595, at \*20 (S.D.N.Y. Apr. 11, 2018) ("If the ***sole issue*** with Plaintiff's motion were the deficiencies with its ability to prove ***damages*** class-wide, it would be proper to certify a liability class under (c)(4).  However, this case presents myriad individualized issues ***with respect to liability as well.***") (second emphasis in original, all others added; citation omitted); *McKoy v. Trump Corp.*, No. 18 CIV. 9936 (LGS), 2023 WL 6842310, at \*6 (S.D.N.Y. Oct. 17, 2023) (similar); *Wentworth v. Metrodata Servs., Inc.*, No. 1:17-CV-594, 2020 WL 13527954, at \*9 (W.D.N.Y. Nov. 9, 2020) (declining issue certification where "proposed class issues will not establish ***all*** elements of liability") (emphasis added).

Plaintiff does not cite a single case certifying an issues-only class in a product-liability action, and for good reason.  Courts in this Circuit and around the country routinely decline to certify common issues (*e.g.*, defect, breach, or general causation) in such actions because larger issues like specific causation, injury, damages, and/or defenses would still need to be tried and are invariably entangled in common issues.  *See, e.g.*, *Benner*, 214 F.R.D. at 169–71 ("certifying the

issues of ***design defect*** and ***negligent design***, if those issues were found to be common to the class, would not materially advance this litigation") (emphasis added); *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 209 F.R.D. 323, 352–53 (S.D.N.Y. 2002) (same); *In re Prempro*, 230 F.R.D. 555, 570 (E.D. Ark. 2005) ("Because the jury would still have to determine causation for each plaintiff, ***a finding of 'general causation' would not materially advance the litigation***" because class members "would still have to prove individual causation later in the litigation'") (emphasis added); *Harding v. Tambrands Inc.*, 165 F.R.D. 623, 630 (D. Kan. 1996) (same); *Jones v. Allercare, Inc.*, 203 F.R.D. 290, 302 (N.D. Ohio 2001) (same); *Emig v. Am. Tobacco Co.*, 184 F.R.D. 379, 395 (D. Kan. 1998) ("the common issues are inextricably entangled with the individual issues. For example, the general causation questions of whether cigarettes cause the harms alleged by plaintiffs are invariably bound up in their claims that cigarettes caused their injuries."*); In re Masonite Corp. Hardboard Siding Prod. Liab. Litig.*, 170 F.R.D. 417, 426 (E.D. La. 1997) ("fragmenting issues into a 'core liability' trial on manufacturer conduct, to be followed by mini-trials on causation, comparative fault, reliance, and others seems to defeat the purported economies of class treatment"); *Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.*, 254 F.R.D. 68, 74 (E.D.N.C. 2008) (declining to certify common issue of defect because the "multiplicity of individual causation and affirmative defense issues discussed above would still remain").

The Court should reach the same result here. The "sole issue" subject to individualized proof—even under Plaintiff's (misguided) theory—is ***not*** damages. *Royal Park*, 2018 WL 1750595, at *20; *see In re Terrorist Attacks on Sept. 11, 2001*, No. 03MDL1570GBDSN, 2023 WL 4864375, at *4 (S.D.N.Y. July 31, 2023) ("[w]hen individual liability-related questions exist apart from litigant-specific damages inquiries, certification of a liability-only issue class is not appropriate"). Plaintiff seeks to certify purportedly common issues pertaining to defect, breach,

and general causation (Pl. Br. at 3), but those issues, even if common, would not materially advance the litigation. DMDM hydantoin (and the Unpleaded Preservatives) are allergens. As case law teaches, trial will center on specific causation (was the plaintiff allergic and, if so, did the product actually cause hair loss), injury (did members suffer hair loss, as in the cases of Schafer and Detmar, whose own doctors saw no signs of hair loss), damages, and defenses (*e.g.*, statute of limitations and comparative negligence, as discussed herein). *See also Jacob*, 293 F.R.D. at 593 (cited by Plaintiff) (noting issue certification is improper where "a class proves, for example, that defendants collectively ***breached a duty***, but must still establish that this breach ***caused*** each plaintiff's injury") (cleaned up, emphasis added); *Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A.*, No. 14CIV9764KPFSN, 2018 WL 1831850, at *10 (S.D.N.Y. Apr. 17, 2018) ("although the issue of Wells Fargo's ***breach*** of the R&Ws or of its ***duty*** of trust may be subject to generalized proof on a class-wide basis, such proof alone would not establish Wells Fargo's ***liability***. Indeed, among other questions bearing on Wells Fargo's ultimate liability, the preliminary issue of standing would remain, as would Wells Fargo's ***affirmative defenses***) (first two emphases in original, third emphasis added). Given that "substantial individual actions . . . would still be necessary after the defect and negligence issue class trial, this Court [should not] find that issue certification materially advances the litigation." *Benner*, 214 F.R.D. at 170.

By the same token, a class trial on alleged common issues would result in zero efficiencies, given the near complete overlap of issues and proofs. *See, e.g.*, *Brennan v. City of New York*, No. 19CV02054NGGCLP, 2023 WL 5672590, at *15–16 (E.D.N.Y. Sept. 1, 2023) (rejecting issue certification where "factual issues [on damages] would significantly overlap with the determination of liability"); *Benner*, 214 F.R.D. at 170 ("subsequent actions would necessarily risk replicating the class-wide trial"). For instance, "much of the evidence presented in the general

causation trial would have to be presented again in the individual trials on the specific causation question." *In re Pac. Fertility Ctr. Litig.*, No. 18-CV-01586-JSC, 2020 WL 3432689, at *6 (N.D. Cal. June 23, 2020). The juries will have to hear evidence about the preservative (including scientific literature), evidence specific to each plaintiff disproving that any alleged hair loss could have been caused by the product, and expert testimony. (Pl. Br. at 24-25). Plaintiff will also undoubtedly seek to rely upon on the same supposed consumer complaints and documents.[9] (*Id.*).

The cases upon which Plaintiff relies underscore why issue certification is improper here. (Pl. Br. at 13.) None of them were product-liability actions, and they concerned instances where the primary elements of liability were common, leaving damages for individualized trials. *See In re Nassau County Strip Search Cases*, 461 F.3d 219, 230 (2d Cir. 2006) (concerning constitutional claims by prisoners; **all** liability issues were common; the **only** individualized issue was an **affirmative defense** that applied to a "limited number of plaintiffs," and the defendant admitted that issue was "**de minimus**") (emphasis added); *see Jacob*, 293 F.R.D. at 593 ("only remaining [individualized] question" would be damages); *Nnebe v. Daus*, No. 06-CV-4991 (RJS), 2022 WL 615039, at *7 (S.D.N.Y. Mar. 1, 2022) (same).

### B.     Issue Certification Would Run Afoul Of The Seventh Amendment.

As noted by the Second Circuit, "the Seventh Amendment's Reexamination Clause forbids review by a second fact-finder, whether a judge or another jury, of facts already determined by a jury." *Johnson*, 780 F.3d at 150 n.27 (citing *Matter of Rhone–Poulenc Rorer, Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995)). Therefore, if a trial plan "contemplates" that a jury must "reassess" an issue decided by another jury, "such a plan could run afoul of the Seventh Amendment." *Id.*; *Blyden v. Mancusi*, 186 F.3d 252, 268 (2d Cir. 1999) (making same point in the context of Rule 23(c)(4)).

