ELIZABETH CANDELARIA, on behalf of herself and all others similarly situated,

        Plaintiffs,

-vs-

CONOPCO, INC. d/b/a UNILEVER HOME & PERSONAL CARE USA,

        Defendant.

No.: 1:21-cv-06760-NCM-TAM

# PLAINTIFFS' REPLY MEMORANDUM OF LAW
# IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

**SQUITIERI & FEARON, LLP**
Stephen J. Fearon, Jr.
Paul Sweeny
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
Email: stephen@sfclasslaw.com
Email: paul@sfclasslaw.com

**ATTORNEYS FOR PLAINTIFFS**
**AND THE PROPOSED CLASS**

# TABLE OF CONTENTS

Page

INTRODUCTION ....................................................................................................................1

REPLY FACTUAL BACKGROUND ........................................................................................1

    A.   DMDM, MCI, and/or MI Can Generally Cause Hair Loss .................................................1

    B.  Plaintiffs' Individual Facts Are Not Relevant to This Motion ...........................................2

    C.  Unilever Confirms TRESemmé Formulations Contained DMDM, MCI, and MI .............3

ARGUMENT ...........................................................................................................................3

    A.  The Court Should Appoint Ms. Hossain as A Class Representative ...................................3

    B.  Plaintiffs Permissibly Seek to Certify Issues Relating to MCI and MI ..............................4

    C.  Issue Certification Would Materially Advance the Litigation.............................................5

    D.  Issue Certification Would Not Violate the Seventh Amendment........................................7

    E.  Common Questions of Fact Predominate ........................................................................8

    F.  Common Issues of Law Predominate ..............................................................................8

    G.  A Class Action Addressing Central Issues Is Superior.......................................................9

    H.  The Class Is Too Numerous to Join to the Case ...............................................................9

    I.   Plaintiffs Are Not Atypical Based on the Statute of Limitations.....................................10

    J.  Ms. Candelaria Is Adequate to Serve as Class Representative ........................................12

    K.  The Court Should Consider All of Plaintiffs' Evidence ...................................................12

CONCLUSION.......................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Benner v. Becton Dickinson & Co.*,
 214 F.R.D. 157 (S.D.N.Y. 2013) ................................................................................ 6

*Blyden v. Mancusi*,
 186 F.3d 252 (2d Cir. 1999) ...................................................................................... 7

*Burnett v. CNO Financial Group, Inc.*,
 No. 1:18-cv-00200-JPH-DML, 2022 WL 896871 (S.D. Ind. Mar 25, 2022) ............................. 5

*Cain v. Cnty. of Niagara*, New York,
 No. 20-CV-1710S, 2022 WL 616795 (W.D.N.Y. Mar. 2, 2022) ................................................. 10

*City of New York v. Fedex Ground Package Sys., Inc.,*
 *314 F.R.D. 348 (S.D.N.Y. 2016)* ................................................................................ 7

*Cruz v. Coach Stores, Inc.*,
 202 F.3d 560 (2d Cir. 2000) ...................................................................................... 4

*Flores v. Anjost Corp.*,
 284 F.R.D. 112 (S.D.N.Y. 2012) ................................................................................ 13

*Haddock v. Nationwide Fin. Servs., Inc.*,
 293 F.R.D. 272 (D. Conn. 2013) ................................................................................ 9

*Harte v. Ocwen Fin. Corp.*,
 No. 13-CV-5410, 2018 WL 1830811 (E.D.N.Y. Feb. 8, 2018) ................................................. 13

*In re Copley Pharm., Inc.*,
 158 F.R.D. 485 (D. Wyo. 1994) ................................................................................ 6

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
 334 F.R.D. 96 (E.D. Mich. 2019) ................................................................................ 5

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
 340 F.R.D. 251 (E.D. Mich. 2022) ................................................................................ 7

*In re Flint Water Cases*,
 558 F. Supp. 3d 459 (E.D. Mich. 2021) ................................................................................ 7

*In re Frontier Ins. Grp., Inc. Sec. Litig.*,
 172 F.R.D. 31 (E.D.N.Y. 1997) ................................................................................ 10

*In re Masonite Corp. Hardboard Siding Prod. Liab. Litig.*,
170 F.R.D. 417 (E.D. La. 1997) ............................................................................................ 6

*In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*,
209 F.R.D. 323 (S.D.N.Y. 2002) ........................................................................................... 6

*In re New York City Asbestos Litig.*,
39 N.Y.S.3d 629 (N.Y. Sup. Ct. 2016) ................................................................................ 11

*In re Pfizer Inc. Sec. Litig.*
282 F.R.D. 38 (S.D.N.Y. 2012) ........................................................................................... 12

*In re Telectronics Pacing Sys., Inc., Accufix Atrial J Leads Prod. Liab. Litig.*,
172 F.R.D. 271 (S.D. Ohio 1995) .......................................................................................... 6

*In re Terrorist Attacks on Sept. 11, 2001*,
No. 03 MDL 1570GBDSN, 2023 WL 4864375 (S.D.N.Y. July 31, 2023) .............................. 10

*In re U.S. Foodservice Inc. Pricing Litig.*,
729 F.3d 108 (2d Cir. 2013) .................................................................................................. 9

*In re Yasmin & Yaz (Drospirenone) Mktg.*,
275 F.R.D. 270 (S.D. Ill. 2011) ............................................................................................. 6

*Lanqing Lin v. Everyday Beauty Amore Inc.*,
V-729 (BMC), 2019 WL 3037072 (E.D.N.Y. July 11, 2019) ................................................ 13

*Martin v. Behr Dayton Thermal Products* LLC,
896 F.3d 405 (6th Cir. 2018) ................................................................................................. 5

*McAnaney v. Astoria Fin. Corp.*,
No. 04-cv-1101JFBWDW, 2007 WL 2702348 (E.D.N.Y. Sept. 12, 2007) ............................. 4

*McDermott v. Fed. Sav. Bank*,
No. 14-CV-6657-WFK-SJB, 2020 WL 6295058 (E.D.N.Y. Aug. 12, 2020) .......................... 10

*McLaughlin v Snowlift*, Inc.
214 A.D.3d 720 (2d Dep't 2023) .......................................................................................... 11

*Murphy v. Harris*,
210 A.D.3d 410 (1st Dep't 2022) ......................................................................................... 11

*New York State Elec. & Gas Corp. v. Secretary of Labor*,
88 F.3d 98 (2d Cir. 1996) ....................................................................................................... 4

*Novella v. Westchester County*,
  661 F.3d 128 (2d Cir. 2011)........................................................................................... 10

*Pella Corp. v. Saltzman*,
  606 F.3d 391 (7th Cir. 2010) ........................................................................................... 5

*Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*,
  772 F.3d 111 (2d Cir. 2014)........................................................................................... 10

*Perechu v. Flaum Appetizing Corp.*,
  No. 18-CV-1085-SJB, 2021 WL 1725629 (E.D.N.Y. Apr. 6, 2021) ........................................ 10

*Roach v. Cornell Univ.*,
  207 A.D.3d 931 (3d Dep't 2022);................................................................................... 11

*Robinson v. Metro-N. Commuter R.R. Co.*,
  267 F.3d 147 (2d Cir. 2001)............................................................................................. 3

*Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*,
  324 F. Supp. 3d 387 (S.D.N.Y. 2018)............................................................................... 8

*S. Bank Nat'l Ass'n as Tr. to Bank of Am., N.A. v. KeyBank, Nat'l Ass'n*,
  No. 20-CV-3577 (PKC), 2023 WL 2745210 (S.D.N.Y. Mar. 31, 2023)................................. 11

*State v. Williams*,
  224 A.D.3d 1356 (4th Dep't 2024)................................................................................. 10

*Uzoigwe v. Charter Commc'ns*, LLC,
  No. 23 CV 7383 (HG)(LB), 2024 WL 1311525 (E.D.N.Y. Mar. 18, 2024) ........................... 10

*Wal–Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)......................................................................................................... 4

**INTRODUCTION**

Plaintiffs seek to certify six discrete general causation and liability issues determinative of their individual and class failure to warn and design defect claims, including (1) whether TRESemmé containing DMDM, MCI, and/or MI can cause hair loss; (2) whether Unilever knew or should have known of that risk; (3) duty to warn; (4) breach of that duty; (5) design defect; and (6) reasonable alternative design. Pltfs. Br. 3, 19 (stating exact issues).[1] Class-wide adjudication of these central issues during at Plaintiffs' initial trial would materially advance and streamline the claims of the 717 Class members who also suffered hair loss and would eliminate the need for numerous witnesses and for presenting evidence concerning common liability issues.

