UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ELIZABETH CANDELARIA,

*Plaintiff,*

– against –

CONOPCO, INC., *d/b/a UNILEVER HOME & PERSONAL CARE USA,*

*Defendant.*

**MEMORANDUM & ORDER**
21-cv-06760 (NCM) (TAM)

---

**NATASHA C. MERLE**, United States District Judge:

Before the Court is plaintiff Elizabeth Candelaria's motion for class certification pursuant to Federal Rule of Civil Procedure 23(c)(4).[1] For the reasons stated below, plaintiff's motion is DENIED.

### BACKGROUND[2]

Defendant Conopco, Inc., doing business as Unilever Home & Personal Care USA, is a New York corporation which manufactures, designs, markets, and distributes TRESemmé shampoos and conditioners. Compl. ¶ 14. Until July 2022, defendant

---

[1]     The Court hereinafter refers to plaintiff's Memorandum of Law in Support of Motion for Class Certification, ECF No. 65-1, as the "Motion"; defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification, ECF No. 66, as the "Opposition"; and plaintiff's Reply Memorandum of Law in Support of Motion for Class Certification, ECF No. 67, as the "Reply." Unless otherwise indicated, all citations to docket filings refer to the redacted and publicly available filings.

[2]     The following facts are drawn from the complaint, and the declarations, exhibits, and affidavits submitted in connection with, and in opposition to, plaintiff's Motion. *See Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 414 (E.D.N.Y. 2009). "When considering a motion for class certification, the court must accept the allegations in the complaint as true." *Dziennik v. Sealift, Inc.*, No. 05-cv-04659, 2007 WL 1580080, at *3 (E.D.N.Y. May 29, 2007).

manufactured TRESemmé hair products that contained potentially dangerous preservatives, including DMDM hydantoin ("DMDM"), methychloroisothiazolinone ("MCI"), and methylisothiazolinone ("MI") (collectively, the "Chemicals").[3] *See* Compl. ¶ 1; Fearson Decl. Ex. 18 at 6,[4] ECF No. 65-20. The Chemicals can be dangerous because they are allergens and irritants and have been scientifically shown to cause dermatitis and hair loss. *See* Compl. ¶ 2; Fearson Decl. Ex. 4 at 3–4, ECF No. 65-6. Despite long-standing research into the potential risks of the Chemicals, defendant used the Chemicals in its hair products and never warned consumers "about the dangers of and possible reactions" to TRESemmé products containing the Chemicals, "including the risk of hair loss, dermatitis, and scalp irritation." Compl. ¶ 44.

In 2012, consumers filed at least three putative class actions alleging that one of defendant's hair treatment products "caused significant hair loss upon proper application." Compl. ¶ 46. One of the core allegations raised during the litigation was that defendant's hair treatment contained DMDM. Compl. ¶ 47. Thus, plaintiff alleges that

---

[3]    Defendant points out that plaintiff's complaint does not mention either MCI or MI, and argues that plaintiff attempts to improperly "unilaterally amend her [c]omplaint to inject" MCI or MI into the case via her class certification briefing. Mot. 27 n.11. Defendant further argues that the Court "should strike or disregard any claim/reference concerning" those chemicals for purposes of plaintiff's Motion. Mot. 27 n.11. While defendant is correct that plaintiff cannot unilaterally amend her complaint via her briefing, it is also true that "[a] motion for class certification may be, and generally is, supported by evidence beyond the allegations set forth in a complaint." *Tutor Perini Bldg. Corp. v. N.Y.C. Reg. Ctr., LLC*, 525 F. Supp. 3d 482, 503 n.9 (S.D.N.Y. 2021). Moreover, because consideration of MCI or MI does not impact the Court's analysis, the Court considers those allegations solely for purposes of the present Motion. *See Levy v. Lawrence Gardens Apartments Del, LLC*, No. 21-cv-01415, 2023 WL 2667045, at *1 (E.D.N.Y. Mar. 28, 2023) (considering allegations raised for the first time in opposition to motion to dismiss "in the interest of judicial economy, and because [the allegations] do[] not change the outcome of [the] [m]otion").

[4]    Throughout this Opinion, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

defendant "has been on notice of the dangers of DMDM in hair care products," since the lawsuits were filed in 2012. Compl. ¶ 49. In addition, since at least 2012, defendant has received hundreds of reports from its customers complaining of losing their hair after using TRESemmé products. Compl. ¶¶ 45, 50. Eventually, in November 2019, defendant began transitioning to another preservative and reformulated TRESemmé to remove the Chemicals and replace them with a safer sodium-benzoate preservative formula. *See* Fearson Decl. Ex. 17 at 9, ECF No. 65-19; Fearson Decl. Ex. 7 at 21:14–22:10, ECF No. 65-9.

Plaintiff Elizabeth Candelaria[5] began experiencing hair loss as early as 2016. Lambert Decl. Ex. G at 24:21–25:4 ("Pl.'s Tr."), ECF No. 66-8. Around that same time, plaintiff purchased and used TRESemmé hair products. Pl.'s Tr. 24:23–25:2; *see also* Compl. ¶ 54. She consulted with a medical professional, who advised her that her hair loss could have been caused by TRESemmé. Pl.'s Tr. 29:23–30:11. Plaintiff suffered

