UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ELIZABETH CANDELARIA,

          *Plaintiff,*

  – against –

CONOPCO, INC., *d/b/a UNILEVER HOME & PERSONAL CARE USA,*

          *Defendant.*

**MEMORANDUM & ORDER**
21-cv-06760 (NCM) (TAM)

---

**NATASHA C. MERLE**, United States District Judge:

Plaintiff Elizabeth Candelaria brings this action against defendant Conopco, Inc., doing business as Unilever Home & Personal Care USA, alleging that she suffered significant hair loss as a result of an allergic reaction to preservatives contained in certain TRESemmé Products, including TRESemmé Color Revitalize shampoo. *See generally* Compl. ECF No. 1. Before the Court are defendant's motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and to preclude plaintiff's expert witnesses Dr. Marc Serota and Dr. Christine Thiffault pursuant to Rule 702 of the Federal Rules of Evidence.[1] Because discovery has revealed that plaintiff's claims are time

---

[1]      The Court hereinafter refers to defendant's Memorandum of Law in Support of its Motion for Summary Judgment, ECF No. 93-1, as "MSJ"; defendant's Statement of Undisputed Material Facts, ECF No. 93-2, as "56.1 Statement"; plaintiff's Memorandum of Law in Opposition to defendant's MSJ, ECF No. 94, as "MSJ Opp'n"; plaintiff's Response to defendant's Statement of Material Facts, ECF No. 94-1, as "Counter 56.1"; defendant's Reply Memorandum in Further Support of its MSJ, ECF No. 95, as "MSJ Reply"; defendant's Memorandum of Law in Support of its Motion to Preclude, ECF No. 96-1, as the "Motion to Preclude"; plaintiff's Memorandum of Law in Opposition to defendant's Motion to Preclude, ECF No. 97, as the "Motion to Preclude Opposition"; and defendant's Reply Memorandum of Law in Further Support of its Motion to Preclude,

barred, defendant's motion for summary judgment is **GRANTED**. Accordingly, defendant's motions to preclude Drs. Serota and Thiffault are **DENIED** as moot.

## BACKGROUND[2]

Plaintiff began using TRESemmé in either 2016 or 2017. *See* Counter 56.1 ¶ 4.[3] At that time, plaintiff's hair had already begun "thinning," but "not too much." Lambert Decl. Ex. D ("Pl's Dep. Tr.") 129:02–08, ECF No. 96-12.[4] Nonetheless, the thinning was substantial enough that plaintiff purchased TRESemmé "to treat her already thining hair." Counter 56.1 ¶ 6.

Plaintiff used various TRESemmé products, some of which contained DMDM hydantoin ("DMDM"). Candelaria Decl. ¶ 4, ECF No. 94-48. DMDM is a formaldehyde donor, a preservative that works by releasing small amounts of formaldehyde over time. *See* Def's Resp. to Pl's Stmt of Add'l Facts ¶ 20, ECF No. 95-1. During the time she used TRESemmé, plaintiff did not use any other hair care products. Counter 56. 1 ¶ 13.

While using TRESemmé, plaintiff consulted with Leah Weiderman, a dermatologist with Ahava Medical & Rehabilitation Urgent Care Center, about her hair

---

ECF No. 98, as the "Motion to Preclude Reply." Defendant also moved to preclude Dr. Christine Thiffault. *See* ECF No. 99.

[2]     The following facts, drawn from the parties' motion papers, Local Civil Rule 56.1 Statements and evidentiary submissions, are undisputed unless otherwise noted.

[3]     Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers unless otherwise indicated.

[4]     Due to the formatting of this transcript and the Serota *Candelaria* Transcript, ECF No. 96-14, citations are to the page number that appears in the PDF and not to the page number that appears on the ECF header.

loss. Counter 56.1 ¶ 43; *see id.* ¶ 45.[5] Plaintiff informed Ms. Weiderman she was using TRESemmé, and Ms. Weiderman advised plaintiff that her alleged hair loss could have been caused by TRESemmé. Counter 56.1 ¶ 46. Plaintiff's last appointment with Ms. Weiderman was on January 5, 2017. Counter 56. 1 ¶ 44.