---

[9] An issues-only class also raises serious fairness concerns. *See MTBE*, 209 F.R.D. at 352; *In re Paxil Litig.*, 212 F.R.D. 539, 547–48 (C.D. Cal. 2003).

Applying this rule, courts have concluded that issue-certification in product-liability actions would violate the Seventh Amendment because it would require a second jury to reexamine findings on issues such as comparative negligence[10] and specific/proximate causation. *See, e.g.*, *Benner*, 214 F.R.D. at 174 ("Since comparative negligence requires a comparison between the defendant's and the plaintiff's conduct, there is arguably a risk that in apportioning fault, the second jury could reevaluate the defendant's fault, even going so far as to reapportion 100% of the fault to the plaintiff.") (cleaned up); *MTBE*, 209 F.R.D. at 352 (similar); *Rhone–Poulenc*, 51 F.3d at 1303 (juries in follow-up trials would have to examine comparative negligence and proximate cause); *In re Yasmin & Yaz (Drospirenone) Mktg.*, 275 F.R.D. 270, 278–79 (S.D. Ill. 2011) (same); *In re Masonite Corp. Hardboard Siding Prod. Liab. Litig.*, 170 F.R.D. 417, 426 (E.D. La. 1997) (same); *Arch v. American Tobacco Co., Inc.*, 175 F.R.D. 469, 493 (E.D. Pa. 1997) (same).

Plaintiff's proposed issues-only class should meet the same fate. As courts have recognized in this context, findings by a common-issues jury on an abstract, general causation question, such as whether an allergic reaction to DMDM hydantoin could cause hair loss, creates the risk of re-examination by juries deciding the ultimate question of causation-in-fact for each putative class member. The same is true for Unilever's comparative negligence defense. This highly individualized defense is far from theoretical. Plaintiff, for instance, was taking scalp injections that were regrowing hair in 2016, and then stopped taking them mid-treatment. (*See* Lambert Decl., Ex. G (Pl. Dep. Tr.) at 179:4-181:3; *id.*, Ex. O (medical records showing regrowth).) Ms. Detmar's doctor referred her to a dermatologist, but she refused to heed the advice and never saw a dermatologist. (*Id.*, Ex. K (Detmar Dep. Tr.) at 39:12-43:9.) After Ms. Hossain's

---

[10] *See, e.g.,* N.Y.C.P.L.R. 1411 (comparative negligence defense "shall" apply in "***any*** action to recover damages for personal injury") (emphasis added); *Integrated Waste Servs., Inc. v. Akzo Nobel Salt, Inc.*, 113 F.3d 296, 302 (2d Cir. 1997) (rule applies to strict liability claims).

primary doctor referred her to a dermatologist, she waited two years to see him, claiming she

"couldn't make time to go[.]" (*Id.*, Ex. J (Hossain Dep. Tr.) at 37:10-38:5, 99:15-25.)  And Ms.

Maddox never sought any medical treatment.  (Lambert Decl., Ex. L at 27:13-15.)

**II.     ALTERNATIVELY, THE COURT SHOULD REJECT CERTIFICATION BECAUSE PLAINTIFF CANNOT SATISFY RULES 23(a) OR 23(b).**

A party seeking issue certification under Rule 23(c)(4) must establish the requirements of

Rules 23(a) and 23(b), *see In re Avon Anti-Aging Skincare Creams & Prod. Mktg. & Sales Pracs.

Litig.*, No. 13-CV-150 JPO, 2015 WL 5730022, at *8 (S.D.N.Y. Sept. 30, 2015); *MTBE*, 209

F.R.D. at 351, except that only the issues, and not the cause of action as a whole, needs to satisfy

the predominance requirement under Rule 23(b)(3), *see Nassau*, 461 F.3d at 227.

**A.     Plaintiff Cannot Satisfy Rule 23(b).**

***Predominance.***  "The key to predominance is whether 'generalized evidence could be

offered' to prove 'the elements of the claims and defenses to be litigated,' or whether

'individualized proof will be needed to establish each class member's entitlement to relief.'" *Royal

Park*, 2018 WL 1750595, at *14 (quoting *Johnson*, 780 F.3d at 138).

*Individualized Issues of Fact.*     Under Plaintiff's theory, putative class members

experienced allergic reactions to DMDM hydantoin and the Unpleaded Preservatives.[11]  As such,

if the TRESemmé bottle used by a member did not have those ingredients, he/she cannot establish

a defect, duty, or breach.  They also would not be members of the putative class.  Because

---

[11] Plaintiff cannot unilaterally amend her Complaint to inject the Unpleaded Preservatives via briefing on class certification.  *Cf. Margolies v. Rudolph*, No. 21-CV-2447-SJB, 2022 WL 2062460, at *8 (E.D.N.Y. June 6, 2022) ("it is well-settled that a plaintiff cannot amend its complaint by asserting new facts or theories in opposition to a motion to dismiss")*; see, e.g., Davis v. Lenox Hill Hosp.*, No. 03 CIV.3746 DLC, 2004 WL 1926086, at *3-4 (S.D.N.Y. Aug. 31, 2004) (denying as untimely motion for leave to amend complaint to, *inter alia*, add new class representatives, filed contemporaneously with motion for class certification).  Thus, the Court should strike or disregard any claim/reference concerning the Unpleaded Preservatives.

TRESemmé formulations were not uniform, resolving Plaintiff's proposed issues and determining class membership will require individualized mini-trials to adjudicate whether each member used a bottle that contained such ingredients. And for most members, that will likely be an impossible task given that some (and likely most) consumers—including Plaintiff and S&F's other clients—do not review ingredient labels before purchasing hair-care products.[12] (*See, e.g.*, Lambert Decl., Ex. G (Pl. Dep. Tr.) at 144:25-145:10; *id.*, Ex. K (Detmar Dep. Tr.) at 33:1-24; *id.*, Ex. M (Schafer Dep. Tr.) at 55:9-22; *id.*, Ex. J (Hossain Dep. Tr.) at 32:8-10).)

Aside from varying product formulations, Unilever's affirmative defenses also raise individualized issues of fact. As the Second Circuit recently confirmed, a court must consider defenses in the predominance analysis. *See Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*, 54 F.4th 115, 121–22 (2d Cir. 2022) (reversing certification *solely* because court did not consider defenses); *McLaughlin*, 522 F.3d at 233. Thus, issue certification may be improper if defenses cannot be established using common proofs. *See, e.g.*, *Royal Park*, 2018 WL 1831850, at *10 (denying *issue certification* because, *inter alia*, *affirmative defenses* "require individualized inquiries").