Unilever fails to adequately address why these common issues cannot be determined on a class-wide basis based on the parties' competing common evidence. Instead, Unilever pivots and highlights irrelevant, individual issues that Plaintiffs do not seek to resolve on a class-wide basis. Unilever speculates—without support—that common issues cannot be bifurcated from individual issues. However, the Court and the parties have a wide array of trial management tools that would enable bifurcation, including special verdict forms, stipulated facts, and using a special master to efficiently adjudicate any individual issues. *See* Fed. R. Civ. P. 16(c). The Court should certify these limited issues under Rule 23(c)(4) because Plaintiffs have established Rule 23's elements.

**REPLY FACTUAL BACKGROUND**

**A.      DMDM, MCI, and/or MI Can Generally Cause Hair Loss**

Unilever's assertion that "hair loss has many different causes" is irrelevant. Def. Br. at 4-5. Plaintiffs are not seeking to determine on a class-wide basis the cause of each Class member's

---

[1]      Plaintiffs Elizabeth Candelaria and Zebin Hossain maintain the naming conventions in their opening submission. "Pltfs. Br." refers to their opening memorandum of law. "Def. Br." refers to Unilever's opposing memorandum of law. Numeric exhibit references are to the opening and reply declarations of Stephen J. Fearon, Jr.

hair loss. Instead, Plaintiffs seek to certify the general causation issue, that is, whether TRESemmé containing DMDM, MCI, and/or MI can cause dermatitis and hair loss (Issue 1).

Plaintiffs will prove general causation on a class-wide basis using common evidence, starting with expert testimony. Plaintiffs' dermatology/immunology and toxicology experts both opine that DMDM, MCI, and/or MI can cause dermatitis and hair loss. *e.g.*, Ex. 3, Serota Report at ¶ 38; Ex. 2, Thiffault Report at ¶ 1. Research and testimony from Dr. DeKoven, Unilever's own medical expert, confirms that DMDM, MCI, and/or MI can cause dermatitis and the link between dermatitis and hair loss. *See e.g.*, Ex. 39, *More Than just Methylisothiazolinone*, at 320 ("The widespread use of isothiazolinones led to a world-wide epidemic of allergic contact dermatitis."); Ex. 11, DeKoven Depo. at 22: 1-11.[2]

Plaintiffs' experts' opinions regarding general causation are well supported by research, documents, and testimony common to all Class members. *E.g.*, Ex. 40, *Contact Dermatitis to Personal Care Products Is Oncreasing (But Different!)*, at 1452 (showing 5.9% DMDM sensitization rate); *id.* (showing 8.6% and 28.8% MI and MCI/MI sensitization rates, respectively); Ex. 37, Preservatives Steering Team Telecon, 23rd October 2015 (noting "greatly increased prevalence of MIT sensitization in the general population."). Unilever's assertion that DMDM, MCI, and/or MI are safe and do not cause hair loss is a common defense to every Class member's claims, further establishing that issue certification is appropriate. *See* Def. Br. at 5.

**B.      Plaintiffs' Individual Facts Are Not Relevant to This Motion**

Unilever highlights and misconstrues the *individual* facts in Plaintiffs' cases to misdirect the Court on this motion. Def. Br. 5-9. Plaintiffs seek to certify *common* issues pertaining to general

---

[2]      "So if it's severe enough and if the inflammation extends significantly below the dermal-epidermal junction -meaning epidermal -- epidermis being the upper level of the skin, dermis being the next level of the skin. If you broach that area, then it's possible to interfere with the hair growth."

causation and liability (not specific causation or damages). In their opening submission, Plaintiffs asserted the requisite individual facts necessary to demonstrate typicality and commonality, including evidence that their claims, like the claims of the Class, arise from hair loss after using TRESemmé containing DMDM, MCI, and/or MI. *See* Candelaria Decl. at ¶¶ 5-6.[3] At this stage, the Court only needs to consider those individual facts to determine whether Plaintiffs establish Rule 23's requirements, and it should reserve a full merits determination for summary judgment.

## C. Unilever Confirms TRESemmé Formulations Contained DMDM, MCI, and MI

Plaintiffs have defined the Class as "individuals who suffered hair loss after using TRESemmé hair care products containing DMDM, MCI *and/or* MI" Pltfs. Br. at 12 (emphasis supplied). Unilever confirms that it sold TRESemmé containing DMDM *and/or* MCI/MI from 2016 to 2021, the relevant timeframe at issue for the Class. *See* Gibbs Decl. at ¶ 2; Valecillos Decl. at ¶¶ 2-3. Each Class member used one of those TRESemmé products, and it is irrelevant that other Class members used TRESemmé products containing a different variation of DMDM, MCI, and/or MI. *See* Ex. 2, Class Member Spreadsheet (Column E, Listing TRESemmé Used).

## ARGUMENT

## A. The Court Should Appoint Ms. Hossain as A Class Representative

Plaintiffs properly seek to appoint Ms. Hossain as a Class Representative. Under Rule 23, the Court has broad discretion to add class representatives. *See Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 171 (2d Cir. 2001) *abrogated on other grounds by Wal–Mart Stores, Inc.*

---

[3] Unilever mischaracterizes the individual facts underlying Plaintiffs Schafer's and Detmar's related cases (Defs. Br. at 9-10), individuals whom Plaintiffs are not seeking to appoint as Class representatives (with Plaintiff Detmar's individual New Jersey state case also being settled). In any event, Plaintiffs Schafer and Detmar each established specific causation through expert testimony and other evidence *See generally* Ex. 41, Schafer Depo. at 74:10-76:13; Ex. 42, Detmar Depo. at 26:25-27:25. Moreover, their physicians did not attempt to diagnose the cause of their hair loss. *See id.*, Ex. 43, Simonson Depo. at 41:22-43:24; Ex. 44, Gavarone Depo. at 59:3-60:13.

*v. Dukes*, 564 U.S. 338 (2011) (A district court "can direct that class members who are entitled to seek individual relief be named as additional class representatives.") (collecting cases); *McAnaney v. Astoria Fin. Corp.*, No. 04-cv-1101JFBWDW, 2007 WL 2702348, at \*13 (E.D.N.Y. Sept. 12, 2007) (providing "plaintiffs' counsel a reasonable period of time for the 'substitution or intervention of a new class representative.'"). Here, Plaintiffs have been litigating their cases in this Court in parallel using a joint discovery process, and Unilever has had a full and fair opportunity to gather discovery from Ms. Hossain. As demonstrated in her declaration (Hossain Decl. at ¶¶ 10-17), Ms. Hossain qualifies as a Class Representative and appointing her as a Class Representative would not prejudice Unilever.[4]

**B.      Plaintiffs Permissibly Seek to Certify Issues Relating to MCI and MI**

Plaintiffs properly seek to certify issues relating to MCI and MI, which, like DMDM were chemicals that can cause dermatitis and hair loss, and were included in TRESemmé products. Under Rule 15(b), "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." In opposing a Rule 15(b) amendment, "a party cannot normally show that it suffered prejudice simply because of a change in its opponent's legal theory." *New York State Elec. & Gas Corp. v. Secretary of Labor*, 88 F.3d 98, 104 (2d Cir. 1996); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (allowing plaintiff to assert hostile work environment claim during summary judgment).