---

[5]    In a separate case before this Court, Zebin Hossain advances substantially similar claims against defendant. *See Hossain v. Unilever United States, Inc.*, No. 21-cv-02833 (E.D.N.Y. filed May 19, 2021). The parties coordinated discovery between the two actions, and plaintiff's counsel seeks to propose both Ms. Hossain and Ms. Candelaria as class representatives. *See* Mot. 8 n.1. Additionally, "Ms. Candelaria and Ms. Hossain are collectively referred to as [p]laintiffs" throughout plaintiff's class certification briefing. *See* Mot. 8 n.1. Defendant argues that such a request again amounts to improper amendment through briefing because "[t]here is only one named [p]laintiff in the [c]omplaint: Ms. Candelaria. Ms. Hossain is not a named plaintiff." Opp'n 12. The Court could construe plaintiff's counsel's request as a motion to amend the complaint. *See Zucker v. Porteck Glob. Servs., Inc.*, No. 13-cv-02674, 2015 WL 6442414, at *11 (E.D.N.Y. Oct. 23, 2015) (noting that the plaintiff's motion to add an "[a]dditional [c]lass [r]epresentative [wa]s essentially a motion to amend the [a]mended [c]omplaint to add . . . a co-plaintiff and additional class representative"). However, there is no need for the Court to do so because of the deficiencies in plaintiff's Motion as discussed *infra*. That is, whether the Court considers Ms. Hossain as a proposed class representative does not alter the Court's conclusion that issue certification would not materially advance the litigation, or that certification is not the superior method of fairly and efficiently adjudicating the controversy. Accordingly, the Court considers Elizabeth Candelaria as the only "plaintiff" for purposes of this Motion.

"increasingly severe reaction[s] to TRESemmé Products," culminating in her "hair falling out in clumps" in around 2020. Compl. ¶¶ 54–55.

On December 6, 2021, plaintiff filed the instant putative class action, bringing claims on behalf of herself and others similarly situated for product liability under theories of design defect and failure to warn, as well as a claim for negligence. *See generally* Compl. Following denial of defendant's motion to dismiss, plaintiff filed the instant motion for class certification, seeking to certify an issue-class pursuant to Federal Rule of Civil Procedure 23(c)(4). *See generally* Mot. Defendant opposes plaintiff's motion. *See generally* Opp'n.

## LEGAL STANDARD

Motions for class certification are governed by Federal Rule of Civil Procedure 23. Fed. R. Civ. P. 23; *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).[6] "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).

Pursuant to Rule 23(a), the party seeking certification must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *see also Wal-Mart Stores*, 564 U.S. at 345. In the Second Circuit there is an additional implied requirement of ascertainability, which requires that a class be

---

[6] Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

sufficiently definite so that the court can determine whether a particular individual is a member. *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015).

Additionally, the proposed class must satisfy at least one of the requirements of Rule 23(b). *See Wal-Mart Stores*, 564 U.S. at 345. As relevant here, Rule 23(b)(3) permits a class to be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action would be superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* at 346 n.2.

However, where the action or claims as a whole do not satisfy Rule 23(b)(3), a court may certify a class action with respect to particular issues pursuant to Rule 23(c)(4). Fed. R. Civ. P. 23(c)(4). This permits a district court, "in appropriate cases to isolate the common issues . . . and proceed with class treatment of th[o]se particular issues." *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006). District courts are therefore authorized to "certify a class on [] designated issue[s] regardless of whether the claim as a whole" satisfies Rule 23(b)(3)'s predominance requirement. *Id.* at 230; *see also Brennan v. City of New York*, No. 19-cv-02054, 2023 WL 5672590, at *15 (E.D.N.Y. Sept. 1, 2023).

A party seeking to certify an issues-only class must demonstrate that the issue class to be certified complies with the requirements of Rules 23(a) and (b). *See Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 239 (S.D.N.Y. 2010) ("For particular issues to be certified pursuant to Rule 23(c)(4), the requirements of Rules 23(a) and (b) must be satisfied only with respect to those issues."); *see also Sullivan v. Saint-Gobain Performance Plastics Corp.*, No. 16-cv-00125, 2019 WL 8272995, at *10 (D. Vt. Aug. 23, 2019) ("Rule 23(c)(4) permits the court to identify specific issues for class certification.

5

The court must still determine whether the requirements of F[ed]. R. Civ. P. 23(b)(3) are met.").

A court may not "inquire into the merits of a suit" on a motion for class certification; however, "the court may go beyond the pleadings and consider the range of proof necessary to support class certification." *Lewis v. Nat'l Fin. Sys., Inc.*, No. 06-cv-01308, 2007 WL 2455130, at *4 (E.D.N.Y. Aug. 23, 2007). Specifically, a court "may examine not only the pleadings[,] but also the evidentiary record, including any affidavits and results of discovery." *Guadagna v. Zucker*, 332 F.R.D. 86, 91 (E.D.N.Y. 2019). A party seeking class certification must satisfy through evidentiary proof that Rule 23's requirements have been met. *See Shariar v. Smith & Wollensky Rest. Grp. Inc.*, 659 F.3d 234, 251 (2d Cir. 2011) ("In deciding a motion for class certification under Rule 23, the district judge must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met.").

The Court's class certification analysis must be "rigorous." *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 465–66 (2013). That said, "[t]he Second Circuit gives Rule 23 a liberal rather than restrictive construction, and courts are to adopt a standard of flexibility." *Kassman v. KPMG LLP*, 416 F. Supp. 3d 252, 273 (S.D.N.Y. 2018).

## DISCUSSION

Plaintiff seeks to certify "certain liability issues" for the following Proposed Class:

> Individuals who suffered hair loss after using TRESemmé hair care products containing DMDM, MCI and/or MI during the applicable statute of limitations and who have retained S&F as their counsel.

Mot. 19. Specifically, plaintiff seeks certification of six issues, including: (1) whether TRESemmé products containing the Chemicals can cause dermatitis or hair loss; (2) whether defendant knew or should have known (and when) that the Chemicals can cause dermatitis or hair loss; (3) whether defendant had a duty to warn plaintiff and the Proposed Class of the risk of dermatitis or hair loss; (4) whether defendant breached the duty to warn; (5) whether TRESemmé products containing the Chemicals were defectively designed and posed a substantial risk of causing dermatitis and hair loss; and (6) whether a reasonable alternative design existed that did not contain the Chemicals (collectively, the "Proposed Issues"). Mot. 10.