Plaintiff filed this action on December 6, 2021. Counter 56.1 ¶ 48. In the Complaint, plaintiff alleges that defendant knew that its DMDM-containing shampoo could cause reactions leading to hair loss, but failed to reformulate its product with a safer alternative. Compl. ¶¶ 8–9; 46–53. Plaintiff alleges that her use of DMDM-containing TRESemmé products triggered an allergic reaction that culminated in her significant hair loss. Compl. ¶ 54–55.[6] Further, plaintiff alleges that she stopped using TRESemmé products once she discovered that they were having an adverse impact on her scalp and hair and that, since that time, she has not experienced any new hair loss or scalp irritation. Compl. ¶ 56. Accordingly, plaintiff brings product-liability causes of action on theories of design defect, failure to warn, and negligence. *See* Compl. ¶¶ 76–101.

Plaintiff proffers three experts in support of her claims, Dr. Marc Serota, Dr. Christine Thiffault, and Dr. Michael T. Motley. Counter 56.1 ¶ 49. Relevant here, Dr. Serota is plaintiff's only expert offering an opinion on specific causation. Counter 56.1 ¶ 50. Among his other qualifications, Dr. Serota is a board-certified pediatrician, dermatologist, and immunologist/allergist, as well as a practicing physician and lecturer. *See generally* Lambert Decl. Ex. A at 66–71, ECF No. 96-9.

---

[5]    Plaintiff states that she began consulting with Ms. Weiderman in 2015 but did not start using TRESemmé until "2016 or 2017." Counter 56.1 ¶ 45. It is undisputed that at least some of these plaintiff's consultations with Ms. Weiderman occurred while plaintiff was using TRESemmé.

[6]    Defendant disputes this claim but not that plaintiff alleges this fact. *See* MSJ 5.

Defendant served its motion for summary judgment along with its motion to preclude Dr. Serota on plaintiff on October 23, 2025. *See* MSJ; Mot. to Preclude; Ltr. from Conopco Inc. to Judge Merle (October 24, 2025), ECF No. 76. Plaintiff opposes both motions. *See* MSJ Opp'n; Mot. to Preclude Opp'n.

**LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 259 (2d Cir. 2021).[7] Facts are in genuine dispute when "the jury could reasonably find for" the non-moving party based on the evidence in the record. *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021).

On review of a Rule 56 motion, the Court "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." *Brandon v. Royce*, 102 F.4th 47, 54 (2d Cir. 2024). The movant "bears the initial burden of showing that there is no genuine dispute as to a material fact." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). Where the moving party meets their burden, the non-moving party must provide sufficient evidence establishing a genuine issue of material fact beyond "[t]he mere existence of a scintilla of evidence." *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012). The court need only consider admissible evidence and is not obligated to conduct an independent review of the record to identify a factual

---

[7]    Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

dispute. *Looney v. Macy's Inc.*, 588 F. Supp. 3d 328, 340 (E.D.N.Y. 2021) (citing *Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002)).

A district court's role is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022). Furthermore, "a district court may not make credibility determinations, or weigh evidence" on summary judgment. *Reynolds v. Quiros*, 990 F.3d 286, 294 (2d Cir. 2021). Thus, a district court denies summary judgment where there are disputed facts "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Davis-Garett v. Urb. Outfitters*, Inc., 921 F.3d 30, 45 (2d Cir. 2019).