As noted, Unilever's comparative negligence defense is highly individualized. (*See*, *supra*, at 15-17.) The same is true for Unilever's statute-of-limitations defense. Plaintiff acknowledges that defense's viability (Pl. Br. at 20 n. 17), yet she makes no effort to explain how a jury could possibly adjudicate that defense for every class member using the same proofs. It cannot. *See, e.g.*, *Royal Park Invs. SA/NV v. U.S. Nat'l Ass'n*, 324 F. Supp. 3d 387, 398–99 (S.D.N.Y. 2018) ("Courts should not grant class certification if 'plaintiffs have offered no reliable means of

---

[12] For this reason, Plaintiff's proposed class also flunks the ascertainbility requirement, given that it would be impossible to determine class membership (*i.e.*, to determine who used a TRESemmé bottle that actually included DMDM hydantoin or the Unpleaded Preservatives as an ingredient). *See In re Petrobras Sec.*, 862 F.3d 250, 266 (2d Cir. 2017).

collectively determining how many class members' claims are time-barred.'") (quoting *McLaughlin*, 522 F.3d at 233-34). Relying on a self-serving spreadsheet prepared by counsel, she divines that "almost" every class member was injured in 2020 or 2021, so their claims must be timely. (Pl. Br. at 20 n. 17.) But the spreadsheet is hearsay and cannot be considered. (*See*, *infra*, § III.) Regardless, Plaintiff's conjecture is wrong. As Plaintiff's and Ms. Hossain's discovery confirmed, determination of timeliness is a highly individualized inquiry that turns on each Plaintiff's unique product usage, experience, and symptoms.

*Individualized Issues of Law*. After conducting a choice-of-law analysis, Plaintiff concedes that, in deciding her proposed issues, a jury would have to apply the product-liability laws of 49 states. (Pl. Br. at 20.) "Once it is established that the substantive law of each class member's state will apply to his or her claims, the case for finding the predominance of common issues and the superiority of trying this case as a class action diminishes to the vanishing point." *Johnson*, 780 F.3d at 146; *see McKoy*, 2023 WL 6842310, at *5. That is especially true here. Plaintiff does not cite a single case that has ever certified a nationwide, product-liability class. Time and time again courts have rejected such classes because, aside from individualized fact issues, they are unmanageable given material variations in state law. *See In re Rezulin Prod. Liab. Litig.*, 210 F.R.D. 61, 71 (S.D.N.Y. 2002) (denying certification because, *inter alia*, "plaintiffs' [product liability] claims overwhelmingly arise under state rather than federal law"); *Chandler v. Zinus, Inc.*, No. 3:20-CV-265-DWD, 2022 WL 2104516, at *11 (S.D. Ill. June 10, 2022) (noting "significant differences" in product-liability laws) (cleaned up); *Fisher v. Bristol-Myers Squibb*

*Co.*, 181 F.R.D. 365, 369 (N.D. Ill. 1998) (similar); *Drooger v. Carlisle Tire & Wheel Co.*, No. 1:05-CV-73, 2006 WL 1008719, at *7 (W.D. Mich. Apr. 18, 2006) (similar).[13]

In an attempt to convince the Court to undertake this impossible task, Plaintiff provides superficial, generalized charts concerning laws of duty, statutes of limitations, and defect. (Fearon Decl., Exs. 38, 39). They do not come anywhere close to meeting Plaintiff's burden. *See Rezulin*, 210 F.R.D. at 71 n.59 (plaintiff bears burden of providing "extensive analysis," which "often include model jury instructions and verdicts forms, as well as an attempt to group state laws by their relevant differences"; plaintiff's offer to conduct such analysis if her motion is denied "was too little, too late") (cleaned up). Anyone can make generalized statements about claim elements; but "[t]he many state laws that define products liability issues vary in nuance, and nuance becomes terribly important." *Masonite*, 170 F.R.D. at 422; *see Rhone–Poulenc* 51 F.3d at 1300.

There is no question that laws governing the purported issues Plaintiff seeks to certify are radically different—that is obvious from her own charts.[14] They show material differences in the elements themselves, including: (i) the standard for identifying a defect, ranging from a "risk-utility" test (*e.g.*, Arkansas), a "consumer expectation" test (*e.g.*, Florida), both such tests (*e.g.*, Arizona), a so-called "hybrid approach" (*e.g.*, Connecticut), "unreasonable risk of physical injury" (*e.g.*, Idaho), and no test in jurisdictions that do not apply strict liability (*e.g.*, Delaware); and (ii) proof of alternative design, with some jurisdictions always requiring it (*e.g.*, Idaho), others never requiring it (*e.g.*, Delaware), others sometimes requiring it depending on what test is employed

---

[13] *See also In re Yasmin*, 275 F.R.D. at 275; *Rhone-Poulenc*, 51 F.3d at 1300–01; *Castano v. American Tobacco Co.,* 84 F.3d 734, 743 n. 15 (5th Cir. 1996); *Jones*, 203 F.R.D. at 304–05; *Chin v. Chrysler Corp.,* 182 F.R.D. 448 (D.N.J. 1998); *In re Masonite*, 170 F.R.D. at 422-24; *Adams Pointe I, L.P. v. Tru-Flex Metal Hose Corp.*, No. 2:16-CV-00750-CB, 2020 WL 4199557, at *10 (W.D. Pa. July 17, 2020), *report and recommendation adopted,* 2020 WL 4937455 (W.D. Pa. Aug. 24, 2020), *aff'd,* No. 20-3528, 2021 WL 3612155 (3d Cir. Aug. 16, 2021).

[14] Unilever is not ratifying the accuracy of Plaintiff's charts.

(*e.g.*, California), if the alterative design existed at time of manufacture (*e.g.*, Montana), or what version of the Restatement applies (*e.g.*, Vermont), and others simply weighing it (*e.g.*, Arizona) (Fearon Decl., Ex. 38).  Plaintiff's charts also show material differences in the applicable statutes of limitations, including: (i) number of years, ranging from one year (*e.g.*, Louisiana) to six years (*e.g.*, Minnesota); and (ii) whether the jurisdiction applies a discovery rule, with some jurisdictions applying one (*e.g.*, Arkansas), others not applying one (*e.g.*, Alabama), others applying a "limited" one (*e.g.*, Mississippi, Nebraska), and others noted as "unclear" (*e.g.*, Michigan).  (Fearon Decl., Ex. 37.)  Plaintiff does not even acknowledge any of these differences, much less establish a jury could efficiently manage them all in one trial.  As the legion of cases cited above hold, Plaintiff cannot make that showing.  *See also Royal Park*, 2018 WL 1831850, at *8 (no predominance because "statutes of limitations differ among jurisdictions"); *Vincent v. Money Store*, 304 F.R.D. 438, 442 (S.D.N.Y. 2015) (similar), *aff'd,* 649 F. App'x 103 (2d Cir. 2016).

Plaintiff's selective charts do not even begin to scratch the surface on material variations in state law as they pertain to the proposed issues.  (*See*, *infra*, **App'x A**.)  Those differences include: (i) "The 'test' that each state requires in determining whether a product is defective"; (iii) "The time at which the jury must judge the defectiveness of the product"; (iii) "Whether state law forbids or requires the jury to be instructed on the definition of 'unreasonably dangerous'"; (iv) "Whether it is plaintiffs' or defendants' burden to prove defectiveness"; (iv) "Whether the individual states even recognize a cause of action in strict products liability"; and (v) "varying available affirmative defenses [and] comparative fault rules[.]" *Jones*, 203 F.R.D. at 305.