Here, Plaintiffs have always asserted that Unilever failed to warn about the risk of DMDM "alone or in combination with other ingredients." *Candelaria* Compl., at ¶ 33 Dkt. 1. Discovery revealed that Unilever sought to remove DMDM *and* MCI/MI from TRESemmé, and Unilever's

---

[4]      If the Court determines Plaintiffs must formally move to amend the Complaint, based prior rulings, that motion would be considered under Rule 15(a)(2)'s liberal standard for amending the pleadings. *See Hossain v. Unilever United States, Inc.*, No. 21CV2833FBTAM, 2023 WL 4405654, at \*5 (E.D.N.Y. July 7, 2023).

witnesses testified on the sensitization risks of MCI/MI. *See generally* Ex. 11, DeKoven Depo. Plaintiffs' experts have even opined on the dangers of MCI and MI (Exs. 3-5), and Unilever's experts have a fair opportunity to offer opposing opinions. Therefore, Unilever cannot reasonably argue that it would be prejudiced by certifying MCI and MI issue because it has been fully litigated.

**C.     Issue Certification Would Materially Advance the Litigation**

Unilever contends that courts deny issue certification based on concerns over remaining individualized issues. Def. Br. at 12-16. However, numerous courts have certified common causation and liability issues in cases like this even where causation and damages issues would have to be adjudicated individually. In *Burnett v. CNO Financial Group, Inc.*, No. 1:18-cv-00200-JPH-DML, 2022 WL 896871 (S.D. Ind. Mar 25, 2022), a case alleging "shock-lapse" surrenders of life insurance, the court certified common issues of contract formation and breach, while leaving specific causation and damages for individual determination. *Id.* at *16-30. Likewise, in *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96 (E.D. Mich. 2019), a case involving allegedly defective gear shifters, the court stated that "whether the gear shift has a design defect . . . is a typical foundational element for all of the pleaded implied warranty and product liability claims," and the court certified the issue under Rule 23(c)(4). *Id.* at 111.

Moreover, circuit courts have increasingly endorsed the use of Rule 23(c)(4) to certify common liability issues, and courts have used Rule 23(c)(4) to certify liability issues in product liability cases like this one. *Martin v. Behr Dayton Thermal Products* LLC, 896 F.3d 405 (6th Cir. 2018) (affirming certification of seven issues in toxic tort, leaving injury, causation, and damages to be resolved individually); *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) ("A district court has the discretion to split a case . . . where damages or causation may require individualized assessments."); *In re Telectronics Pacing Sys., Inc., Accufix Atrial J Leads Prod. Liab. Litig.*, 172

F.R.D. 271 (S.D. Ohio 1995) (certifying multistate medical monitoring classes under Rule 23(c)(4)); *In re Copley Pharm., Inc*., 158 F.R.D. 485, 493 (D. Wyo. 1994) (certifying multistate class of individuals injured by albuterol inhalers for liability issues).[5]

Here, contrary to Unilever's assertion (Def. Br. at 12-16), Plaintiffs seek to certify central liability issues that can be adjudicated in a bifurcated trial process and that will materially advance the litigation, including whether TRESemmé can hair loss and whether Unilever had a duty to warn of that risk. *See* Pl. Br. at 3, 19 (setting forth the precise issues). Determining these issues at the outset will eliminate the need for substantial fact-finding in subsequent trials, including obviating the need for four of the parties' liability experts and Unilever's witnesses to testify on general causation and other liability issues. *See Martin*, 896 F.3d at 416 ("Defendants are correct that resolution of the certified issues 'will not resolve the question of Defendants' liability . . . to any individual therein.' But resolving the certified issues will go a long way toward doing so[.]").

Unilever speculates Plaintiffs will reassert the same evidence in later litigation, supposedly eliminating efficiencies. *See* Def. Br. at 16. Despite Unilever's conjecture, individual Class member trials would focus on specific causation and involve testimony from individual Class members, medical experts on specific causation, and a presentation of individual defenses by Defendant. But there would be no need for defense witnesses or general liability experts to testify or reassert competing evidence regarding preservatives, consumer complaints, and other common evidence. Instead, during pretrial proceedings, the Court and the parties would determine a process

---

[5]     The cases Unilever cites involved far more complicated factual and legal issues than this case. *Benner v. Becton Dickinson & Co*., 214 F.R.D. 157 (S.D.N.Y. 2013) (needlestick injuries allegedly caused by over 200 different needlestick devices); *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 209 F.R.D. 323 (S.D.N.Y. 2002) (widespread groundwater contamination with six claims against twenty defendants); *In re Yasmin & Yaz (Drospirenone) Mktg*., 275 F.R.D. 270 (S.D. Ill. 2011) (seeking to certify "any and all possible . . . injuries" related to birth control medication*); In re Masonite Corp. Hardboard Siding Prod. Liab. Litig*., 170 F.R.D. 417 (E.D. La. 1997) (bringing six claims against manufacturer arising from a multitude of various from types of hardboard siding).

to present previously certified and adjudicated common issues to the jury through stipulated facts and careful jury instructions. *See* Fed. R. Civ. P. 16(c), (d); Fed. R. Civ. P. 42(b).

**D.      Issue Certification Would Not Violate the Seventh Amendment**

Issue certification would not violate the Seventh Amendment's Reexamination Clause. "[I]f done properly, bifurcation will not raise any constitutional issues' so long as courts 'divide issues between separate trials in such a way that the same issue is not reexamined by different juries.'" *In re Flint Water Cases*, 558 F. Supp. 3d 459, 522 (E.D. Mich. 2021) (certifying common liability issues in professional negligence case arising from alleged water contamination); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 340 F.R.D. 251, 255 (E.D. Mich. 2022) (rejecting Seventh Amendment argument because "[o]nce these issues are settled by motion practice or trial, there is no reason to revisit them.").[6]

Here, Plaintiffs seek to certify discrete common issues linking three specific preservatives contained in TRESemmé to one specific type of injury (hair loss), and there are methods the Court and the parties may employ to properly divide these issues during bifurcated proceedings, including special verdict and interrogatory forms, stipulations, or the use of a special master. Moreover, Unilever's contention that successive juries will need to reexamine Unilever's conduct as part of a comparative negligence determination is premature and unfounded. *See* Def. Br. at 16. Unilever's belief that certain Plaintiffs did not seek proper medical attention is a failure to mitigate argument going to damages, not Unilever's liability. *See City of New York v. Fedex Ground Package Sys., Inc., 314 F.R.D. 348, 357 (S.D.N.Y. 2016)* (defining failure to mitigate defense). Unilever fails to show that the Reexamination Clause prevents issue certification.

---

[6]      *Blyden v. Mancusi*, 186 F.3d 252, 271 (2d Cir. 1999) is distinguishable. *See* Def. Br. at 17. In the general liability trial, the trial court failed to use a special verdict form specifying the acts that made each defendant liable.

**E.  Common Questions of Fact Predominate**

Unilever acknowledges that the Second Circuit only requires that Plaintiffs establish that common issues of fact and law predominate over the issues proposed for certification, not the cause of action as whole. *See* Def. Br. at 18 (citing *Nassau*,461 F.3d at 227). Despite that recognition, Unilever cites individualized issues that would be adjudicated in later class member trials, including individual TRESemmé use, the statute of limitations, and purported comparative negligence. Def. Br. at 19. The individual issues Unilever cites do not implicate the issues Plaintiffs seek to certify and, as a result, do not predominate or preclude issue certification.[7]

**F.  Common Issues of Law Predominate**

In their opening submission, Plaintiffs demonstrated that the issues Plaintiffs seek to certify are governed by predominating issues of law. *See* Pltfs Br. at 26-28 (citing Exs. 37-38). In response, Unilever fails to cite a material, individualized question of law that prevents certification of failure-to-warn-related issues (Issues 1-4). Instead, Unilever solely argues that certain jurisdictions do not impose liability for idiosyncratic allergic reactions. *See* Def. Br. at 20-23 (citing Addendum A). However, common evidence at trial will demonstrate that DMDM, MCI, and/or MI reactions are very common, not idiosyncratic. Unilever does not cite a single jurisdiction that would not impose liability where a plaintiff can establish that a manufacturer failed to warn of a very common allergy risk. *See* Plaintiff's Addendum A Response, attached to this reply.