Plaintiff argues that the Proposed Issues are proper for certification pursuant to Rule 23(c)(4) because they are "common to the [Proposed] Class" and are "amenable to common law and class-wide proof." Mot. 10. Plaintiff further argues that resolution of these "discrete [] liability issues" will not require the Court to adjudicate individualized issues. Mot. 10. Plaintiff suggests that the Proposed Class members can share the costs of establishing and resolving these issues, and thus Rule 23(c)(4) certification will "streamline and materially advance the litigation[.]" Mot. 10.

Defendant responds that Rule 23(c)(4) certification is improper because (1) certification would not in fact materially advance the litigation, Opp'n 21; and (2) plaintiff cannot satisfy Rule 23(b)'s certification requirements, Opp'n 27.[7] The Court addresses each in turn.

---

[7]    Defendant also argues that issue certification is improper because it would run afoul of the Seventh Amendment, and because plaintiff fails to satisfy the requirements of Rule 23(a). *See* Opp'n 25–27. Because issue certification is improper for the reasons stated *infra*, the Court does not reach these arguments.

## I.     Rule 23(c)(4) Certification

Rule 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). This permits the Court, "in its discretion, to certify a class when the action as a whole does not satisfy Rule 23(b)(3)." *Brennan*, 2023 WL 5672590, at *15. For example, courts may certify an issue class to "separate the issue of liability from damages." *Strip Search Cases*, 461 F.3d at 226. The Second Circuit has noted that courts should take "full advantage" of Rule 23(c)(4) to reduce the range of disputed issues in complex litigation and achieve judicial efficiency. *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 167–68 (2d Cir. 2001). Indeed, "[t]he Second Circuit has consistently endorsed a broad reading of Rule 23(c)(4)." *United States v. City of New York*, 276 F.R.D. 22, 33 (E.D.N.Y. 2011).

Still, the purpose of Rule 23(c)(4) is to "make the case more manageable." *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.* ("*MTBE*"), 209 F.R.D. 323, 351 (S.D.N.Y. 2002). "Thus, issue certification must materially advance a disposition of the litigation as a whole to be warranted." *Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 169 (S.D.N.Y. 2003); *see also MTBE*, 209 F.R.D. at 351 ("[I]ssue certification is not appropriate if, despite the presence of a common issue, certification would not make the case more manageable."). Plaintiff bears the burden of demonstrating that issue certification will in fact "materially advance a disposition of the litigation." *MTBE*, 209 F.R.D. at 351 (quoting *Robinson*, 267 F.3d at 167 n.12).

Plaintiff argues that resolving "central liability issues" will materially advance the litigation, thus warranting issue certification. Mot. 20. Specifically, plaintiff contends that certifying the Proposed Issues "will help prove substantially similar elements of failure to warn and design defect claims," irrespective of which state's substantive law applies to a

particular Proposed Class member's claims. Mot. 26. Plaintiff further contends that central liability issues can be determined on a class-wide basis, using common evidence directed at defendant's alleged misconduct, rather than individualized issues pertaining to Proposed Class members. Mot. 26.

Defendant responds that issue certification would not materially advance this products-liability litigation because, even if the Court were to certify common issues pertaining to defect, breach, and general causation, ultimately, trial will center on specific causation, injury, damages, and defenses. Opp'n 24. In defendant's view, even after a class trial on negligence and defect, "substantial individual actions would still be necessary." Opp'n 24 (quoting *Benner*, 214 F.R.D. at 170). Defendant also asserts that a class trial "would result in zero efficiencies," due to the "near complete overlap of issues and proofs" between a class trial and individual trial. Opp'n 24. That is, "much of the evidence presented in the general causation trial would have to be presented again in the individual trials on the specific causation question." Opp'n 24–25 (quoting *In re Pac. Fertility Ctr. Litig.*, No. 18-cv-01586, 2020 WL 3432689, at *6 (N.D. Cal. June 23, 2020)). The Court agrees.

### A. *Material Advancement of Failure to Warn Claims*

First, plaintiff fails to demonstrate that Rule 23(c)(4) certification will materially advance the disposition of the Proposed Class members' failure to warn claims, and certification of issues pertaining to those claims is inappropriate. Although plaintiff concedes that the substantive law of the state where each Proposed Class member resides and was allegedly injured will govern their product liability claims, Mot. 27, she nevertheless contends that certification is appropriate because she seeks to certify "issues central to elements of [p]laintiffs' claims that are substantially similar across the country."

9

Mot. 27. Specifically, plaintiff argues that the state law applicable to each Proposed Class member's failure to warn claim "require[s] a duty to warn," and that each Proposed Class member's state recognizes that this duty extends to "latent dangers resulting from foreseeable uses of its product of which it knew or should have known." Mot. 28 (quoting *Humphrey v. Diamant, Boart, Inc.*, 556 F. Supp. 2d 167, 179 (E.D.N.Y. 2008)). Thus, in plaintiff's view, her first three Proposed Issues—whether the Chemicals can cause hair loss, whether and when defendant knew or should have known that the Chemicals can cause hair loss, and whether defendant had a duty to warn the Proposed Class of the risk of hair loss—will materially advance the litigation by resolving substantially similar elements of each Proposed Class member's failure to warn claim. *See* Mot. 28–29. Plaintiff similarly argues that the standard for determining breach is "ubiquitous" across all jurisdictions. Mot. 29. Therefore, according to plaintiff, certifying her fourth issue— whether defendant breached its duty to warn—will materially advance every Proposed Class member's claims "up until the point of causation and damages[.]" Mot. 29. These arguments are without merit.