## DISCUSSION

Defendant argues that it is entitled to summary judgment on all of plaintiffs claims for one simple reason—plaintiff filed her complaint too late. MSJ 11. Plaintiff counters that her claims are timely becase any hair loss she experienced prior to 2020 was so minimal that she "had no reason to investigate a connection between that immaterial hair loss and her TRESemmé use," and because once she began "experiencing acute hair loss" in 2020 she filed her Complaint shortly thereafter. MSJ Opp'n 18–19. But in New York, it is knowledge of the injury, not knowledge of the cause of that injury, that initiates the limitations period. And worsening symptoms delay neither the beginning nor the end of that period. Here, plaintiff's claims accrued on January 5, 2017, at the latest. Therefore, the limitations period for those claims lapsed on January 6, 2020. Plaintiff filed her Complaint nearly a year later, on December 6, 2021. Accordingly, her claims are are untimely and defendant is entitled to summary judgment.

5

Under New York law, the general limitations period for personal injury claims is three years. C.P.L.R. § 214(5). For claims involving delayed effects of exposure to a harmful substance, the three year period begins to run "from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier." C.P.L.R § 214-c(2).[8] The Court of Appeals has held that limitations period for such claims begins "when the injured party discovers the primary condition on which the claim is based." *Vuksanovich v. Airbus Americas, Inc.*, 608 F. Supp. 3d 92, 104 (S.D.N.Y. 2022) (quoting *Matter of N.Y. Cnty. DES Litig.*, 89 N.Y.2d 506, 509 (1997)). "Discovery of the injury" means "discovery of the physical condition" that constitutes the injury, "not the more complex concept of discovery of both the condition and the [cause] of that condition." *Id*. Delayed recognition of the "connection between the symptoms and the injured's exposure to a toxic substance . . . does not delay the start of the limitations period." *Bano v. Union Carbide Corp.*, 361 F.3d 696, 709 (2d Cir. 2004).

That said, "some[times] early symptoms c[an] be so isolated or inconsequential, either in terms of frequency or seriousness, that they would not put a plaintiff on notice of the underlying injury or disease." *Vuksanovich*, 608 F. Supp. 3d at 104. There is no bright-line rule for when symptoms or manifestations of a physical condition are

---

[8]     The Court rejects defendant's argument that C.P.L.R. § 214-c(2) is inapplicable to plaintiff's claims because "no toxic tort [was] alleged." MSJ 12. That argument is foreclosed by the plain language of the statute, which applies to "personal injury . . . caused by the latent effects of exposure to any substance or combination of substances, in any form, upon or within the body." C.P.L.R. §214-c(2). Indeed, "C.P.L.R. § 214-c is a remedial statute and as such, should be interpreted broadly." *Blanco v. Am. Tel. & Tel. Co.*, 90 N.Y.2d 757, 766 (1997). Plaintiff's claims, involving an alleged reaction to a substance alleged to release small amounts of a known carcinogen, plainly falls within Section 214-c(2)'s ambit. *Cf. id.* ("Obviously, a keyboard is not a toxic substance and therefore, C.P.L.R. [§] 214–c is inapplicable to plaintiffs' claims.").

sufficient to trigger C.P.L.R. § 214-c(2). *Matter of New York Cnty. DES Litig.*, 89 N.Y.2d at 514 ("[T]here may be situations in which the claimant may experience early symptoms that are too isolated or inconsequential to trigger the running of the Statute of Limitations under C.P.L.R. [§] 214–c(2). We need not decide in this case, however, precisely where the threshold lies . . . ."). Instead, courts "tailor[] their inquiries as to when a legally cognizable injury exists . . . to the particular facts before them, focusing on factors such as the extent of plaintiff's exposure to a toxic substance, her medical history, the onset of her symptoms, and the manifestations of a particular illness or disease." *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 758 F.3d 202, 211 (2d Cir. 2014).

According to defendant, the limitations period on plaintiff's claim began to run when she told Ms. Weiderman, her dermatologist, that she was experiencing hair loss and Ms. Weiderman responded by informing plaintiff that her hair loss could have been caused by TRESemmé. MSJ 11. Because plaintiff's last consultation with Ms. Weiderman occurred on January 5, 2017, defendant contends that the limitations period ended—at the absolute latest—on January 6, 2020. MSJ 11. On this basis defendant concludes that plaintiff's December 6, 2021 Complaint is untimely and summary judgment must be entered in its favor. MSJ 12–16.