Plaintiff also ignores the critical nuances applicable to claims arising from allergic reactions.  For instance, in New York, a product that causes an allergic reaction is not defective. Not every jurisdiction, however, adheres to this rule.  (*See*, *infra*, **App'x A** at A-1.)  As for the

duty to warn, some jurisdictions, like New York, have adopted Section 402A of the *Restatement (Second) of Torts*, under which manufacturers have a duty to warn of a potential allergy only when a substantial number of the public is allergic to an ingredient.[15]  Not every jurisdiction has adopted the *Restatement*, however, and jurisdictions that have adopted it are not uniform with respect to who bears the burden of proving it.  (*Id.*).  As for another difference, states differ in how they apply the discovery rule for purposes of the statute of limitations, with some (like New York) triggering the limitations period upon manifestation of symptoms only, while others requiring the plaintiff to also uncover the cause of those symptoms.  (*See*, *infra*, **App'x A** at A-5 to A-7.)   There is no way to manage this mountain of differences in one trial.

**_Superiority._**  "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).  Accordingly, "courts have found that class treatment is appropriate in 'negative value cases,' where the individual interest of each class member's interest in the litigation is less than the cost to maintain an individual action."  *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 99 (S.D.N.Y. 2010).

This action is not a "negative value" case.  As noted, putative class members believe their damages exceed $75,000; and they are proceeding on a contingency basis.  *See, e.g., Benner*, 214 F.R.D. at 173 (no superiority where alleged damages exceeded $75,000).  Like *Benner,* "this is not

---

[15] Plaintiff claims that between 2016 and 2021 Unilever received 237 calls from consumers claiming reactions to "TRESemmé containing DMDM."  (Pl. Br. at 6.)  However, during that time period, Unilever sold in the United States more than ▮▮▮▮▮ units of TRESemmé shampoos and conditioners that contained DMDM hydantoin as a preservative.  (*See* Gibbs Decl. ¶ 2.)  Therefore, even assuming all 237 consumers were in fact allergic to DMDM hydantoin, they would be light years away from constituting a "substantial" portion of the population.  Regardless, those calls are hearsay and uncorroborated by any medical evidence.

a case where the potential recovery for each plaintiff is *de minimis* and a class action is necessary for any class members to recover." *Id.*

Other factors weigh against a finding of superiority. *See* Fed. R. Civ. P. 23(b)(3)(A-D). Every putative class member has already hired counsel on a contingency basis to sue Unilever, thus demonstrating their interests in controlling their own actions. *See Benner*, 214 F.R.D. at 173 ("unlike a true negative value claim such as those seen in antitrust cases, these plaintiffs may employ tort lawyers, on a contingency basis, to bring individual actions") (cleaned up). Moreover, several actions have already been filed against Unilever. *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1191 (9th Cir. 2001) (presence of "several other actions" weigh against certification) (cleaned up). As for the third factor, class members are "located across the country," thus diminishing the desirability of "a massive class action lawsuit." *Id.* at 1191-92 (cleaned up).

Notably, the large dollar, personal-injury claims at issue here would be a logistical nightmare. "Manageability is, by the far, the most critical concern in determining whether a class action is a superior means of adjudication." *Sykes v. Mel S. Harris & Assocs., LLC*, 780 F.3d 70, 82 (2d Cir. 2015) (cleaned up). As noted, each element of Plaintiff's claims, including the supposed "issues" Plaintiff is seeking to certify, as well Unilever's defenses, are highly individualized—and those difficulties are compounded by the material variations in applicable state laws. *See, e.g., Johnson*, 780 F.3d at 148 ("The application of the different jurisdictions' laws. . . undercuts the superiority of trying the common issues on a classwide basis."). "Moreover, the plethora of individual issues left for resolution after a trial on the class-wide common issues is significant." *Benner*, 214 F.R.D. at 173.

### B.    Plaintiff Cannot Satisfy Rule 23(a).

***Numerosity.*** Under Rule 23(a)(1), a class can only be certified if it is "so numerous that joinder of all [class] members is impractical[.]" Plaintiff argues her counsel engaged more than

40 people to sue Unilever (Pl. Opp. Br. at 14); but the "***the number of class members is not dispositive***." *Perechu v. Flaum Appetizing Corp.*, No. 18-CV-1085-SJB, 2021 WL 1725629, at *1 (E.D.N.Y. Apr. 6, 2021) (emphasis added) (citing *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)); *see, e.g., In re Terrorist Attacks on Sept. 11, 2001*, No. 03MDL1570GBDSN, 2023 WL 4864375, at *2 (S.D.N.Y. July 31, 2023) (no numerosity despite class of 5,130 members); *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014) (joinder of over 100 class members was not impracticable); *see* 7A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1762 (3d ed. 2020) (courts have rejected classes of "fifty to one hundred" or "even three hundred and fifty potential members"). Instead, courts consider: "judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *McDermott v. Fed. Sav. Bank*, No. 14-CV-6657-WFK-SJB, 2020 WL 6295058, at *4 (E.D.N.Y. Aug. 12, 2020) (cleaned up). However, "[k]nowledge of names and existence of members has been called the most important factor . . ., ***precisely because it renders joinder practicable***." *Id.* (internal quotations marks and citation omitted, emphasis added).

Plaintiff does not cite a single case that has certified a class comprised entirely of clients that have already retained counsel to sue the defendant.[16] The reason for that omission is obvious: such a class presents the quintessential scenario where joinder is practical; not only is the identity of every single class member known, ***they are all clients of Plaintiff's counsel***. There are no

---

[16] Plaintiff cites only *Abbananto v. Cnty. of Nassau*, No. 19CV01102GRBJMW, 2022 WL 326982, at *3 (E.D.N.Y. Feb. 3, 2022) (Pl. Br. at 14), which sought to certify a class of all employees within specific occupations—not a discrete class of knowable and identifiable employees who already retained counsel to sue the defendant, some of whom had already sued the defendant.

concerns about the feasibility of joining counsel's clients because they already engaged counsel to pursue their claims against Unilever. The same is true about counsel's clients' geographic location, financial resources, and ability to initiate lawsuits. Plaintiff's counsel has effectively conceded the point, noting that every client "has retained Plaintiff's counsel on a contingency fee basis, ***making absent class members' financial resources irrelevant***." (ECF No. 32 at 5 (emphasis added).) Clearly, Plaintiff's counsel's clients can sue on their own; some are already doing so. Finally, the Court already dismissed Plaintiff's injunctive relief claims. (ECF No. 23 at 16.)