Unilever also fails to cite any material variation of law demonstrating that individual issues of law predominate over design-defect-related issues (Issues 5 and 6). As an initial consideration, the consumer expectation test/risk-utility/hybrid approach dichotomy can be addressed through

---

[7]  The *Royal Park Invs. SA/NV* cases cited by Unilever involved individualized issues that are not present in this case, including individual Article III standing issues. *E.g.*, As such, the cases are distinguishable. *E.g.*, *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 324 F. Supp. 3d 387, 397-98 (S.D.N.Y. 2018).

special verdict and interrogatory forms, and common evidence will satisfy all three of those tests. Likewise, variations in state law regarding reasonable alternative design are immaterial. Plaintiffs will submit common proof demonstrating that a reasonable sodium-benzoate-based preservative was available long before Plaintiffs and the Class were injured, which will support every Class member's design defect claim. Unilever cites the type of variations in state law that fall into predictable and manageable patterns, which favors Rule 23(c)(4) certification.[8]

## G.     A Class Action Addressing Central Issues Is Superior

Concerning superiority, Unilever has no basis to assert that individual recoveries will exceed the cost of individual litigation (Def. Br. at 28), particularly when the parties thus far have retained six experts collectively and there have been sixteen depositions. Individual litigation would be very expensive for each Class member, thus favoring issue certification.

Moreover, manageability concerns do not prevent issue certification. Second Circuit courts rarely, if ever, deny class certification based on manageability concerns. *Haddock v. Nationwide Fin. Servs., Inc.*, 293 F.R.D. 272, 287 (D. Conn. 2013). In any event, a class action addressing the central liability issues would conserve substantial judicial resources, favoring a manageability and superiority finding. *In re Nassau Cnty.*, 461 F.3d at 230.[9]

## H.     The Class Is Too Numerous to Join to the Case

Unilever argues that joining 717 individuals would somehow be practicable based on identifiability, relying on *McDermott v. Fed. Sav. Bank*, No. 14-CV-6657-WFK-SJB, 2020 WL

---

[8]     State law variations regarding statute of limitations are similarly immaterial. The statute of limitations is an affirmative defense that Unilever may establish in future individual Class member trials. Plaintiffs submit the Class Member Spreadsheet (Ex. 2), which includes some general injury timing information, to establish numerosity and ascertainability, not to preemptively rebut a statute of limitations defense in each Class member's individual case.

[9]     Unilever's other supposed superiority concerns do not outweigh the benefits of resolving liability issues and causation central to each class member's claims. *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130–31 (2d Cir. 2013) ("Here, substituting a single class action for numerous trials in a matter involving substantial common legal issues and factual issues susceptible to generalized proof will achieve significant economies[.]'").

6295058 (E.D.N.Y. Aug. 12, 2020), a case involving joinder of <u>twenty-four</u> individuals to a wage and hour case. Def. Br. at 24-25. However, Second Circuit courts presume numerosity when there are forty or more potential class members, and certification is appropriate where "the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Novella v. Westchester County*, 661 F.3d 128, 143 (2d Cir. 2011). Plaintiffs easily satisfy this standard in seeking certification of a 717 member class.[10]

## I.    Plaintiffs Are Not Atypical Based on the Statute of Limitations

Unilever's anticipated statute of limitation defense is not the type of unique defense that would render Plaintiffs' atypical, particularly where Second Circuit courts hesitate to rigidly apply that rule. *In re Frontier Ins. Grp., Inc. Sec. Litig.*, 172 F.R.D. 31, 41 (E.D.N.Y. 1997).

Ms. Hossain's claims are timely based on COVID-19 tolling. Despite the finding in Unilever's primary case, *Uzoigwe v. Charter Commc'ns*, LLC, No. 23 CV 7383 (HG)(LB), 2024 WL 1311525, at *4 (E.D.N.Y. Mar. 18, 2024), most courts have determined that the executive orders tolled, rather than suspended, statutes of limitations on claims while in effect from March 2020 to November 3, 2020 (the "COVID Orders"). *Cain v. Cnty. of Niagara*, New York, No. 20-CV-1710S, 2022 WL 616795, at *8 (W.D.N.Y. Mar. 2, 2022) ("This Court agrees with most . . . courts . . . and holds that Executive Orders . . .  toll the statutes of limitation.").

Most critically, the New York appellate divisions unanimously agree that the COVID Orders tolled the statute of limitations. *E.g.*, *State v. Williams*, 224 A.D.3d 1356 (4th Dep't 2024) ("[T]he statute of limitations was tolled from March 20, 2020, at which time 289 days remained

---

[10]    Unilever's numerosity cases are distinguishable. *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014) (proposed class consisted of sophisticated institutional investors each with millions of dollars at stake); *In re Terrorist Attacks on Sept. 11, 2001*, No. 03MDL1570GBDSN, 2023 WL 4864375, at *2 (S.D.N.Y. July 31, 2023) (no numerosity because of streamlined procedure for adding large number of new plaintiffs in the MDL); *Perechu v. Flaum Appetizing Corp.*, No. 18-CV-1085-SJB, 2021 WL 1725629, at *1 (E.D.N.Y. Apr. 6, 2021) (denying certification of an *eight* person subclass).

10

in the limitations period, until November 3, 2020, and thereafter the 'statute of limitations began to run again, expiring on [August 19, 2021].'"); *McLaughlin v Snowlift*, Inc. 214 A.D.3d 720, 721 (2d Dep't 2023); *Roach v. Cornell Univ.*, 207 A.D.3d 931, 933 (3d Dep't 2022); *Murphy v. Harris*, 210 A.D.3d 410, 411 (1st Dep't 2022); *see also S. Bank Nat'l Ass'n as Tr. to Bank of Am., N.A. v. KeyBank, Nat'l Ass'n*, No. 20-CV-3577 (PKC), 2023 WL 2745210, at *12 (S.D.N.Y. Mar. 31, 2023) (applying COVID-19 tolling and stating "[i]f New York's courts would apply [COVID-19 tolling] to this case, then this Court is also bound to apply them.").

Here, based on COVID-19 tolling, even if Hossain's claims accrued on January 1, 2018, Ms. Hossain would still have had until August 17, 2021 to file her claims in this case (the three years provided by CPLR § 214-c.2 plus an additional 228 days). Thus, Ms. Hossain's claims are timely because she filed her claims on May 19, 2021, long before the latest date her claims could have expired based on Unilever's misguided argument that she suffered hair loss in early 2018. Ms. Hossain's claims are not barred by the statute of limitations and her claims are not atypical.

Tolling aside, Plaintiffs' claims would still be timely under a straightforward application of CPLR § 214-c.2's discovery rule. "[T]he three year period within which an action to recover. . . shall be computed from the date of discovery of the injury by the plaintiff [.]" CPLR § 214-c.2. "The precise timing of 'discovery of the injury' or 'discovery of the primary condition' is often difficult to ascertain[,]" including where "early symptoms . . . are too isolated or inconsequential." *In re New York City Asbestos Litig.*, 39 N.Y.S.3d 629, 633 (N.Y. Sup. Ct. 2016);

Here, both Plaintiffs began experiencing substantial hair loss within the years preceding the filing of their cases. Ms. Hossain began experiencing hair loss in mid-to-late 2018. Hossain Decl. at ¶ 7; Ex. 45, Hossain Depo., at 26:5-27:19 ("Q. . . . I am just trying to focus on when you started noticing hair falling out. A. It is around mid-2018."). Likewise, Ms. Candelaria claims arise

from substantial hair loss caused by TRESemmé in 2020 and 2021, which had no relation to any hair loss she may have suffered earlier. Candelaria Decl. at ¶ 5; Ex. 46, Candelaria Depo., at 26:5-27:19 ("Q: When did you observe hair coming out in chunks? . . . A. I would say around 2020, 2021."). As a result, their claims are timely and typical of the Class.