Were the Court to certify plaintiff's Proposed Issues, many individualized issues pertaining to liability would remain unresolved. Indeed, as plaintiff admits, individual trials would still be necessary to determine specific causation and injury. *See* Mot. 29; *see also* Opp'n 24. Thus, this is not a case in which a class trial would resolve the issue of liability, leaving only the issue of damages. *See In re Rock 'n Play Sleeper Mktg., Sales Pracs., and Prods. Liab. Litig.*, No. 19-md-02903, 2022 WL 22922234, at *17 (W.D.N.Y. June 2, 2022) ("Certification of an issues class is most useful when it resolves liability issues, leaving individual damages for individual adjudication."); *cf. Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 593 (S.D.N.Y. 2013) (reasoning that certification was

appropriate where the plaintiffs could prove that the defendant "will have necessarily caused a uniform type of injury to class members," and thus "[t]he only remaining question then will be how much each individual is owed"). Instead, this case presents "myriad individualized issues with respect to liability as well," and class treatment is inappropriate.[8] *Royal Park Invs. SA/NV. v. Deutsche Bank Nat'l Tr. Co.*, No. 14-cv-04394, 2018 WL 1750595, at *20 (S.D.N.Y. Apr. 11, 2018); *see also Hamilton v. Accu-tek*, 935 F. Supp. 1307, 1332 (E.D.N.Y. 1996) (concluding that class certification would not advance judicial economy where even "[a]ssuming that [the] plaintiffs can prove at trial that [the] defendants collectively breached a duty, they must still establish that this breach caused each plaintiff's injury"). Indeed, plaintiff does not meaningfully contest that there will need to be individual trials for each of the 717 Proposed Class members to determine proximate cause, injuries and, by extention, liability. *See* Mot. 29; Reply 11.

Plaintiff's individual case illustrates this point. As a resident of New York when she was allegedly injured by defendant's conduct, plaintiff's failure to warn claim is governed by New York law. *See Dorris v. Danone Waters of Am.*, 711 F. Supp. 3d 179, 194 (S.D.N.Y.

---

[8]    Plaintiff's cited out-of-circuit authority for the proposition that courts certify common causation issues even where individual causation and damages issues will need to be individually adjudicated is readily distinguishable. *See* Reply 10. For example, in *Burnett v. CNO Fin. Grp., Inc.*, No. 18-cv-00200, 2022 WL 896871 (S.D. In. Mar. 25, 2022), the court certified an issues class after observing that a class trial would resolve causation entirely for many of the class members following a class trial. *See id.* at *20 ("[I]t's likely that causation would not be disputed for every class member at follow-on proceedings."). And in *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96 (E.D. Mich. 2019), the court certified an issues class pursuant to its "broad discretion" as an MDL transferee court because it would resolve common issues in the various cases already "centralized before the MDL court." *Id.* at 110. Moreover, the issues to be certified in *Monostable* bore primarily on the plaintiffs' implied and express warranty claims, in which causation was not at issue. *See id.* at 111, 113 (reasoning that certification was appropriate because "whether a defect exists is the dominant issue common to all cases and causes of action," and implying that the certified issues would not overlap with injuries or causation).

2024) ("In product liability actions, New York courts apply the law of the place of the injury."). And under New York law, plaintiff must show that "(1) the manufacturer had a duty to warn; (2) the manufacturer breached the duty to warn in a manner that rendered the product defective, *i.e.*, reasonably certain to be dangerous; (3) the defect was the proximate cause of the plaintiff's injury; and (4) the plaintiff suffered loss or damage," to state a prima facie failure to warn claim. *Hollman v. Taser Intern. Inc.*, 928 F. Supp. 2d 657, 672–73 (E.D.N.Y. 2013). Even if the Court resolved the elements of duty and breach—plaintiff's Proposed Issues 3 and 4—on a class-wide basis, plaintiff and each Proposed Class member would still need an individualized trial to determine whether the alleged defect was the proximate cause of their injury, and whether they suffered any loss or damage therefrom. *See e.g.*, *In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 400 n.11 (S.D.N.Y. 2008) ("The inherently individualized nature of the proximate cause inquiry is a major reason why class certification has been denied in nearly every pharmaceutical products liability medical monitoring case to date.").

Specifically, plaintiff would still have to demonstrate that it was TRESemmé products containing the Chemicals which proximately caused her hair loss, and not one of the many number of other potentially contributing factors. Indeed, the record evidence suggests that many factors can cause hair loss, including genetics, depression, anxiety, infections, and pregnancy. *See* Opp'n 13; *see also* Lambert Decl. Ex. I, Marc Serota Tr. 5:15–20, ECF No. 66-10 (opining that there are more than ten possible causes of hair loss). Determining the proximate cause of hair loss may require an analysis of each unique person, including their medical history, allergies, and prior diagnoses. Opp'n 13; *see also* Lambert Decl. Ex. I, Marc Serota Tr. 8:12–22. For example, defendant suggests that plaintiff began losing her hair before using TRESemmé, that plaintiff never experienced

an adverse reaction on her scalp while using TRESemmé, and that a host of other known causes of hair loss contributed to plaintiff's condition. *See* Opp'n 15–16. Thus, given the need to disentangle the many individual issues left as to specific causation, "a finding of general causation would do little to advance th[e] litigation." *Patton v. Topps Meat Co., LLC*, No. 07-cv-00654, 2010 WL 9432381, at *9 (W.D.N.Y. May 27, 2010); *see also Dungan v. Academy at Ivy Ridge*, 344 F. App'x 645, 648 (2d Cir. 2009) (affirming district court's denial of Rule 23(c)(4) certification where district court reasoned that the "significance of individualized issues of reliance, causation, and damages in th[e] case meant that issue certification would not meaningfully reduce the range of issues in dispute and promote judicial economy").