Plaintiff does not dispute that she consulted with Ms. Weiderman about her hair loss nor that Ms. Weiderman told her that TRESemmé was a potential cause of that hair loss. Counter 56. 1 ¶¶ 44, 46–47. Rather, plaintiff asserts that these events did not start the limitations clock because prior to 2020, she had only experienced "some hair loss," but otherwise "her hair was generally healthy." Counter 56.1 ¶ 47; MSJ Opp'n 18 ("[P]rior to 202[0] or 2021, Ms. Candelaria experienced hair loss and hair thinning, but not too much, and she had no reason to investigate a connection between that immaterial hair

7

loss and her TRESemmé use."). Accordingly, plaintiff contends that her claims are timely because she "filed her claims on December 6, 2021 shortly after suffering acute hair loss." MSJ Opp'n 18–19.

Plaintiff's claims are untimely because she was aware of the "primary condition" underlying her claims more than three years prior to filing the Complaint. Plaintiff's argument that she "had no reason to investigate a connection between [her] hair loss and her TRESemmé use," MSJ Opp'n 18, is "beside the point," *Vuksanovich*, 608 F. Supp. 3d at 106, because a delay between the appearance of symptoms and the connection of those symptoms to the injured's exposure to a toxic substance "does not delay the start of the limitations period," *Trisvan v. Heyman*, 305 F. Supp. 3d 381, 396 (E.D.N.Y. 2018).[9] Here, plaintiff knew about her hair loss in 2017 and indeed sought medical treatment for it. Counter 56.1 ¶¶ 43, 46; Pl's Dep. Tr. 177:23–178:04. Accordingly, plaintiff "suffered symptoms of the injuries for which she now seeks damages" more than four years before filing the Complaint, and her claims are time barred. *Vuksanovich*, 608 F. Supp. 3d at 107.

Plaintiff attempts to shoehorn her claims into the exception for symptoms that are "too isolated or inconsequential" to constitute discovery of a primary condition. MSJ Opp'n 19 (citing *In re New York City Asbestos Litig.*, 39 N.Y.S.3d 629, 637 (N.Y. Sup. Ct. 2016)). But that exception is a poor fit where, as here, the primary condition and the

---

[9]    Notably, plaintiff's claim that she "had no reason to investigate a connection between that immaterial hair loss and her TRESemmé use," MSJ Opp'n 18, stands in direct opposition to her deposition testimony in which she stated that Ms. Weiderman advised her that her alleged hair loss could have been caused by TRESemmé. Counter 56.1 ¶ 46 (citing Pl's Dep. Tr. 188:23–189:14.).

symptom of that condition differ only in degree and not in type.[10] Indeed, the thrust of plaintiff's argument is that her post 2020 hair loss was worse than her hair loss up to that time. But the "worsening of a plaintiff's symptoms over time" does not "alter or postpone the [limitations] accrual date." *Bano*, 361 F.3d 696, 709 (2d Cir. 2004); *see also Vuksanovich*, F. Supp. 3d at 106 (collecting cases).

In sum, plaintiff's claims are time barred because "all that is necessary to start the limitations period of 214–c(2) is that plaintiff be aware of the primary condition for which damages are sought." *Bano*, 361 F.3d at 709. The primary condition of hair loss is, hair loss. Accordingly, the limitations period for plaintiff's claims began, at the latest, when plaintiff was on notice of her hair loss (and its potential cause) on January 5, 2017; her