***Typicality.*** "[C]ourts have been reluctant to find typicality in products liability" actions due to varying injuries and facts. *Patton v. Topps Meat Co., LLC*, No. 07-CV-00654 S M, 2010 WL 9432381, at *3 (W.D.N.Y. May 27, 2010) (cleaned up). "[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) (cleaned up). "The Court need not resolve whether a unique defense would ultimately succeed on the merits; rather, certification must be refused if the Court is confronted with a sufficiently clear showing of the defense's applicability to the representative plaintiff." *Woodhams v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 18-CV-3990 (JPO), 2024 WL 1216595, at *10 (S.D.N.Y. Mar. 21, 2024) (cleaned up). Applying this rule, courts have rejected class certification where, as here, a named plaintiff's claim was subject to a "full defense" or a defense that "go[es] to the core of plaintiff's claims." *In re Acclaim Ent., Inc. Sec. Litig.*, No. CV031270JSETB, 2006 WL 8441287, at *2 (E.D.N.Y. Aug. 7, 2006), *report and recommendation adopted*, No. 03CV1270JSETB, 2006 WL 8441288 (E.D.N.Y. Sept. 25, 2006); *see, e.g., Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179–80

(2d Cir. 1990) (denying certification where "claim is subject to several unique defenses"); *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 78 (S.D.N.Y. 2006) (similar).

Here, Plaintiff's claims are unquestionably barred by the statute of limitations. This is obviously a full defense that would dominate the focus of any litigation. *See, e.g., Leroy v. Paytel III Mgmt. Assocs., Inc.*, No. 91 Civ. 1933 (JFK), 1992 WL 367090, at *2-3 (S.D.N.Y. Nov. 24, 1992) (denying class certification solely because the named plaintiff's claims were time barred).

Plaintiff's product-liability causes of action are subject to a three-year statute of limitations under N.Y.C.P.L.R. 214(5), which runs from "'the date of injury[.]'" The discovery rule under CPLR 214-c(2) would not help Plaintiff even if applied (and it does not). *See Hossain v. Unilever United States, Inc.*, No. 21CV2833FBTAM, 2023 WL 4405654, at *4 (E.D.N.Y. July 7, 2023). [I]n enacting a new 'discovery' rule for the commencement of toxic torts, the Legislature had in mind only the discovery of the ***manifestations or symptoms*** of the latent disease that the harmful substance produced." *Matter of New York Cnty. DES Litig.*, 89 N.Y.2d 506, 514 (1997) (emphasis added). The New York Court of Appeals has "rejected the contention that the plaintiff must also discover that the injury has a nonbiological cause." *Whitney v. Quaker Chem. Corp.*, 90 N.Y.2d 845, 847 (1997). "Nor does the worsening of a plaintiff's symptoms over time alter or postpone the accrual date." *Bano v. Union Carbide Corp.*, 361 F.3d 696, 709 (2d Cir. 2004) (citing *Whitney*, 90 N.Y.2d at 847). "'All that is necessary to start the limitations period [of 214–c(2)] is that plaintiff be aware of the primary condition for which damages are sought.'" *Id.* (quoting *Whitney*, 90 N.Y.2d at 847). Stated simply, "the three year limitations period runs from the date when plaintiff first noticed symptoms, rather than when a physician first diagnosed those symptoms." *Hossain*, 2023 WL 4405654, at *4 (cleaned up).

"Since the majority's holding in *Matter of New York County DES Litigation*, courts have repeatedly held that claims are time barred under C.P.L.R. 214-c(2) where a plaintiff suffered ***symptoms of an illness*** more than three years prior to filing suit, ***regardless of whether the cause of those symptoms had been discovered***." *Rouviere v. Howmedica Osteonics Corp.*, No. 18-CV-04814 (LJL), 2022 WL 17417036, at *9 (S.D.N.Y. Dec. 5, 2022) (citing authority, emphasis added); *see, e.g.*, *Schwartz v. Osteonics Corp.*, 182 F.3d 901 (2d Cir. 1999) (product liability claims accrued when plaintiff began experiencing left thigh pain, as that was the "manifestation or symptom" of the disease for which plaintiff sought recovery, not when she discovered the cause); *Baker v. Stryker Corp.*, 770 F. App'x 12, 15 n.1 (2d Cir. 2019) (similar).

Under either rule, Plaintiff's claims accrued more than three years before she filed suit on December 6, 2021 (*i.e.*, by December 6, 2018). The "primary condition" on which Plaintiff's claims are based is hair loss. And she allegedly began experiencing hair loss while using TRESemmé years before her claims accrued on December 6, 2018. (*See*, *supra*, at 7.)

Since Plaintiff's claims are clearly time barred, Plaintiff has tried to save her putative class by adding Ms. Hossain as a class representative. This is improper. As noted, Plaintiff cannot unilaterally amend her Complaint via briefing on class certification. (*See*, supra, at 18 n. 11.) Regardless, Ms. Hossain is expressly ***excluded*** from the pleaded class and thus cannot be a class representative.[17] *See In re Beacon Assocs. Litig.*, No. 09 CIV. 777 LBS AJP, 2012 WL 1372145,

---

[17] The cases cited by Plaintiff are inapposite (Pl. Br. at 16.) They concern defenses that turned on generalized proof that did not require individualized inquires (unlike the highly individualized nature of the dispositive defenses here), *Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 133-34 (S.D.N.Y. 2014), defenses that were speculative or not clearly established, *In re Frontier Ins. Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 41-43 (E.D.N.Y. 1997), or defenses subject to both of these shortcomings, *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98CIV.4318(HB), 2000 WL 1357509, at *7 (S.D.N.Y. Sept. 20, 2000).

at *3 (S.D.N.Y. Mar. 19, 2012) ("In order to have standing to represent a class certified under Rule 23, a class representative must be part of the class.") (cleaned up).

Even if Plaintiff could add Ms. Hossain, her claims are clearly time barred too. As noted, she began experiencing hair loss months before her claim accrued on May 19, 2018. (*See*, *supra*, at 9.) Her rejoinders are meritless. (Pl. Br. at 16 n.16.) It matters not that she did not see a doctor until later, *see Hossain*, 2023 WL 4405654, at *6 (rejecting that argument), or that her hair loss may have "worsen[ed]" over time, *see Bano* 361 F.3d at 709 (citing *Whitney*, 90 N.Y.2d at 847). Nor was the statute of limitations tolled by the Governor's Executive Orders during COVID in effect between March 20 and November 3, 2020 (the "<u>COVID Orders</u>"). There is a critical distinction between a toll and suspension. *See Barry v. Royal Air Maroc*, No. 21CV8481GHWBCM, 2022 WL 3215050, at *4 n.1 (S.D.N.Y. July 8, 2022) (cleaned up), *report and recommendation adopted*, 2022 WL 3214928 (S.D.N.Y. Aug. 9, 2022). "With a suspension, a party can *only* benefit from the Executive Orders if his or her statute of limitations or filing deadline fell **within the suspension period**." *Id.* (cleaned up, emphasis added).