**J.      Ms. Candelaria Is Adequate to Serve as Class Representative[11]**

Ms. Candelaria has adequate knowledge of the claims to serve as Class Representative despite Unilever's claim otherwise. *See In re Pfizer Inc. Sec. Litig.* ("Pfizer II"), 282 F.R.D. 38, 51 (S.D.N.Y. 2012) ("Courts . . . deny class certification . . . in flagrant cases, where the putative class representatives display an alarming unfamiliarity with the suit [or] display an unwillingness to learn about the facts underlying their claims[.]"). Here, as demonstrated in her declaration, and by her deposition cross-examination testimony, Ms. Candelaria knows about the claims and the Class she seeks to represent. *See* Candelaria Decl. at ¶¶ 8-15; Lambert Decl., Ex. G, Candelaria Depo. at 216: 13-19 ("Q: What is your understanding of who the complaint was to be filed for? A: Myself and, I guess, other parties that have the same situation. Q: Okay. And by 'the same situation,' what do you mean generally? A: Hair loss.").[12]

**K.      The Court Should Consider All of Plaintiffs' Evidence**

The Court should not strike or disregard any exhibits Plaintiffs submit to support this motion. *See* Def. Br. at 30 (citing Addendum B). There is a split among Second Circuit courts as to whether a court can only consider admissible evidence on a class certification motion, with the majority of courts concluding that the Federal Rules of Evidence do not apply or are relaxed because class certification is a pretrial determination involving "limited findings of fact[.]" *See*

---

[11] Defendant does not substantively challenge Ms. Hossain's adequacy as a Class Representative.

[12] Ms. Candelaria has far more knowledge of this case than the proposed class representative in *In re Term Commodities Cotton Futures Litig.*, No. 12-CV-5126, 2022 WL 485005, at *7 (S.D.N.Y. Feb. 17, 2022).

*Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410, 2018 WL 1830811, at *17 (E.D.N.Y. Feb. 8, 2018), *report and recommendation adopted*, No. 13CV5410MKBRER, 2018 WL 1559766 (E.D.N.Y. Mar. 30, 2018) (collecting cases); *Flores v. Anjost Corp.*, 284 F.R.D. 112, 124 n.3 (S.D.N.Y. 2012) ("[M]ost district courts addressing this question have held that evidence need not be admissible under the Federal Rules of Evidence") (collecting cases).[13] Alternatively, for the reasons stated in Plaintiffs' Addendum B Response, the Court should reject Unilever's evidentiary objections.

## CONCLUSION

For the foregoing reasons, the Court should certify the issues identified in Plaintiffs' opening submission (Pltfs. Br.at 3, 19); appoint Plaintiffs as Class Representatives; and appoint S&F as Class Counsel.

Dated: August 19, 2024

**SQUITIERI & FEARON, LLP**

By: /s/ Stephen J. Fearon, Jr.
Stephen J. Fearon, Jr.
Paul Sweeny
305 Broadway, 7th Floor
New York, New York 10007
Tel: (212) 421-6492
Fax: (212) 421-6553
stephen@sfclasslaw.com
paul@sfclasslaw.com

---

[13] Unilever cites cases on the opposite side of the circuit split, including cases where plaintiffs attempted to establish unlawful employment practices through hearsay affidavits. *See Lanqing Lin v. Everyday Beauty Amore Inc.*, V-729 (BMC), 2019 WL 3037072 (E.D.N.Y. July 11, 2019).

## DESIGN DEFECT CLAIM

*Defendant's Issue 1: Does an allergic reaction give rise to a claim of design defect?*

| Defendant's View | Jurisdiction | Defendant's Authority | Plaintiffs' Response |
|---|---|---|---|
| **No, an allergic reaction does not give rise to a claim of design defect** | New York | "If the injuries were suffered by reason of the patron's allergy to the product or to its ingredients, no right of action exists in favor of the patron on any theory of negligence in manufacture, distribution or use." *Kaempfe v. Lehn & Fink Prod. Corp.*, 21 A.D.2d 197, 200 (1st Dep't 1964), *aff'd*, 20 N.Y.2d 818 (1967). | This supposed variation of state law is immaterial to issue certification. Unilever improperly attempts to expand the "idiosyncratic plaintiff" defense into a categorical bar to liability for design defect. However, where a product poses a common allergy risk, a design defect claim may lie. *See Candelaria v. Conopco, Inc.,* No. 21CV6760FBTAM, 2023 WL 2266047, at *5 (E.D.N.Y. Feb. 28, 2023) ("However, to |
| | Illinois | "However, a consumer who suffers an allergic reaction to a product without any identifiable defect may not generally invoke strict liable to recover from a manufacturer or seller." *Smith v. Phoenix Seating Sys., LLC*, 894 F. Supp. 2d 1088, 1093 (S.D. Ill. 2012) (cleaned up). | whatever extent Candelaria's claim does rely on DMDM's status as an allergen, the Complaint fulfilled this requirement by including the FDA's classification of DMDM 'as one of the top allergens 'that cause the most allergic reactions from the use of cosmetic products.'"); *Presbrey v. Gillette Co.*, 61 Ill.Dec. 816, 435 N.E.2d 513, 519–20 (1982) (Concerning allergic reactions to products, "[t]he unusual susceptibility of the consumer is generally recognized as a complete defense where the manufacturer did not know or had no reason to know that a <u>very few users</u> of his product might be injured," as, "[t]he proximate cause of injury is attributed to the idiosyncrasy or allergy of |

| | | | the plaintiff and not to a failure to warn of a defect in the product."). |
|---|---|---|---|
| | | | Here, Plaintiffs will prove that Unilever had hundreds of reports of people losing their hair after using Unilever products containing these ingredients, and Unilever had previously settled hundreds of injury claims from people who lost their hair after using Unilever's DMDM-containing products. The evidence will show that this was a pervasive, not idiosyncratic, problem which caused Unilever to reformulate its products, albeit too late for Plaintiffs and the Class. As a result, this supposed variation of state law does not show that individual issues of law will predominate over the issues Plaintiffs seek to certify. Quite the opposite, the parties will offer competing, generalized proof to prove and disprove whether reactions to DMDM, MCI, and/or MI are common versus idiosyncratic, supporting issue certification. |
| **Yes, an allergic reaction may give rise to a claim of design defect** | Florida | "Plaintiffs assert that the Products are defective in design because they contain ingredients […] which are known to cause allergic reactions and dermatitis. This is sufficient to allege a design defect." *In re Monat Hair Care Prod. Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 18-MD-02841, 2019 WL 5423457, at *4 (S.D. Fla. Oct. 23, 2019) (cleaned up). | This supposed variation of state law favors issue certification. |

| | | | |
|---|---|---|---|
| **Maybe. Only when the prominence of allergy is beyond the reasonable contemplation of ordinary consumer** | Wisconsin | "We conclude that in order to prove that an allergy-causing product is unreasonably dangerous, a plaintiff must prove the following elements: (1) the product contains an ingredient that can cause allergic reactions in a substantial number of consumers; and (2) the ordinary consumer does not know that the ingredient can cause allergic reactions in a substantial number of consumers." Green v. Smith & Nephew AHP, Inc., 2001 WI 109, ¶ 83 (2001) | This supposed variation of state law favors issue certification given that Plaintiffs will use generalized proof applicable to the Class to prove that reactions to DMDM, MCI, and/or MI are common. |