Moreover, the issues that would remain in dispute for adjudication even after a class trial would be complex and significant. Although Rule 23(c)(4) does not require that the issues to be certified completely resolve the issue of a defendant's liability, the efficiency benefits of an issue class are removed where, as here, the issues to be determined after the class trial "will still be complex and require an evaluation of [] particularized conditions." *Brennan*, 2023 WL 5672590, at *16; *see also Jacks v. DirectSat USA, LLC*, 118 F.4th 888, 899 (7th Cir. 2024) (reasoning that issue certification would not materially advance litigation where "determining liability and damages would necessitate hundreds of separate trials" and observing that the action "[wa]s not a case where liability and damages can be determined by a simple formula or uncomplicated follow-on proceedings"). And as discussed above, the issue of specific causation and proximate cause in this case requires an evaluation of a host of individualized, and potentially complex, factors. Indeed, plaintiff recognizes that "the [i]ndividual [Proposed] Class member trials would focus on specific causation," and would require "testimony

from individual [Proposed] Class members, medical experts on specific causation, and a presentation of individual defenses." Reply 11. Put simply, "[t]his is not a case where resolution of complex and significant issues would leave a limited number of simpler issues that could be quickly resolved in later litigation." *McKoy v. Trump Corp.*, No. 18-cv-09936, 2023 WL 6842310, at *6 (S.D.N.Y. Oct. 17, 2023).

Accordingly, the Court concludes that certification of plaintiff's Proposed Issues relating to the Proposed Class Member's failure to warn claims would do little to materially advance a disposition of the litigation.

## B.  *Material Advancement of Design Defect Claims*

Plaintiff's argument that certification of her Proposed Issues will materially advance disposition of the Proposed Class's design defect claims fares no better. As with her failure to warn claim, plaintiff must demonstrate proximate cause to state a design defect claim. *See Rupolo v. Oshkosh Truck Corp.*, 749 F. Supp. 2d 31, 42 (E.D.N.Y. 2010) ("Under New York law, a plaintiff asserting a claim for defective design must show that (1) the product, as designed, posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing the plaintiff's injury."); *see also id.* ("Under the third requirement, the plaintiff is required to show that the defectively designed product caused his injury and that the defect was the proximate cause of the injury.").

The same individualized issues relevant to the determination of proximate cause for plaintiff's failure to warn claim apply with equal force to her design defect claim. And again, plaintiff does not dispute that there will need to be individual trials for each of the hundreds of Proposed Class members to determine proximate cause for their design defect claims. *See* Mot. 29; Reply 11. This weighs against finding that issue certification

14

will materially advance this litigation. *See Benner*, 214 F.R.D. at 170 ("Where substantial individual actions, or an atomized second class action, would still be necessary after the defect and negligence issue class trial, this Court cannot find that issue certification materially advances the litigation.").

### C. *Judicial Economy*

Plaintiff's argument that class treatment of her Proposed Issues will preserve judicial economy is unavailing. *See* Mot. 32. Plaintiff asserts that defendant's contention that "a class trial on alleged common issues would result in zero efficiencies," Opp'n 24, amounts to "conjecture" because defendant "speculates [that] [p]laintiff[] will reassert the same evidence in later litigation[,]" Reply 11. Far from speculation, the record evidence demonstrates this precise risk.

Plaintiff's individual case is again illustrative. The expert report of plaintiff's medical expert, Dr. Marc Serota, contains numerous opinions as to specific causation with respect to plaintiff's hair loss. *See* Fearson Decl. Ex. 3 at 20, ECF No. 65-5. And many of these opinions appear to overlap with the same evidence and testimony that would be presented at a class trial to establish general causation. For example, Dr. Serota's specific causation opinions include: "[t]he process by which [the Chemicals] can trigger hair loss is complex and incompletely understood[,]" and "[the Chemicals] are preservatives that, either alone or in combination, act as an irritant or a contact allergen." Fearson Decl. Ex. 3 at 62, ECF No. 65–5. These opinions were necessary for Dr. Serota to formulate his ultimate opinion: "in this case the preservatives in TRESemmé (including [the Chemicals], either alone or in combination) caused [plaintiff's] hair loss." Fearson Decl. Ex. 3 at 62–63, ECF No. 65-5. However, this testimony would also presumably be necessary at a class trial in which plaintiff aims to prove, for example, that TRESemmé

products containing the Chemicals can cause hair loss and that TRESemmé products containing the Chemicals were defectively designed and posed a substantial risk of causing hair loss. *See* Mot. 10.

Thus, defendant correctly points out the risk in the instant case that "much of the evidence presented in the general causation trial would have to be presented again in the individual trials on the specific causation question." Opp'n 24–25 (quoting *In re Pac. Fertility Ctr. Litig.*, 2020 WL 3432689, at *6). Put differently, because the issue of specific causation is "inextricably entangled" with the issue of general causation, "bifurcation or limited certification under Rule 23(c)(4) is inappropriate." *Jacob*, 293 F.R.D. at 589; *see also Harding v. Tambrands Inc.*, 165 F.R.D. 623, 632 (D. Kan. 1996) ("Certification under [Rule 23(c)(4)] should be denied when the noncommon issues are inextricably entangled with the common issues or when the noncommon issues are too predominant to handle on a class basis.") (quoting *Caruso v. Celsius Insulation Res., Inc.*, 101 F.R.D. 530, 538 (M.D. Pa. 1984)).

\*     \*     \*

In sum, the Court finds that "despite the presence of [] common issue[s]," certification of plaintiff's Proposed Issues would not materially advance this litigation, and thus, issue certification pursuant to Rule 23(c)(4) is not warranted.[9] *MTBE*, 209

---

[9]     Plaintiff's other cited out-of-circuit cases do not compel a different conclusion. Reply 10–11; *see In re Copley Pharm., Inc.*, 158 F.R.D. 485, 492 (D. Wyo. 1994) (certifying issues in MDL where common issues "surrounding the [d]efendant's liability . . . [could] be tried to a single jury in a unified trial," and individual follow-on trials would only be needed to assess injury and damages); *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 290 (S.D. Ohio 1997) (noting that "while causation will require individualized proof, it will not be the predominant issue because . . . [the] question [] is easily resolved"); *In Pella Corp. v. Saltzman*, 606 F.3d 391, 392–93 (7th Cir. 2010) (affirming district court's certification of classes under Rule 23(b)(2) and 23(b)(3) because whether the design

F.R.D. at 351 (quoting *Robinson*, 267 F.3d at 167 n.12); *see also McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 234 (2d Cir. 2008), *abrogated in part on other grounds by Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639 (2008) (denying Rule 23(c)(4) certification where "given the number of questions that would remain for individual adjudication, issue certification would not reduce the range of issues in dispute and promote judicial economy"); *Dungan*, 344 F. App'x at 648 (finding that district court did not abuse discretion in denying issue certification where district court concluded that given "the significance of individualized issues," certification would not meaningfully reduce the issues in dispute or promote judicial economy).