---

[10]     Plaintiff's citation to *In re New York City Asbestos Litigation* does not change the analysis. There, the court found a triable issue of fact as to whether early symptoms of mesothelioma were too isolated or inconsequential to trigger the statute of limitations. The court observed that "mesothelioma has a premalignant to a malignant process" and that it is "difficult to pinpoint when the malignant transformation occurs." 39 N.Y.S.3d 629, 638 (N.Y. Sup. Ct. 2016). The court could not determine, as a matter of law, whether plaintiff's symptoms—some of which were "minimal" and some of which plaintiff "got over [] quickly"—were "early symptoms in a slow progressing disease." 39 N.Y.S.3d 629, 637–38. In other words, the court found that the nature of the plaintiff's mesothelioma was such that it was not clear that her very early symptoms, some of which were temporary and some of which may have been related to any number of illnesses, were sufficiently consequential to put plaintiff on notice of her primary condition, mesothelioma. Here, by contrast, plaintiff's early symptoms are a less intense iteration of her primary condition. And it cannot seriously be argued that plaintiff's hair loss was "too minor to constitute discovery of her primary condition," MSJ Opp'n 19, given that the hair loss was significant enough that she sought medical treatment for it. *Vuksanovich*, 608 F. Supp. 3d at 106 (collecting cases and observing that "[t]he gradual worsening of [the plaintiff]'s symptoms, combined with the visit to the emergency room, refutes the argument that her [time-barred] symptoms were sufficiently isolated or inconsequential to disclaim her discovery of the primary condition for which she now complains.").

Complaint—filed nearly 5 years later—is untimely. These facts are not in dispute and summary judgment must be entered in favor of defendant.[11]

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is **GRANTED**. Defendant's motions to preclude Drs. Serota and Thiffault are **DENIED** as moot. The Clerk of Court is respectfully directed to enter judgment and to close the case.

**SO ORDERED.**

       */s/ Natasha C. Merle*
NATASHA C. MERLE
United States District Judge

Dated:       July 30, 2026
             Brooklyn, New York

---

[11] Because plaintiff's claims are untimely, defendant's motions to preclude Drs. Serota and Thiffault are denied as moot. However, even if plaintiff's claims were timely defendant would be entitled to summary judgment because Dr. Serota, her "only expert proffering an opinion on specific causation," Counter 56.1 ¶ 50, "could not say that to a degree of medical certainty" that "TRESemmé, in fact, caused [plaintiff's] hair loss." Lambert Decl. Ex. F. ("Serota *Candelaria* Dep. Tr.") 111:17–25, ECF No. 96-14. That is the opposite of the opinion proffered in his expert report. Lambert Decl. ("Serota Report") ¶ 81, ECF No. 96-9 ("[I]t is my opinion, to a reasonable degree of medical certainty, that in this case the preservatives in TRESemmé . . . caused [plaintiff]'s hair loss after she began using the TRESemmé in 2019, 2020, and 2021."). Put differently, "Dr. Serota's testimony did not just undermine, it completely *invalidated* his theory of causation." *Schafer v. Conopco, Inc.*, No. 23-cv-00348, 2026 WL 608747, at *3 (D.N.J. Mar. 4, 2026). Accordingly, his opinion is unreliable and must be excluded. *See* Fed. R. Evid. 702(d) ("[T]he expert's opinion [must] reflect[] a reliable application of the principles and methods to the facts of the case."); *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) ("In addition to the requirements of Rule 702, expert testimony is subject to Rule 403, and "may be excluded if its probative value is substantially outweighed by the danger of . . . confusion of the issues[] or misleading the jury."). Because "[c]ausation is a required element in every products liability case[,]" *Daniels-Feasel v. Forest Lab'ys Inc.*, No. 17-cv-04188, 2021 WL 6137093, at *2 (S.D.N.Y. Dec. 29, 2021), *aff'd sub nom. Daniels-Feasel v. Forest Pharms., Inc.*, No. 22-146, 2023 WL 4837521 (2d Cir. July 28, 2023), and because this is not a case in which "the causation question w[ould] be obvious to a jury," *Colwell v. Sig Sauer, Inc.*, 177 F.4th 382, 393 (2d Cir. 2026), the inadmissibility of Dr. Serota's expert testimony is fatal to plaintiff's claims.