As recently observed by this Court, "most courts, including in this District," have concluded that the COVID Orders **suspended** statutes of limitations, not tolled them.[18] *Uzoigwe v. Charter Commc'ns, LLC*, No. 23 CV 7383 (HG)(LB), 2024 WL 1311525, at *4 (E.D.N.Y. Mar. 18, 2024), *report and recommendation adopted*, No. 23CV07383HGLB, 2024 WL 1756503, *3 (E.D.N.Y. Apr. 24, 2024); *Loeb v. Cnty. of Suffolk*, No. 22-CV-6410 (HG), 2023 WL 4163117, *3 (E.D.N.Y. June 23, 2023) (same); *Weingot v. Unison Agreement Corp.*, No. CV 21-4542

---

[18] During the pre-motion conference, the Court inquired whether federal courts have applied this interpretation of the COVID Orders in diversity cases. The answer is yes. All of the above-cited federal opinions reached this conclusion without regard to jurisdiction, and some of them were diversity cases, *e.g.*, *Uzoigwe* and *Weingot*. Moreover, as noted, New York state courts cases have reached the same conclusion, *e.g.*, *Baker* and *Cruz*.

(JS)(AYS), 2023 WL 5152478, at *4 (E.D.N.Y. July 20, 2023) (same); *see also Barry*, 2022 WL 3215050, at *4 (same); *Baker v. 40 Wall St. Holdings Corp.*, 161 N.Y.S.3d 723, 724-25 (N.Y. Sup. Ct. 2022) (same); *Cruz v. Guaba*, 159 N.Y.S.3d 828, 828 (N.Y. Sup. Ct. 2022) (same).

Since the COVID Orders only suspended limitations periods, they do not save Ms. Hossain's untimely claims because they did not expire ***during*** the suspension period (*i.e.*, before November 3, 2020). *See id.*; *Barry*, 2022 WL 3215050, at *4. She is an atypical plaintiff.

***Adequacy.*** As noted, Plaintiff was clueless about her claims, this action, and her role and duties as a class representative; in fact, she did not even know she was prosecuting a class action. Under far less egregious circumstances, courts have rejected class representatives. *See, e.g.*, *In re Term Commodities Cotton Futures Litig.*, No. 12-CV-5126, 2022 WL 485005, at *7 (S.D.N.Y. Feb. 17, 2022) (during deposition, class representative testified her did not know the name of the expert, read documents or filings, and know who he represented in this action).[19]

## III. THE COURT SHOULD STRIKE OR DISREGARD INADMISSIBLE OR IMPROPER EVIDENCE AND CLAIMS.

As noted above, only admissible evidence can be considered on this motion. (*See*, *supra*, at 11-12.) While none of the evidence Plaintiff submitted supports certification here (as noted above), much of it is inadmissible, as illustrated in the chart included in **Addendum B**. The Court should strike or disregard such evidence in considering the merits of this motion. Moreover, for the reasons noted above, the Court should strike or disregard any reference to the Unpleaded Preservatives and request to add Ms. Hossain as a class representative. (*See*, *supra*, at 18 n. 11.)

---

[19] Plaintiff's self-serving declaration does not even attempt to address the myriad of information about which Plaintiff had no idea during her deposition. And, even if it did, Plaintiff cannot contradict sworn deposition testimony via a self-serving declaration. *Cf. Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987). Regardless, her attempt to contradict her deposition testimony underscores why she is an inadequate class representative. *See, e.g., Woodhams*, 2024 WL 1216595, at *11-12 (finding class representative inadequate in light of contradictory testimony).

## CONCLUSION

For the foregoing reasons, Unilever respectfully requests that the Court deny Plaintiff's motion for class certification under Rule 23(c)(4).

Dated: July 26, 2024          By: */s/ Reynold Lambert*
                                  Reynold Lambert
                                  Gavin J. Rooney
                                  **LOWENSTEIN SANDLER LLP**
                                  1251 Avenue of the Americas
                                  New York, NY 10020
                                  Telephone: (973) 597-2472
                                  Facsimile: (973) 597-2473
                                  grooney@lowenstein.com
                                  rlambert@lowenstein.com

                                  *Attorneys for Defendant*

# ADDENDUM A

## Non-Exhaustive Illustration Of Variances Among State Products Liability Laws Pertaining Specifically To The Issues Plaintiff Seeks To Certify[20]

## DESIGN DEFECT

### Issue No. 1

- Issue: Does an allergic reaction give rise to a claim of design defect?

- Number of different rules:  At least three.

| Rules | Jurisdiction | Authority |
|---|---|---|
| **No, an allergic reaction does not give rise to a claim of design defect** | New York | "If the injuries were suffered by reason of the patron's allergy to the product or to its ingredients, no right of action exists in favor of the patron on any theory of negligence in manufacture, distribution or use." *Kaempfe v. Lehn & Fink Prod. Corp.*, 21 A.D.2d 197, 200 (1st Dep't 1964), *aff'd*, 20 N.Y.2d 818 (1967). |
| | Illinois | "However, a consumer who suffers an allergic reaction to a product without any identifiable defect may not generally invoke strict liable to recover from a manufacturer or seller." *Smith v. Phoenix Seating Sys., LLC*, 894 F. Supp. 2d 1088, 1093 (S.D. Ill. 2012) (cleaned up). |
| **Yes, an allergic reaction may give rise to a claim of design defect** | Florida | "Plaintiffs assert that the Products are defective in design because they contain ingredients [...] which are known to cause allergic reactions and dermatitis. This is sufficient to allege a design defect." *In re Monat Hair Care Prod. Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 18-MD-02841, 2019 WL 5423457, at *4 (S.D. Fla. Oct. 23, 2019) (cleaned up). |
| **Maybe.  Only when the prominence of allergy is beyond the reasonable contemplation of ordinary consumer** | Wisconsin | "We conclude that in order to prove that an allergy-causing product is unreasonably dangerous, a plaintiff must prove the following elements: (1) the product contains an ingredient that can cause allergic reactions in a substantial number of consumers; and (2) the ordinary consumer does not know that the ingredient can cause allergic reactions in a substantial number of |

---

[20] In addition to the material variances noted above that are apparent from Plaintiff's own charts and/or case law.  (*See, supra*, at 21-22.)

| | | consumers." *Green v. Smith & Nephew AHP, Inc.*, 2001 WI 109, ¶ 83 (2001) |

### Issue No. 2

- <u>Issue</u>: Who bears the burden of proving a design defect?

- <u>Number of different rules</u>:  At least two.

| Rules | Jurisdiction | Holding |
|---|---|---|
| **Plaintiff** | New Jersey | "In a design defect product liability case, the plaintiff bears the burden of proof." *Cavanaugh v. Skil Corp.*, 331 N.J. Super. 134, 161 (App. Div. 1999), *aff'd*, 164 N.J. 1 (2000). |
| | Colorado | "[T]his court has chosen to follow the Restatement (Second) of Torts § 402A in requiring a plaintiff to prove that a product is in a defective condition unreasonably dangerous. Because the determination of whether a product is unreasonably dangerous is made through a risk-benefit analysis, we find that the plaintiffs also bear the burden of proving that the risks outweigh the benefits of the design." *Armentrout v. FMC Corp.*, 842 P.2d 175, 183 (Colo. 1992) (cleaned up). |
| **Defendant** | California | "[W]e conclude that once the plaintiff makes a prima facie showing that the injury was proximately caused by the product's design, the burden should appropriately shift to the defendant to prove, in light of the relevant factors, that the product is not defective." *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 431, 573 P.2d 443, 455 (1978); *see also Williams v. J-M Mfg. Co., Inc.*, 102 Cal. App. 5th 250 (2024). |

# FAILURE TO WARN

## Issue No. 1

- <u>Issue</u>: Does a manufacturer have a duty to warn about idiosyncratic allergies?