*Unilever's Issue 2: Who bears the burden of proving a design defect?*

| Unilever's View | Jurisdiction | Unilever's Authority | Plaintiffs' Response |
|---|---|---|---|
| **Plaintiff** | New Jersey | "In a design defect product liability case, the plaintiff bears the burden of proof." *Cavanaugh v. Skil Corp.*, 331 N.J. Super. 134, 161 (App. Div. 1999), | This supposed variation of state law favors issue certification. |
| | Colorado | "[T]his court has chosen to follow the Restatement (Second) of Torts § 402A in requiring a plaintiff to prove that a product is in a | |

| | | defective condition unreasonably dangerous.<br>Because the determination of whether a product is unreasonably dangerous is made through a risk-benefit analysis, we find that the plaintiffs also bear the burden of proving that the risks outweigh the benefits of the design." *Armentrout v. FMC Corp.*, 842 P.2d 175, 183 (Colo. 1992) (cleaned up). | |
| **Defendant** | California | "[W]e conclude that once the plaintiff makes a prima facie showing that the injury was proximately caused by the product's design, the burden should appropriately shift to the defendant to prove, in light of the relevant factors, that the product is not defective." *Barker v. Lull Eng'g Co.*, 20 Cal. 3d 413, 431, 573 P.2d 443, 455 (1978); *see also Williams v. J-M Mfg. Co., Inc.*, 102 Cal. App. 5th 250 (2024). | This supposed variation of state law is immaterial for issue certification. Even though Plaintiffs have the burden to establish every element of their design defect claim here, Unilever will have a full and fair opportunity to prove that TRESemmé containing DMDM, MCI, and/or MI was not defective, just as in a burden-shifting jurisdiction (which only include Alaka and California, as relevant to this proposed issue certification class, in the first instance). |

## Failure to Warn Claim

*Unilever's Issue 1:* Does a manufacturer have a duty to warn about idiosyncratic allergies?

| Unilever's View | Jurisdiction | Unilever's Authority | Plaintiffs' Response |
|---|---|---|---|
| **No, manufacturers have no duty to warn** | | "There is significant authority to the effect that there is no duty to warn of the possibility of rare, idiosyncratic, hypersensitive, or | This supposed variation of state law is immaterial to issue certification. Unilever improperly attempts to expand the "idiosyncratic plaintiff" defense into a |

| about idiosyncratic allergies. | | unusual reactions to an otherwise safe and useful product." *Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 466 (2003). | categorical bar to liability for a failure to warn claim. Unilever cites no cases showing a manufacturer cannot be liable for a failure to warn claim where it fails to warn consumers of a common allergy risk.<br><br>Here, Plaintiffs will prove that allergies to TRESemmé containing DMDM, MCI, and MI were common, not idiosyncratic. As a result, this supposed rule of law does not show that individual issues of law will predominate over the issues Plaintiffs seek to certify. Quite the opposite, the parties will offer competing, generalized proof to prove and disprove whether reactions to DMDM, MCI, and/or MI are common versus idiosyncratic, thus supporting issue certification. |
|---|---|---|---|
| | California | | |
| | Illinois | "The rule barring the idiosyncratic consumer from recovery generally applies whether suit is brought under strict liability, breach of warranty, or negligence. Regardless of the plaintiff's theory, the manufacturer owes no prior duty to warn of a risk that is remotely possible to the unknown few in the population." *Presbrey v. Gillette Co.*, 105 Ill. App. 3d 1082, 1092 (1982); *see also Bolden v. Beiersdorf, Inc.*, No. 20-CV-150-DWD, 2022 WL 867959 (S.D. Ill. Mar. 23, 2022). | |
| | Kentucky | "We do not believe Kentucky would depart from the general rule that a plaintiff's unusual or rare idiosyncratic sensitivity does not provide a basis for recovery under any theory of product liability." *Gordon v. Proctor & Gamble Distrib. Co.*, 789 F. Supp. 1384, 1385 (W.D. Ky. 1992); *see also Hardy v. Royce Lab'ys, Inc.*, No. CIV.A. 3:97-CV-740H, 2000 WL 33960115 (W.D. Ky. Jan. 3, 2000). | |
| | | "We have not yet reached the point where the manufacturer is under the absolute duty of | |

| | State | | |
|---|---|---|---|
| | New York | making a product, useful to many, free from all possible harm to each and every individual; nor the point where the manufacturer is to be held under an absolute duty of giving special warning against a remote possibility of harm due to an unusual allergic reaction from use by a miniscule percentage of the potential customers. "Every substance, including food which is daily consumed by the public, occasionally becomes anathema to him peculiarly allergic to it. To require insurability against such an happenstance would weaken the structure of common sense, as well as present an unreasonable burden on the channels of trade." *Kaempfe v. Lehn & Fink Prod. Corp.*, 21 A.D.2d 197, 200 (1st Dep't 1964), *aff'd*, 20 N.Y.2d 818 (1967).unforeseeable | |
| **Potentially yes.** | Kansas | "The court instructed the jury that if appellant knew or should have known that a group of persons would suffer rare side effects, appellant had a duty to warn the medical profession of the susceptibility of such a hypersensitive or idiosyncratic group […] We believe the court's instruction was an accurate | This supposed variation of law is immaterial. Here, Plaintiffs will prove that allergies to TRESemmé containing DMDM, MCI, and MI were common, not idiosyncratic. As a result, this variation of law does not show that individual issues of law will predominate over the issues Plaintiffs seek to certify. Quite the opposite, the parties will offer competing, generalized proof to prove and disprove whether reactions to DMDM, |

| | | statement of the law." *Sterling Drug, Inc. v. Cornish*, 370 F.2d 82, 84 (8th Cir. 1966); *see also Wooderson v. Ortho Pharm. Corp.*, 235 Kan. 387, 681 P.2d 1038 (1984). | MCI, and/or MI are common versus idiosyncratic supports issue certification. |
|---|---|---|---|

*Unilever's Issue 2:* Who has the burden of proof regarding idiosyncratic plaintiff defense?

| Unilever's View | Jurisdiction | Unilever's Authority | Plaintiffs' Response |
|---|---|---|---|
| **Plaintiff** | New York | "[T]he plaintiff, as the basis for imposing upon defendant a special duty of warning, was bound at the very least to show (1) that she was one of a substantial number or of an identifiable class of persons who were allergic to the defendant's product, and (2) that defendant knew, or with reasonable diligence should have known of the existence of such number or class of persons." *Kaempfe v. Lehn & Fink Prod. Corp.*, 21 A.D.2d 197, 200 (1st Dep't 1964), *aff'd*, 20 N.Y.2d 818 (1967). | This supposed variation of state law is immaterial to issue certification. Unilever's supposed rule of law does not concern the burden of proof regarding idiosyncratic plaintiff defense but, instead, concerns burden of proof to prove a failure to warn claim generally. Here, Plaintiffs will prove that allergies to TRESemmé containing DMDM, MCI, and MI were common, not idiosyncratic, using generalized proof, thus supporting issue certification. *See Candelaria v. Conopco, Inc.,* No. 21CV6760FBTAM, 2023 WL 2266047, at *5 (E.D.N.Y. Feb. 28, 2023) ("However, to whatever extent Candelaria's claim does rely on DMDM's status as an allergen, the Complaint fulfilled this requirement by including the FDA's classification of DMDM 'as one of the top allergens 'that cause the most allergic reactions from the use of cosmetic products.'"). |
| | Colorado | "[T]he plaintiff has the burden of establishing that the product is injurious to a significant number' of the population." *Howard v. Avon Prod., Inc.*, 155 Colo. 444, 452 (1964) (cleaned up). | |