## II. Superiority

Even if plaintiff established that certification of her Proposed Issues would materially advance this litigation, her Motion must still be denied for failure to meet Rule 23(b)(3)'s superiority requirement.

In order for issues to be certified pursuant to Rule 23(c)(4), those issues must also meet the requirements of Rules 23(a) and (b). *Pelman v. McDonald's Corp.*, 272 F.R.D. 82, 96 (S.D.N.Y. 2010). "Rule 23(b)(3) has two requirements: predominance and superiority."[10] *Francisco v. N.Y. Tex Care, Inc.*, No. 19-cv-01649, 2022 WL 900603, at

---

defect existed at all was "the essence of the dispute"); *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 415 (6th Cir. 2018) ("[T]he common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.").

[10]     In her pre-motion conference letter, plaintiff sought leave to certify her products liability claims "pursuant to Rule 23(a) and 23(b)(3)." Pl.'s Letter dated Mar. 1, 2024 at 1, ECF No. 36. And in her class certification briefing, plaintiff only addresses the requirements of Rule 23(b)(3). *See* Mot. 20, 32; Reply 13–14. Accordingly, the Court does not address the other provisions of Rule 23(b). *See Duling v. Gristede's Operating Corp.*, 267 F.R.D. 86, 95 n.8 (S.D.N.Y. Mar. 8, 2010) (addressing only Rule 23(b)(2) where the

*10 (E.D.N.Y. Mar. 28, 2022) (citing *Wal-Mart*, 564 U.S. at 362–63). A movant satisfies predominance where she demonstrates that questions of law or fact common to the class predominate over questions affecting only individual class members, and satisfies superiority where she demonstrates that a class action is superior to other available methods of adjudication. *See id.*

Because plaintiff seeks to "limit class certification only to certain common issues, those issues necessarily" satisfy the predominance requirement. *Pelman*, 272 F.R.D. at 98; *see also Charron*, 269 F.R.D. at 241 ("Naturally, when a Court chooses to limit class certification only to certain common issues under Rule 23(c)(4), those issues necessarily predominate and satisfy the first element of Rule 23(b)(3)."); *accord.* 2 Newberg on Class Actions § 4:23 ("When a court decides to limit a class action with respect to particular common issues only, such limitation will necessarily afford predominance as to those issues."). Thus, plaintiff is correct that her Proposed Class satisfies Rule 23(b)(3)'s predominance requirement. *See* Reply 13.

However, issue certification also requires superiority over other available methods of adjudication. Rule 23(b)(3) sets forth a non-exhaustive list of factors "pertinent" to a finding of superiority: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation

---

complaint "invoke[d] Rule 23(b)(3)," but the plaintiffs did not request Rule 23(b)(3) certification in their class certification briefing); *Reid v. A-Plus Care HHC Inc.*, No. 23-cv-01163, 2025 WL 1703066, at *9 (S.D.N.Y. June 18, 2025) (overruling objection that the court "erred by not considering whether a class alternatively should be certified under Rule 23(b)(1) or Rule 23(b)(2)" where the plaintiff "never moved for class certification on either of th[o]se bases"); *accord. Strauch v. Comput. Scis. Corp.*, 322 F.R.D. 157, 175 n.13 (D. Conn. June 30, 2017) (deeming request for certification under Rule 23(b)(2) "abandoned" where complaint sought certification pursuant "both to Rule 23(b)(2) and b(3)" but motion for class certification only sought certification pursuant to Rule 23(b)(3)).

concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (D) the likely difficulties in managing a class action." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 n.15 (2d Cir. 2013) (quoting Fed. R. Civ. P. 23(b)(3)). Plaintiff fails to carry her burden of demonstrating that the Rule 23(b)(3) factors weigh in her favor.[11]

### A. Manageability

To begin, the manageability factor weighs against a finding of superiority. "[M]anageability is, by [] far, the most critical concern in determining whether a class action is a superior means of adjudication." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015). Plaintiff fails to demonstrate that class treatment would be manageable in the instant case. The Proposed Class contains more than 700 members from 49 states. *See* Mot. 19. Plaintiff concedes that the claims of each Proposed Class member would be governed by the substantive product liability law of the state where each Proposed Class member was allegedly injured. *See* Mot. 27. And the differences in the varying states' product liability laws indicate that certain of plaintiff's Proposed Issues could not be decided in one fell swoop.

For instance, according to plaintiff's estimate, there are at least four different variations of the standard for a design defect claim across her Proposed Class. *See* Mot. 29–30 (discussing the "risk-utility test," "consumer expectations test," hybrid approach,

---

[11]    The Court does not address the desirability factor given its conclusion that the other superiority factors do not weigh in plaintiff's favor. *Cf. In re Actos Antitrust Litig.*, No. 13-cv-09244, 2024 WL 4251891, at *37 (S.D.N.Y. Aug. 9, 2024), *report and recommendation adopted*, 2024 WL 4345568 (Sept. 30, 2024) (explaining that even if one of the four relevant factors weighed against a finding of superiority, "it does not defeat superiority, since the other three factors weigh[ed] in favor of class certification").

and "unreasonable danger-type standard[]"). Thus, this is not a case in which the laws of a single state—or even an articulation of a single legal standard—can resolve, for example, whether "TRESemmé products containing the Chemicals were defectively designed." Mot. 10; *cf. Sullivan*, 2019 WL 8272995, at *12 ("[L]iab[ility] for property claims is superior to a series of individual claims both because of the efficiency of resolving the issue once on the basis of the law of a single state . . . and a single factual record. This case is not one in which variations in state law or other differences between individual claims militate against class treatment.").