- <u>Number of different rules</u>:  At least two.

| Rules | Jurisdiction | Authority |
|---|---|---|
| **No, manufacturers have no duty to warn about idiosyncratic allergies.** | California | "There is significant authority to the effect that there is no duty to warn of the possibility of rare, idiosyncratic, hypersensitive, or unusual reactions to an otherwise safe and useful product." *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 466 (2003). |
| | Illinois | "The rule barring the idiosyncratic consumer from recovery generally applies whether suit is brought under strict liability, breach of warranty, or negligence. Regardless of the plaintiff's theory, the manufacturer owes no prior duty to warn of a risk that is remotely possible to the unknown few in the population." *Presbrey v. Gillette Co.*, 105 Ill. App. 3d 1082, 1092 (1982); *see also Bolden v. Beiersdorf, Inc.*, No. 20-CV-150-DWD, 2022 WL 867959 (S.D. Ill. Mar. 23, 2022). |
| | Kentucky | "We do not believe Kentucky would depart from the general rule that a plaintiff's unusual or rare idiosyncratic sensitivity does not provide a basis for recovery under any theory of product liability." *Gordon v. Proctor & Gamble Distrib. Co.*, 789 F. Supp. 1384, 1385 (W.D. Ky. 1992); *see also Hardy v. Royce Lab'ys, Inc.*, No. CIV.A. 3:97-CV-740H, 2000 WL 33960115 (W.D. Ky. Jan. 3, 2000). |
| | New York | "We have not yet reached the point where the manufacturer is under the absolute duty of making a product, useful to many, free from all possible harm to each and every individual; nor the point where the manufacturer is to be held under an absolute duty of giving special warning against a remote possibility of harm due to an unusual allergic reaction from use by a miniscule percentage of the potential customers. "Every substance, including food which is daily consumed by the public, occasionally becomes anathema to him peculiarly allergic to it. To require insurability against such an unforeseeable |

| | | happenstance would weaken the structure of common sense, as well as present an unreasonable burden on the channels of trade." *Kaempfe v. Lehn & Fink Prod. Corp.*, 21 A.D.2d 197, 200 (1st Dep't 1964), *aff'd*, 20 N.Y.2d 818 (1967). |
|---|---|---|
| **Potentially yes.** | Kansas | "The court instructed the jury that if appellant knew or should have known that a group of persons would suffer rare side effects, appellant had a duty to warn the medical profession of the susceptibility of such a hypersensitive or idiosyncratic group […] We believe the court's instruction was an accurate statement of the law." *Sterling Drug, Inc. v. Cornish*, 370 F.2d 82, 84 (8th Cir. 1966); *see also Wooderson v. Ortho Pharm. Corp.*, 235 Kan. 387, 681 P.2d 1038 (1984). |

## Issue No. 2

- <u>Issue</u>: Who has the burden of proof regarding idiosyncratic plaintiff defense?

- <u>Number of different rules</u>: At least three.

| Rules | Jurisdiction | Authority |
|---|---|---|
| **Plaintiff** | New York | "[T]he plaintiff, as the basis for imposing upon defendant a special duty of warning, was bound at the very least to show (1) that she was one of a substantial number or of an identifiable class of persons who were allergic to the defendant's product, and (2) that defendant knew, or with reasonable diligence should have known of the existence of such number or class of persons." *Kaempfe v. Lehn & Fink Prod. Corp.*, 21 A.D.2d 197, 200 (1st Dep't 1964), *aff'd*, 20 N.Y.2d 818 (1967). |
| | Colorado | "[T]he plaintiff has the burden of establishing that the product is injurious to a significant number' of the population." *Howard v. Avon Prod., Inc.*, 155 Colo. 444, 452 (1964) (cleaned up). |
| **Hybrid** | Oregon | "[C]ourts construing that 'defense' have recognized it involves a two-step process. First, the defendant has the burden of producing evidence that the plaintiff's injury from use of the defendant's product is the result of an allergic response. Second, after the defendant has satisfied that initial burden of production, the plaintiff bears the burden of proving that his or her reaction, |

A-4

| | | rather than being idiosyncratic, could be experienced by an identifiable class of consumers." *Jones v. Gen. Motors Corp.*, 139 Or. App. 244, 263 (1996) (cleaned up), *aff'd*, 325 Or. 404 (1997). |
|---|---|---|
| **Defendant** | Washington D.C. | "In addition, where a defendant asserts that harm from a product was not foreseeable because it resulted from an allergy unique to the plaintiff, the burden of showing the existence of an allergy may be upon the defendant in a strict liability case." *Payne v. Soft Sheen Prod., Inc.*, 486 A.2d 712, 722 (D.C. 1985). |

## STATUTE OF LIMITATIONS

- <u>Issue</u>: When does the discovery rule apply?

- <u>Number of different rules</u>: At least four.

| Rules | Jurisdiction | Authority |
|---|---|---|
| **When plaintiff knows or reasonably should have known that (a) they have been injured, and (b) the injury was wrongfully caused** | California | "If applicable, the discovery rule delays the accrual date until the plaintiff suspects or should suspect that her injury was caused by wrongdoing." *Haugh v. Depuy-Motech, Inc.*, 14 F. App'x 883, 885 (9th Cir. 2001) (cleaned up) |
| | Illinois | "In applying the two-year statute of limitations set forth in section 13–213(d) and similar statutes of limitations, Illinois courts have adopted a discovery rule, which serves to postpone the commencement of the relevant statute of limitations until the injured plaintiff knows or reasonably should have known that he has been injured and that his injury was wrongfully caused." *Cochran v. Smith & Nephew, Inc.*, 260 F. Supp. 3d 979, 982–83 (C.D. Ill. 2017) (cleaned up). |
| **When plaintiff has knowledge or sufficient notice that (a) they have suffered harm, and (b) that the defendant has caused it** | Indiana | "The two-year statute of limitations begins to run from the date the plaintiff knew or should have discovered that she suffered an injury or impingement, and that it was caused by the product or act of another." *Degussa Corp. v. Mullens*, 744 N.E.2d 407, 410 (Ind. 2001) (cleaned up) |
| | Massachusetts | "'[U]nder [the] discovery rule, a claim accrues and the statute of limitations clock commences when a plaintiff knows, or reasonably should have known, that she has been harmed or may have been harmed by the defendant's conduct. A |