| | | | |
|---|---|---|---|
| **Hybrid** | Oregon | "[C]ourts construing that 'defense' have recognized it involves a two-step process. First, the defendant has the burden of producing evidence that the plaintiff's injury from using the defendant's product results from an allergic response. Second, after the defendant has satisfied that initial burden of production, the plaintiff bears the burden of proving that his or her reaction, rather than being idiosyncratic, could be experienced by an identifiable class of consumers." *Jones v. Gen. Motors Corp.*, 139 Or. App. 244, 263 (1996) (cleaned up), *aff'd*, 325 Or. 404 (1997). | This supposed variation of state law is immaterial to issue certification. Plaintiffs will prove that will prove that allergies to TRESemmé containing DMDM, MCI, and MI were common, not idiosyncratic, using generalized proof, thus supporting issue certification. *See Candelaria v. Conopco, Inc.,* No. 21CV6760FBTAM, 2023 WL 2266047, at *5 (E.D.N.Y. Feb. 28, 2023) ("However, to whatever extent Candelaria's claim does rely on DMDM's status as an allergen, the Complaint fulfilled this requirement by including the FDA's classification of DMDM 'as one of the top allergens 'that cause the most allergic reactions from the use of cosmetic products.'"). |
| **Defendant** | Washington D.C. | "In addition, where a defendant asserts that harm from a product was not foreseeable because it resulted from an allergy unique to the plaintiff, the burden of showing the existence of an allergy may be upon the defendant in a strict liability case." *Payne v. Soft Sheen Prod., Inc.*, 486 A.2d 712, 722 (D.C. 1985). | This supposed variation of state law is immaterial to issue certification. Plaintiffs will prove that will prove that allergies to TRESemmé containing DMDM, MCI, and MI were common, not idiosyncratic, using generalized proof, thus supporting issue certification. *See Candelaria v. Conopco, Inc.,* No. 21CV6760FBTAM, 2023 WL 2266047, at *5 (E.D.N.Y. Feb. 28, 2023) ("However, to whatever extent Candelaria's claim does rely on DMDM's status as an allergen, the Complaint fulfilled this requirement by including the FDA's classification of DMDM 'as one of the top allergens 'that cause the most allergic |

| | | reactions from the use of cosmetic products.'"). |
|---|---|---|

## Statute of Limitations

*Unilever's Issue 1:* When does the discovery rule apply?

| Unilever's Rule | Jurisdiction | Unilever's Authority | Plaintiffs' Response |
|---|---|---|---|
| **When plaintiff knows or reasonably should have known that (a) they have been injured, and (b) the injury was wrongfully caused** | California | "If applicable, the discovery rule delays the accrual date until the plaintiff suspects or should suspect that her injury was caused by wrongdoing." *Haugh v. Depuy-Motech, Inc.*, 14 F. App'x 883, 885 (9th Cir. 2001) (cleaned up) | At the outset, "[c]ourts have been nearly unanimous, . . . in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintiffs, does not preclude certification of a class action[.]" *In re Energy Sys. Equip. Leasing Sec. Litig.*, 642 F. Supp. 718, 752–53 (E.D.N.Y. 1986).

Beyond that consideration, state law variations regarding statute of limitations are immaterial. The statute of limitations is an affirmative defense that Unilever may establish in future individual Class member trials. Plaintiffs submit the Class Member Spreadsheet (Ex. 2), which |
| | Illinois | "In applying the two-year statute of limitations set forth in section 13–213(d) and similar statutes of limitations, Illinois courts have adopted a discovery rule, which serves to postpone the commencement of the relevant statute of limitations until the injured plaintiff knows or reasonably should have known that he has been injured and that his injury was wrongfully caused." | |

| | | | |
|---|---|---|---|
| | | *Cochran v. Smith & Nephew, Inc.*, 260 F. Supp. 3d 979, 982–83 (C.D. Ill. 2017) (cleaned up) | includes information about each Class member's use of, and injury from, TREsemmé, to establish numerosity and ascertainability, not to preemptively rebut a statute of limitations defense to each Class member's individual claims. |
| **When plaintiff has knowledge or sufficient notice that (a) they have suffered harm, and (b) that the defendant has caused it** | Indiana | "The two-year statute of limitations begins to run from the date the plaintiff knew or should have discovered that she suffered an injury or impingement, and that it was caused by the product or act of another." *Degussa Corp. v. Mullens*, 744 N.E.2d 407, 410 (Ind. 2001) (cleaned up) | |
| | Massachusetts | "'[U]nder [the] discovery rule, a claim accrues and the statute of limitations clock commences when a plaintiff knows, or reasonably should have known, that she has been harmed or may have been harmed by the defendant's conduct. A plaintiff thus needs knowledge or sufficient notice of both: 1) the fact that she has suffered harm; and 2) that the defendant caused the harm." *Rosbeck v. Corin Grp., PLC*, 140 F. Supp. 3d 197, 211 (D. Mass. 2015) (cleaned up). | |

| | | | |
|---|---|---|---|
| | Oklahoma | "Oklahoma follows the discovery rule, under which the statute [of limitations in product liability cases] does not begin to run until the plaintiff knows, or as a reasonably prudent person should know, that he has the condition for which his action is brought and that the defendant caused it. However, a plaintiff need not know the extent of injury or know that it is permanent for the limitations period to commence." *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (cleaned up). | |
| **When plaintiff discovers or, through exercise of reasonable care and diligence, should discover, the nature and/or symptoms of their injury** | Ohio | "Generally, the discovery rule holds that a limitations period does not begin to run until the plaintiff discovers (or reasonably should have discovered) the injury giving rise to the claim." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 45 F. Supp. 3d 706, 721–22 (N.D. Ohio 2014) (cleaned up). | |
| | | "The discovery rule is a judicially constructed test | |

| | Texas | which is used to determine when a plaintiff's cause of action accrued. When applied, the rule operates to toll the running of the period of limitations until the time that the plaintiff discovers, or through the exercise of reasonable care and diligence should discover, the nature of his injury." *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990) (cleaned up) | |
|---|---|---|---|
| **When plaintiff discovers manifestations or symptoms of harm; knowledge of cause is unnecessary** | New York | "[I]n enacting a new 'discovery' rule for the commencement of toxic torts, the Legislature had in mind only the discovery of the manifestations or symptoms of the latent disease that the harmful substance produced." *Matter of New York Cnty. DES Litig.*, 89 N.Y.2d 506, 514 (1997) (emphasis added). The New York Court of Appeals has "rejected the contention that the plaintiff must also discover that the injury has a nonbiological | |

| | | cause." *Whitney v. Quaker Chem. Corp.*, 90 N.Y.2d 845, 847 (1997). Stated simply, "the three year limitations period runs from the date when plaintiff first noticed symptoms, rather than when a physician first diagnosed those symptoms." *Hossain v. Unilever United States, Inc.*, No. 21CV2833FBTAM, 2023 WL 4405654, at *1 (E.D.N.Y. July 7, 2023) (cleaned up). | |

**Defendant's Objections to Evidence Attached to the Certification of Stephen J. Fearon, Jr.**

| Exhibit No(s) | Defendant's Description | Defendant's Basis for Exclusion | Plaintiffs' Response |
|---|---|---|---|
| 2 | Excel spreadsheet prepared by counsel for purposes of this litigation advancing hearsay assertions concerning putative class members' history of product use and purported injuries | ***Hearsay (FRE 802)***<br><br>*See Cellco P'ship v. City of Rochester*, No. 6:19-CV-06583 EAW, 2024 WL 805640, at *4 (W.D.N.Y. Feb. 27, 2024) (spreadsheet prepared for litigation was "inadmissible hearsay"); *Shutterfly Lifetouch LLC v. Rosa*, No. 3:21-CV-00666 (VDO), 2024 WL 757080, at *5 (D. Conn. Feb. 23, 2024) (same). | Plaintiffs are not submitting the Class Member Spreadsheet (Ex. 2) to prove the truth of their claims but, rather submit the Class Member Spreadsheet to support numerosity and ascertainability findings on this motion for class certification. In fact, Unilever requested this information and the Court suggested it be provided to Unilever following a discovery conference. *See* Minute Entry and Order, dated Feb. 1, 2024 ("Discussion held regarding case status and discovery. The parties are respectfully directed to move forward with discovery in accordance with the accommodations agreed upon on the record, including Plaintiff's production of partially anonymized data regarding the identified putative class (*see* ECF No. 31, at p. 5 (discussing excel spreadsheet regarding identified putative class members))[.]"). |
| 3, 4, 5 | Expert reports unsworn by authors | ***Hearsay (FRE 802)***<br><br>*See Murphy v. Metro. Transp. Auth.*, No. 05 CIV. 376LMM, 2009 WL 1044604, at *5 (S.D.N.Y. Apr. 14, 2009) ("An expert's report (*id.* 6) is hearsay | Defendant fails to cite a case requiring sworn expert reports on a motion for class certification. However, Plaintiffs can resubmit their expert reports in the form of a declaration if needed (Exs. 3-5). *New Old Music Grp., Inc. v. Gottwald*, 122 F. Supp. 3d 78, 86 n.5 |