Moreover, although plaintiff claims that variations in state law do not render class treatment unmanageable because she only seeks certification of elements that are "substantially similar across the country[,]" the Court is unconvinced. *See* Mot. 27. For example, plaintiff suggests that "whether a particular product was defectively designed falls into a limited number of predictable patterns." Mot. 29. But the inconsistencies between these "patterns" appear more substantial than plaintiff represents and could impose significant challenges in managing a single class trial. While some states allocate the burden of proof on whether a design is defective to a plaintiff, others allocate it to a defendant. *Compare Pankey v. Petco Animal Supplies, Inc.*, 264 Cal. Rptr. 3d. 644, 660 (Cal. Ct. App. 2020) (explaining that "the burden shifts to a defendant to prove [a] product is not defective" once a plaintiff shows injury caused by a product's design), *with Mills v. FCA US, LLC*, No. 18-cv-01891, 2021 WL 4079363, at *6 (D. Co. Sept. 7, 2021) (noting that a plaintiff bears the burden of proof to show a design is defective). Some states require a jury to determine whether a safer alternative design existed, while others do not. *Compare Ruark v. BMW of N. Am., LLC*, No. 09-cv-02738, 2014 WL 1668917, at *2 (D. Md. Apr. 24, 2014) (observing that to determine whether a design is defective, "the

jury must decide whether a feasible, safer alternative design existed"), *with McDougall v. CRC Indus., Inc.*, No. 20-cv-01499, 2023 WL 5515827, at *8 (D. Minn. Aug. 25, 2023) ("[T]he existence of a safer alternative design is not an essential element in design defect cases."). Indeed, some jurisdictions exclude consideration of whether a safer alternative design existed in the context of a design defect claim. *See e.g.*, *Purdy v. Deere & Co.*, 492 P.3d 99, 109–10 (Or. Ct. App. 2021) (concluding that jury instruction's reference to consider "evidence of safer design alternatives" constituted reversible error). Plaintiff proffers no basis for a single jury and the Court to reasonably manage all of these differences in a class trial.

Plaintiff's proposed trial plan, or lack thereof, underscores this point. In her Motion, "plaintiff bears the burden of providing an extensive analysis of state law variations to determine whether there are insuperable obstacles to class certification." *In re Restatis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 32 (E.D.N.Y. 2020). Thus, in addition to her "attempt to group state laws by their relevant differences," plaintiff bears the burden to, for example, "include model jury instructions and verdicts forms." *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 71 n.59 (S.D.N.Y. 2002). The charts plaintiff attaches to her Motion purporting to capture the variations in state laws with respect to failure to warn and design defect claims fall far short of the "extensive analysis" needed to "demonstrate that the case could be managed in any reasonable way, given the need to apply differing laws of the states concerned." *Id.* at 71; *see also* Fearson Decl. Exs. 37, 38, ECF Nos. 65-35, 65-36. Plaintiff has also failed to submit model jury instructions and verdict forms, "despite being challenged in defendant[']s answering brief to do so." *Rezulin*, 210 F.R.D. at 71 n.59; *see also* Opp'n 30 (arguing that plaintiff's superficial, generalized charts concerning laws of duty, statutes

of limitations, and defect . . . do not come anywhere close to meeting [p]laintiff's burden").[12]

In sum, the Court concludes that "despite the presence of [] common liability issue[s], certification would not make the case more manageable." *Houser v. Pritzker*, 28 F. Supp. 3d 222, 254 (S.D.N.Y. July 1, 2014).

### B. Interest in Controlling the Litigation

The question of whether class members have a strong interest in individually controlling the litigation also weighs against plaintiff. While not required to support certification, one of the most compelling rationales for finding that this factor weighs in favor of finding superiority is the existence of a negative value suit, that is, a suit in which the costs of prosecuting an individual action would exceed the expected recovery. *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03-mdl-01570, 2021 WL 640257, at *9 (S.D.N.Y. Jan. 22, 2021) ("[T]he most compelling rationale for finding superiority in a class action [is] the existence of a negative value suit, *i.e.*, a suit comprised of claims in which the costs of enforcement in an individual action would exceed the expected individual recovery.").

This action is plainly the opposite of a "negative value" case. Plaintiff's Proposed Class is comprised entirely of members who have already retained counsel on a contingency basis. *See* Mot. 19 ("Plaintiff[] seeks to certify only certain liability issues for

---

[12]    Even considering the "trial management tools" plaintiff suggests that the Court utilize—stipulated facts, special verdict and interrogatory forms, stipulations, or the use of a special master, Reply 7— plaintiff fails to account for the "plethora of individual issues left for resolution after a trial on the class-wide common issues[.]" *Benner*, 214 F.R.D. at 173. That is, because "individualized questions permeate the litigation, those fatal dissimilarities among putative class members make use of the class-action device inefficient or unfair." *In re Petrobas Sec.*, 862 F.3d. 250, 270 (2d Cir. 2017).

the following Class: Individuals . . . who have retained S&F as their counsel."). Indeed, plaintiff has admitted "that each [P]roposed [C]lass member has retained [p]laintiff's counsel on a contingency fee basis, making absent class members' financial resources irrelevant." Joint Letter dated Dec. 19, 2023 at 5, ECF No. 31. The fact that the Proposed Class members are represented by counsel on a contingency basis suggests that there is no concern that the cost of prosecuting actions on an individual basis will exceed potential recovery. *See Terrorist Attacks*, 2021 WL 640257, at *9; *see also MTBE*, 209 F.R.D. at 350 ("Thus, unlike a true negative value claim such as those seen in antitrust cases, these plaintiffs may employ tort lawyers, on a contingency basis, to bring individual actions.").