| | | |
|---|---|---|
| | | plaintiff thus needs knowledge or sufficient notice of both: 1) the fact that she has suffered harm; and 2) that the defendant caused the harm." *Rosbeck v. Corin Grp., PLC*, 140 F. Supp. 3d 197, 211 (D. Mass. 2015) (cleaned up). |
| | Oklahoma | "Oklahoma follows the discovery rule, under which the statute [of limitations in product liability cases] does not begin to run until the plaintiff knows, or as a reasonably prudent person should know, that he has the condition for which his action is brought and that the defendant caused it. However, a plaintiff need not know the extent of injury or know that it is permanent for the limitations period to commence." *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (cleaned up). |
| **When plaintiff discovers or, through exercise of reasonable care and diligence, should discover, the nature and/or sympoms of their injury** | Ohio | "Generally, the discovery rule holds that a limitations period does not begin to run until the plaintiff discovers (or reasonably should have discovered) the injury giving rise to the claim." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 45 F. Supp. 3d 706, 721–22 (N.D. Ohio 2014) (cleaned up). |
| | Texas | "The discovery rule is a judicially constructed test which is used to determine when a plaintiff's cause of action accrued. When applied, the rule operates to toll the running of the period of limitations until the time that the plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of his injury." *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990) (cleaned up) |
| **When plaintiff discovers manifestations or symptoms of harm; knowledge of cause is unnecessary** | New York | "[I]n enacting a new 'discovery' rule for the commencement of toxic torts, the Legislature had in mind only the discovery of the manifestations or symptoms of the latent disease that the harmful substance produced." *Matter of New York Cnty. DES Litig.*, 89 N.Y.2d 506, 514 (1997) (emphasis added). The New York Court of Appeals has "rejected the contention that the plaintiff must also discover that the injury has a nonbiological cause." *Whitney v. Quaker Chem. Corp.*, 90 N.Y.2d 845, 847 (1997). Stated simply, "the three year limitations period runs from the date when plaintiff first noticed symptoms, rather than when a physician first diagnosed those |

| | | symptoms." *Hossain v. Unilever United States, Inc.*, No. 21CV2833FBTAM, 2023 WL 4405654, at *1 (E.D.N.Y. July 7, 2023) (cleaned up). |
| --- | --- | --- |

**Inadmissible Evidence Attached To The Certification Of Stephen Fearon**

| Exhibit No(s). | Description | Basis for Exclusion |
|---|---|---|
| 2 | Excel spreadsheet prepared by counsel for purposes of this litigation advancing hearsay assertions concerning putative class members' history of product use and purported injuries | ***Hearsay (FRE 802)***<br><br>*See Cellco P'ship v. City of Rochester*, No. 6:19-CV-06583 EAW, 2024 WL 805640, at \*4 (W.D.N.Y. Feb. 27, 2024) (spreadsheet prepared for litigation was "inadmissible hearsay"); *Shutterfly Lifetouch LLC v. Rosa*, No. 3:21-CV-00666 (VDO), 2024 WL 757080, at \*5 (D. Conn. Feb. 23, 2024) (same). |
| 3, 4, 5 | Expert reports unsworn by authors | ***Hearsay (FRE 802)***<br><br>*See Murphy v. Metro. Transp. Auth.*, No. 05 CIV. 376LMM, 2009 WL 1044604, at \*5 (S.D.N.Y. Apr. 14, 2009) ("An expert's report (*id.* 6) is hearsay and not admissible."); *Reza v. Khatun*, No. 09-CV-233 (MKB), 2017 WL 3172816, at \*2 (E.D.N.Y. July 25, 2017) ("courts in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of Fed. R. Civ. P. 56(e), and cannot be used on a motion for summary judgment without additional affidavit support") (cleaned up). |
| 14, 15, 16 | Documents purporting to reflects complaints from consumers, including reviews printed off of the internet, without any evidence that Unilever received or saw any such complaints | ***Hearsay (FRE 802) ; Authenticity (FRE 901)***<br><br>*See Novak v. Tucows, Inc.*, No. 06–CV–1909, 2007 WL 922306, at \*5 (E.D.N.Y. Mar. 26, 2007) ("Where postings from internet websites are not statements made by declarants testifying at trial and are offered to prove the truth of the matter asserted, such postings generally constitute hearsay under Fed.R.Evid. 801.") (citing *United States v. Jackson*, 208 F.3d 633, 638 (7th Cir.2000)); *Manchanda v. Educ. Credit Mgmt. Corp.*, No. 19 CIV. 5121 (LGS), 2022 WL 137885, at \*5 (S.D.N.Y. Jan. 14, 2022) ("Newspaper articles offered for the truth of the statements asserted are inadmissible hearsay."); *Holmes v. Gaynor*, 313 F. Supp. 2d 345, 358 n.1 (S.D.N.Y. 2004) (same); *RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*, No. 18-CV-6449 (JS)(ARL), 2023 WL 2403258, at \*8 (E.D.N.Y. Mar. 7, 2023) ("customer complaint contained in the Instagram Post is hearsay if offered to prove the truth of the matter asserted"). |

| Exhibit No(s). | Description | Basis for Exclusion |
|---|---|---|
| 12, 13, 25 | Spreadsheets with purported complaints produced by Unilever and a third party, and a letter allegedly directed to Unilever, to the extent Plaintiff is seeking use those documents to prove the truth of the matters asserted therein | ***Hearsay (FRE 802)***<br><br>*See RVC Floor, supra.* |
| 21, 22, 23 | Pleadings from *Reid* matter | ***Hearsay (FRE 802)***<br><br>*See Puglisi v. Town of Hempstead Sanitary Dist. No. 2*, No. 11-CV-445 (PKC), 2014 WL 12843521, at *2 (E.D.N.Y. Jan. 27, 2014) (excluding pleadings from other matters because they are hearsay and prejudicial since mere allegations "are dispositive of nothing") (citing authority, cleaned up).<br><br>***Relevance***<br><br>*Reid* is irrelevant. Magistrate Judge Merkl has already rejected Plaintiff's attempt to secure discovery pertaining to the *Reid* settlement, precisely because it is irrelevant. As the Seventh Circuit's decision affirming the settlement makes plain, *Reid* concerned a different product (a Suave® 30-day smoothing kit vs. a TRESemmé shampoo) that, unlike here, was recalled, and allegations concerning different injuries (dissolving and burning hair shortly after using kit vs. irritation and hair loss months or years after using shampoo) caused by a different ingredient (thioglycolic acid vs. DMDM hydantoin). *See Martin v. Reid*, 818 F.3d 302, 304-05 (7th Cir. 2016) (complaint alleged that kit's "active ingredient, ***thioglycolic acid***, is extremely corrosive, and if left on long enough, can dissolve the hair and burn the scalp.") (emphasis added).<br><br>To that end, Plaintiff submits with her motion only the original *Reid* complaint, failing to disclose that it was later amended to specify the allegedly offending ingredient. (Lambert Decl., Ex. V at ¶¶ 1, 54-55.) |

| Exhibit No(s). | Description | Basis for Exclusion |
|---|---|---|
| 24, 26, 27, 28, 29, 34, 36 | Articles and other documents printed off the internet | ***Hearsay (FRE 802)***<br><br>*See Novak, Manchanda, Holmes, supra.* |