| | | | |
|---|---|---|---|
| | | and not admissible."); *Reza v. Khatun*, No. 09-CV-233 (MKB), 2017 WL 3172816, at *2 (E.D.N.Y. July 25, 2017) ("courts in this Circuit have uniformly held that unsworn expert reports do not satisfy the admissibility requirements of Fed. R. Civ. P. 56(e), and cannot be used on a motion for summary judgment without additional affidavit support") (cleaned up). | (S.D.N.Y. 2015) (considering expert reports on a summary judgment motion because the defendants "have since filed declarations from their experts verifying their reports under penalty of perjury") |
| 14, 15, 16 | Documents purporting to reflects complaints from consumers, including reviews printed off of the internet, without any evidence that Unilever received or saw any such complaints | ***Hearsay (FRE 802); Authenticity (FRE 901)***<br><br>*See Novak v. Tucows, Inc.*, No. 06–CV–1909, 2007 WL 922306, at *5 (E.D.N.Y. Mar. 26, 2007) ("Where postings from internet websites are not statements made by declarants testifying at trial and are offered to prove the truth of the matter asserted, such postings generally constitute hearsay under Fed.R.Evid. 801.") (citing *United States v. Jackson*, 208 F.3d 633, 638 (7th Cir.2000)); *Manchanda v. Educ. Credit Mgmt. Corp.*, No. 19 CIV. 5121 (LGS), 2022 WL 137885, at *5 (S.D.N.Y. Jan. 14, 2022) ("Newspaper articles offered for the truth of the statements asserted are inadmissible hearsay."); *Holmes v. Gaynor*, 313 F. Supp. 2d 345, 358 n.1 (S.D.N.Y. 2004) (same); *RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*, No. 18-CV-6449 (JS)(ARL), 2023 WL 2403258, at *8 (E.D.N.Y. Mar. 7, 2023) ("customer complaint | Consumer complaints of similar injuries made directly to Unilever or monitored by Unilever through its third-party contractor are admissible to establish Unilever's actual and constructive notice, defect and causation. *See In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 9463183, at *1 (S.D.N.Y. Dec. 28, 2015). |

| | | | |
|---|---|---|---|
| | | contained in the Instagram Post is hearsay if offered to prove the truth of the matter asserted"). | |
| 12, 13, 25 | Spreadsheets with purported complaints produced by Unilever and a third party, and a letter allegedly directed to Unilever, to the extent Plaintiff is seeking use those documents to prove the truth of the matters asserted therein. | ***Hearsay (FRE 802)***<br><br>*See RVC Floor, supra.* | Consumer complaints of similar injuries made directly to Unilever or monitored by Unilever through its third-party contractor admissible to establish Unilever's actual and constructive notice, defect and causation (Fearon Decl., Exs. 12-16, 25). *See In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2015 WL 9463183, at *1 (S.D.N.Y. Dec. 28, 2015). |
| 21, 22, 23 | Pleadings from *Reid* matter | ***Hearsay (FRE 802)***<br><br>*See Puglisi v. Town of Hempstead Sanitary Dist. No. 2*, No. 11-CV-445 (PKC), 2014 WL 12843521, at *2 (E.D.N.Y. Jan. 27, 2014) (excluding pleadings from other matters because they are hearsay and prejudicial since mere allegations "are dispositive of nothing") (citing authority, cleaned up).<br><br>***Relevance***<br><br>*Reid* is irrelevant. Magistrate Judge Merkl has already rejected Plaintiff's attempt to secure discovery pertaining to the *Reid* settlement, precisely because it is irrelevant. As the Seventh Circuit's decision affirming the settlement makes plain, *Reid* concerned a different product (a Suave® 30-day | The *Reid* matter involved a Unilever hair care product that indisputably contained DMDM and was alleged to cause hundreds of injuries. Precise causation was never adjudicated due to settlement, but the litigants alleged that the Unilever product contained DMDM and that thioglycolic acid alone or in combination with other ingredients caused their injuries. Judge Merkl made no findings regarding relevance of *Reid* discovery but, instead, denied Ms. Hossain access to the *Reid* discovery without prejudice due to privacy concerns of the *Reid* class members.<br><br>Consumer complaints of similar injuries made directly to Unilever or monitored by Unilever through its third-party contractor, as well as the *Reid* filings, are admissible to establish Unilever's actual and constructive notice, defect and causation (Fearon Decl., Exs. 12-16, 25). *See In re: Gen. Motors LLC Ignition Switch* |

| | | | |
|---|---|---|---|
| | | smoothing kit vs. a TRESemmé shampoo) that, unlike here, was recalled, and allegations concerning different injuries (dissolving and burning hair shortly after using kit vs. irritation and hair loss months or years after using shampoo) caused by a different ingredient (thioglycolic acid vs. DMDM hydantoin). *See Martin v. Reid*, 818 F.3d 302, 304-05 (7th Cir. 2016) (complaint alleged that kit's "active ingredient, ***thioglycolic acid***, is extremely corrosive, and if left on long enough, can dissolve the hair and burn the scalp.") (emphasis added).To that end, Plaintiff submits with her motion only the original *Reid* complaint, failing to disclose that it was later amended to specify the allegedly offending ingredient. (Lambert Decl., Ex. V at ¶¶ 1, 54-55.) | *Litig.*, No. 14-MD-2543 (JMF), 2015 WL 9463183, at *1 (S.D.N.Y. Dec. 28, 2015). |
| 24, 26, 27, 28, 29, 34, 36 | Articles and other documents printed off the internet | ***Hearsay (FRE 802)***<br><br>*See Novak, Manchanda, Holmes, supra.* | The content of the cited articles and documents were corroborated by deposition witnesses and are otherwise reliable.<br><br>Ex. 24, Campaign for Safe Cosmetics Report. *See* Barone Depo. at 151:7-21; 168:4-169:4 ("Q Have you seen this article or this report before? A I'm not quite sure it was this specific report, but I see it -- I've seen similar -- something where there was an excerpt of that."). |

| | | | Ex. 26, Johnson & Johnson Article. *See* Fearon Decl., Ex.11, DeKoven Depo. at 108:21-109:3 ("Q: Did you come, for example, to learn that Johnson & Johnson had removed or pledged to remove formaldehyde releasers from its products sometime around 2015, 2016 or so? MR. LAMBERT: Objection. A I was.").<br><br>Ex. 27, Revlon Article. Fearon Cert., Ex. 11. *See* Fearon Decl., Ex. 11, DeKoven Depo. at 109:4-21 (Q All right. Did you also learn that Revlon had pledged to remove formaldehyde releasers from its products, its personal care products, right around that time as well? MR. LAMBERT: Objection. A Yes. I was aware of that and published that.").<br><br>Ex. 28, No More Tears Article (discussing Revlon and Colgate-Palmolive's removal of DMDM). *See* Fearon Cert, Ex. 6, Barone Depo. at 246:21-252:22 ("Q: By 2015, were you aware that Colgate Palmolive had pledged to eliminate formaldehyde donors from its personal care products? . . . A: Yeah. Or thereabouts. Yes.") (citing Ex. 28).<br><br>Ex. 29, Whole Foods Banned Ingredient List. *See* Barone Depo. at 162:3-9 (acknowledging "Whole foods has a list of ingredients that they do not allow in the products marketing in their stores."). |
|---|---|---|---|

| | | | |
|---|---|---|---|
| | | | Ex. 34, Front and Rear Labels were produced by Unilever during discovery as HOSSAIN_UL_00000323-24.<br><br>Ex. 36, Candelaria Walmart.com Purchase Records. Fearon Reply Decl., Ex. 45, Candelaria Depo. at 135:22-138:21; 140:25-141:15; 142:9-143:8 (Ms. Candelaria confirming purchases). |