Plaintiff's contention that there is "no basis to assert that individual recoveries will exceed the cost of individual litigation" is belied by her allegations in the complaint and the evidence in the record. Reply 14. Plaintiff alleges personal damages in excess of $75,000, Compl. ¶ 15, and the total alleged damages on behalf of the class "exceeds $5,000,000," Compl. ¶ 16. Moreover, of the four separate actions filed by plaintiff's counsel against defendant asserting substantially similar allegations, three expressly allege damages of more than $75,000. *See* Opp'n 12; *see also* Lambert Decl. Ex. C ¶ 12, ECF No. 66-4; Lambert Decl. Ex. E ¶ 12, ECF No. 66-6; Lambert Decl. Ex. F ¶ 12, ECF No. 66-7. These allegations suggest that "this is not a case where the potential recovery for each plaintiff is de minimis and a class action is necessary for any class members to recover." *Benner*, 214 F.R.D. at 173; *see also In re Sinus Buster Prods. Consumer Litig.*, No. 12-cv-02429, 2014 WL 5819921, at *6 (E.D.N.Y. Nov. 10, 2014) (concluding that the case before it "present[ed] the classic negative value case because there [we]re thousands of potential plaintiffs and each individual plaintiff's claim[] [wa]s worth a small amount- at most . . . around five dollars"); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 537

(E.D.N.Y. 2017) (reasoning that the case before it was a negative value suit where the highest alleged claims were "not likely to be more than a few thousand dollars") (collecting cases).

Moreover, because the Proposed Class members have retained plaintiff's counsel on a contingency basis, the absence of risk that "the costs of individually litigating the action exceed[] the potential recovery," weighs against a finding of superiority. *Benner*, 214 F.R.D. at 173; *accord. MBTE*, 209 F.R.D. at 350 (concluding that superiority requirement was not met where class members could "employ tort lawyers, on a contingency basis, to bring individual actions," and observing that several class members "ha[d] already done so").

### C. Extent and Nature of Litigation

The "extent and nature of [] litigation concerning the controversy already begun by . . . class members" also weighs against certification. Fed. R. Civ. P. 23(b)(3)(B). Where other actions are pending and there is "a clear threat of multiplicity and a risk of inconsistent adjudications . . . a class action may not be appropriate [] unless the other suits can be enjoined[.]" *Nat'l Convention Servs., LLC v. Applied Underwriters Captive Risk Assurance Co.*, No. 15-cv-07063, 2019 WL 3409882, at *3 (S.D.N.Y. July 27, 2019). Such a risk appears present here: at least four other Proposed Class members have already commenced their own actions, including two cases filed prior to the instant suit. *See* Lambert Decl. Exs. C–F, ECF Nos. 66-4–66-7; *see also Hossain v. Unilever United States Inc.*, No. 21-cv-02833 (E.D.N.Y. filed May 19, 2021); *Detmar v. Unilever United States Inc.*, No. BER-L-002399-21 (Sup. Ct. N.J. filed April 8, 2021). Indeed, two cases filed by Proposed Class members against defendant currently pending in the District of New Jersey are in the midst of briefing on summary judgment motions. *See* Opp'n 12; *see also*

*Maddox v. Conopco, Inc.*, No. 23-cv-00293 (D.N.J. filed Jan. 19, 2023), ECF No. 46;

*Schafer v. Conopco, Inc.*, No. 23-cv-00348 (D.N.J. filed Jan. 23, 2023), ECF No. 44.[13]

Plaintiff notes that "[i]ndividuals in other cases *may* opt-out of the Rule 23(c)(4) issue class after receiving . . . notice of certification." Mot. 19 n.11 (emphasis added). However, plaintiff proffers no basis for determining which, if any, separate actions should be enjoined should a class be certified and the plaintiffs in the separate actions elect not to opt out of the Proposed Class. *See Nat'l Convention*, 2019 WL 3409882, at *3 (finding factor weighed against certification where "at least twelve other individual actions and arbitrations [were] filed by putative class members" and observing that such cases "could create[] issues in determining which of those actions, if any, should be enjoined," if a class were certified).

Accordingly, the Court finds that plaintiff fails to demonstrate that class treatment is the superior method for adjudicating alleged common issues for the Proposed Class, and certification is improper on this ground as well.[14]

---

[13]     The Court "can properly take judicial notice of documents filed in another court's docket to establish the fact of the litigation and related filings." *Palisades Estates EOM, LLC v. County of Rockland*, No. 23-cv-04215, 2025 WL 1295333, at *42 n.51 (S.D.N.Y. May 5, 2025).

[14]     The Court also notes that plaintiff fails to demonstrate that class treatment of her "common issues" is a superior method of adjudication as opposed to, for example, issue preclusion. Indeed, should plaintiff succeed on her claims, she will have shown that TRESemmé products containing the Chemicals "inherently and unreasonably damages hair and scalps" and defendant "will likely be precluded from arguing otherwise in other actions." *In re Amla Litig.*, 282 F. Supp. 3d 751, 766 (S.D.N.Y. 2017). "Defendant[] will thus be hard pressed to argue that the product is not defective or unreasonably dangerous, or that it is reasonably safe for its intended use." *Id.* Accordingly, the marginal efficiency benefits from plaintiff's Proposed Class are minimal, particularly in light of the manageability issues discussed *supra*. *See id.* at 765–66 (denying motion to certify Rule 23(c)(4) class to "resolve[] the question of whether the [defendant's] product [wa]s defective because it cause[d] or [wa]s capable of causing excessive hair breakage, hair

## CONCLUSION

For the reasons stated above, plaintiff's motion for class certification is denied. Any party wishing to move for summary judgment must take the first step in dispositive motion practice no later than August 1, 2025. Otherwise, the parties shall file a proposed joint pretrial order by September 2, 2025.

**SO ORDERED.**

_/s/ Natasha C. Merle_____
NATASHA C. MERLE
United States District Judge

Dated:        July 2, 2025
              Brooklyn, New York

---

loss, scalp and skin irritation," due to the "marginal efficiency gains from th[e] proposed class" and the high risk "of a second jury deciding the same issue[s]").